CKR LAW, LLP
JONATHAN P. HERSEY, Cal. Bar No. 189240
   jhersey@slaterhersey.com
100 Spectrum center Drive, Suite 420
Irvine, California 92618
Telephone:   949-398-7500
Facsimile:   949-398-7501

Attorneys for Plaintiff
SHUANG YING (NANCY) ZHANG

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHUANG YING (NANCY) ZHANG, | Case No. |
| Plaintiff, | |
| v. | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| A-Z REALTY & INVESTMENT CORP., a California corporation; DONGYAN (ANNIE) ZHENG, an individual; JENNIFER WHELAN, an individual; REALTY ONE GROUP, INC., a California corporation; JIHUI (LUCKY) LUO, an individual, SHI DAN CHEN, and individual; MING-WING LAM, an individual; FU LONG ZHENG, an individual; and DOES 1-30, inclusive, | |
| Defendants. | |

Plaintiff SHUANG YING (NANCY) ZHANG ("Plaintiff" or "Mrs. Zhang")

alleges as follows:

**BRIEF DESCRIPTION OF THE CASE**

1.     Mrs. Zhang is the owner of a single-family residential home located at

16 Via Palmieki Court in Lake Elsinore, California (the "Property').  She contracted

with A-Z Realty & Investment Corp., which is owned and operated by sisters

Dongyan (Annie) Zheng and Jennifer Whelan, to lease and manage the Property.

Ms. Zheng and Ms. Whelan presented a lease application to Mrs. Zhang from Realty

One Group and its agent, Jihui (Lucky) Luo, who supposedly represented a married couple, Miaoyun Wu and Xin Li (and their two young children) interested in renting the Property.  Based on the representations, Mrs. Zhang signed a lease agreement allowing Mr. Wu, Ms. Li, and their children to move into the Property.

2.      As it turns out, however, the lease application was fraudulent.  Mr. Wu and Ms. Li were not a real couple, and they did not move into the Property.  Instead, a sophisticated criminal marijuana farming operation took possession of the Property.  They constructed new walls and ventilated growing areas, re-wired the home's electricity, brought in tons of pots and soil, and installed an irrigation system inside the house that they used to convert the Property into a marijuana farm.

3.      Mrs. Zhang did not discover how the Property was being used as part of the criminal enterprise until after the occupants' criminal enterprise had already done hundreds of thousands of dollars of damage.  When she demanded they leave and repair the Property, they threatened her life.

4.      The occupants eventually harvested their crops and fled, but they left records showing that they had cultivated nearly 19,000 marijuana plants with a street value worth in excess of two million dollars.  Mrs. Zhang started repairs, but has been unable to afford all of the necessary work to bring the Property into shape so that it can be re-rented, much less into the condition it was before the occupants moved in.

5.      The defendants, negligently or intentionally—and possibly having worked together as part of a criminal racketeering conspiracy with each other—are jointly and severally responsible for the damage to the Property and the physical injury and abuse that Mrs. Zhang suffered.

### JURISDICTION AND VENUE

6.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 because the First Claim for Relief alleges a claim under the Racketeer Influenced and Corrupt Organizations ("RICO") act, codified as Title IX

1   of the Organized Crime Control Act of 1970, 18 U.S.C. § 1961, *et seq*. The Court

2   has and should exercise supplemental jurisdiction over the pendent claims pursuant

3   to 28 U.S.C. § 1367(a) because they are based, in part, on the same operative facts

4   as those in the First Claim for Relief and are part of the same case or controversy

5   under Article III of the United States Constitution. Further, the exercise of

6   jurisdiction over the pendent state law claims will promote judicial economy,

7   convenience, and fairness to the parties.

8         7.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)

9   because (a) the named defendants reside in this district and appear to be residents of

10  the State of California, (b) the Property is located in this judicial district, and (c) a

11  substantial part of the events or omissions giving rise to the claims occurred here.

12  **PARTIES**

13        8.    Plaintiff Mrs. Zhang is an individual residing in El Monte, California.

14  She is the owner of the Property located at 16 Via Palmieki Court in Lake Elsinore,

15  California, that is the subject of this lawsuit.

16        9.    Defendant A-Z Realty & Investment Corp. ("A-Z Realty") is a

17  California corporation doing business in this judicial district and with its principal

18  place of business located at 20455 Ranchito Drive in Perris, California. A-Z Realty

19  is licensed by the California Department of Real Estate, License No. 02048999.

20        10.    Defendant Dongyan (Annie) Zheng ("Zheng") is a resident of the State

21  of California who also resides in this judicial district. Zheng is the Chief Executive

22  Officer of A-Z Realty, a real estate broker licensed by the California Department of

23  Real Estate, and the designated broker officer for A-Z Realty.

24        11.    Defendant Jennifer Whelan ("Whelan") is Zheng's sister. Whelan is a

25  resident of the State of California who also resides in this judicial district. Whelan

26  is the Chief Financial Officer and Secretary of A-Z Realty. Whelan is a licensed

27  real estate broker and is also A-Z Realty's agent for service of process.

28        12.    Defendant Realty One Group, Inc. ("Realty One") is a California

corporation doing business in this judicial district and with its principal place of business at 23811 Aliso Creek Road, Suite 168 in Laguna Niguel, California.

13.     Defendant Jihui (Lucky) Luo ("Luo") is a citizen of the State of California who also resides in this judicial district.  Luo is a licensed real estate agent associated with Realty One in its office located at 1260 Corona Pointe in Corona, California.

14.     Defendant Shi Dan Chen is believed to have been an unauthorized occupant of the Property, and on information and belief, is a resident of the State of California and resides in this judicial district.

15.     Defendant Ming-Wing Lam is believed is believed to have been an unauthorized occupant of the Property, and on information and belief, is a resident of the State of California and resides in this judicial district.

16.     Defendant Fu Long Zheng is believed is believed to have been an unauthorized occupant of the Property, and on information and belief, is a resident of the State of California and resides in this judicial district.

17.     Plaintiff is ignorant of the true names and capacity of the defendants sued herein as DOES 1 through 30, inclusive, and therefore sues them by such fictitious names.  Plaintiff will amend its Complaint to allege their true names and capacities when ascertained.  Plaintiff is informed and believes, and based thereon alleges, that each of the fictitiously named DOE defendants are responsible in some manner for the occurrences alleged in this Complaint, and for Plaintiff's injuries as alleged in this Complaint.  A-Z Realty, Zheng, Whelan, Realty One, Luo, Shi Dan Chen, Ming-Wing Lam, Fu Long Zheng, and DOES 1 through 30 shall be referred to hereinafter collectively as "Defendants."  References hereinafter made to specifically-named Defendants shall be deemed to refer to and include the fictitiously named DOE Defendants unless otherwise indicated.

18.     Plaintiff is informed and believes, and based thereon alleges, that at all times herein relevant, each of the Defendants, including the DOE Defendants, was

either an agent, representative, partner, alter ego and/or joint venturer of the other Defendants and that each of the Defendants either participated in, planned, authorized, ratified, adopted and assisted in, conspired in, or acted as an accomplice to, one or more of the various acts, omissions, and agreements alleged herein, or is otherwise legally responsible therefor.

19.     Plaintiff is also informed and believes and thereon alleges that at all times herein each Defendant, including the fictitiously named DOE defendants, was the agent, alter ego, servant and/or employee of one or more of the other Defendants, and acted within the purpose and scope of said agency, servitude and/or employment, and with the permission and consent of the other Defendant(s). Plaintiff is further informed and believes that each and every Defendant was involved in a conspiracy to injure Plaintiff and that each and every Defendant consented to, ratified and authorized the conduct of the other with the intent and knowledge that such action would result in damage and injury to Plaintiff.

## FACTUAL ALLEGATIONS

**A.     Background**

20.     Mrs. Zhang is a 75-year old Chinese immigrant who speaks and reads very limited English.  She retired approximately 15 years ago to care for her 76-year old husband, who has chronic health problems and who also has very limited English capabilities.

21.     Mrs. Zhang purchased the Property in 2009.  It is a single-family two-story home located in the quiet Tuscany Hills residential community of Lake Elsinore, California.  It has approximately 3,840 square feet of living space, with 5 bedrooms, 4.5 bathrooms, a spacious entry and dining room, loft, two dens, and a large open concept kitchen and family room.

**B.     The Property Management Agreement and Rental to Mr. Wu & Ms. Li**

22.     Because Mrs. Zhang and her husband live in El Monte, California, which is approximately an hour's drive from Lake Elsinore, Mrs. Zhang contacted

A-Z Realty about renting and managing the Property.  On July 11, 2016, Mrs. Zhang and A-Z Realty signed a Property Management Agreement ("PMA").  The PMA appointed and granted A-Z Realty the exclusive right to rent, lease, operate and manage the Property for a 1-year term from August 1, 2016 to July 31, 2017.  After the term expired, the PMA would continue as a non-exclusive agreement that either party could terminate on 30 days' notice.

23.    In February 2017, A-Z Realty received a tenancy application supposedly from a married couple, Miaoyun Wu and his wife, Xin Li.  Mr. Wu supposedly filled out a Rental Application on February 9, 2017, in which he listed Xin Li and their 8-year old son and 12-year old daughter as co-occupants.  Ms. Li purportedly filled out a separate Rental Application on February 14, 2017, listing much of the same information.

24.    Mr. Wu and Ms. Li were represented by Luo, an agent with Realty One.  A-Z Realty supposedly received Mr. Wu's and Ms. Li's rental applications from Luo.

25.    On or around February 14, 2017, Zheng called Mrs. Zhang and told her that a couple with 2 young children wanted to rent the Property.  Zheng said she checked Mr. Wu and Ms. Li's background.  She said they had good credit scores, more than $60,000 in the bank, and owned a restaurant.  Zheng suggested they would make good tenants.  Mrs. Zhang authorized the lease, but also specified that no subtenants should be allowed.  A-Z Realty rented the Property to Mr. Wu and Ms. Li.  The Residential Lease or Month-to-Month Rental Agreement (the "Lease") is dated February 16, 2017, with an effective term of February 21, 2017 through February 28, 2018.  Whelan's name is on the Lease on behalf of A-Z Realty.  The tenants completed and "signed" a Move-In Inspection form on February 16, 2017, and provided a receipt for the keys on February 18, 2017.

26.    Zheng then called Mrs. Zhang to inform her that the Property had been leased and informed Mrs. Zhang that Whelan would come to Mrs. Zhang's home in

El Monte to have her sign the paperwork.

27.    Whelan went to Mrs. Zhang's home on February 20, 2017, with the Lease, Move-In Inspection form, and various addendums and disclosures.  None of the documents were printed in Chinese.  Whelan reiterated that the Property was being rented to a married couple with two young children.  Because Mrs. Zhang was unable to read any of the documents in English, Whelan instructed her where to sign.

28.    One of the documents Whelan supposedly had Mrs. Zhang sign on February 20, 2017 was a second PMA that extended the term of the exclusive agreement through February 28, 2018.  The new PMA also increased A-Z Realty's monthly fee.

**C.    Zhang, Whelan and A-Z Realty Appear to Have Fraudulently Mislead Mrs. Zhang**

29.    In May 2017, approximately two months after Mr. Wu and Ms. Li supposedly moved into the Property, Zheng called Mrs. Zhang and told her that she had heard from a contractor that Chinese syndicates from the Fujian Province were looking to rent big houses in residential neighborhoods to grow marijuana.  Zheng said that these syndicates of growers were willing to pay $2.50/sf, almost twice the amount that Mr. Wu and Ms. Li were paying at $1.54/sf Zheng also said that Mr. Wu and Ms. Li were from the Fujian Province and therefore might be growing marijuana in the Property.

30.    Zheng supposedly went to inspect the Property on May 11, 2017.  That evening., she sent Mrs. Zhang an email with photos of her inspection.  Several photos showed newly constructed and unfinished walls, window coverings and exposed electrical wiring and irrigation that had been added to the interior of the home.  Other photos showed approximately 150 marijuana plants in large tubs in the constructed growing rooms inside the Property.  Two photos showed letters that Zheng supposedly found in the Property from a Dr. William S. Eidelman, M.D.,

stating that Shi Dan Chen and Ming-Wing Lam were under Dr. Eidelman's care and were approved for the use of medical marijuana.

31.     Zheng followed up the email to Mrs. Zhang with a phone call.  Mrs. Zhang said that she believed that marijuana growing was illegal and that her husband would report the matter to the police the following day.  Zheng responded that the doctor's letters proof that the occupants could legally grow the marijuana and suggested that Mrs. Zhang demand higher rent from the occupants.

32.     The next morning, Zheng sent Mrs. Zhang another email stating that it is legal for the occupants to grow marijuana in the Property.  Zheng attached four screenshots of articles purporting to describe the legality of residential marijuana growing in California.

33.     Zheng's statements on the phone and her emails were misleading, and likely an attempt to persuade her not to call the police.  The website from which Zheng took the screenshots is run by an individual named Robert Bergman, an Amsterdam private citizen who uses his website to promote a marijuana seeds business.  The beginning of the article, which Zheng omitted from her screen shots, states that, "California can now legally grow up to six marijuana plants at home," and that persons in California can "[p]ossess no more than 6 plants."  The pictures Zheng had sent Mrs. Zheng the prior evening had 25 times that number of plants, but Zheng omitted portions of the article (that was printed in English anyway) causing Mrs. Zhang to believe that the occupants were legally allowed to have a marijuana farm in the Property.

34.     In actuality, and contrary to Zheng's statements, it was illegal to grow more than 6 plants under both California Law and illegal to grow any marijuana plants under Federal Law.  Zheng apparently did not ask the occupants (whoever they were) whether they had a license to grow, and the City of Lake Elsinore did not allow cannabis cultivation at all until November 14, 2017.  After that date, the City restricted such growing operations to light industrial and heavy industrial zones.

(See Ordinance No. 2017-1383 published by City of Lake Elsinore).  Federal law still prohibits private cultivation.

35.    Mrs. Zhang relied on and believed Zheng's misleading statements. Based on Zheng's statements and emails, Mrs. Zhang did not believe she had the right to evict the occupants.  She also still did not know that the primary occupants of the house were not people named in the Lease, Mr. Wu and Ms. Li.

**D.    Zheng, Whelan and A-Z Realty "Negotiate" with the Occupants**

36.    A few days later, Zheng came back to Mrs. Zhang and told her that she negotiated with the occupants for increased rent from $2,500 to $5,000, and a $20,000 "penalty" to be paid in two $10,000 installments in June and October 2017. For her own benefit, Zheng demanded that Mrs. Zhang pay A-Z Realty a nearly-doubled monthly management fee.

37.    In October 2017, Mrs. Zhang went to A-Z's office to get the October rent and second $10,000 payment.  Zheng said she did not have the $10,000 but would "ask the tenants."  Zheng suggested that Mrs. Zhang agree to sell the Property to the occupants, which according to Zheng would be better for both her and Mrs. Zhang.  Zheng proposed that Mrs. Zhang take 30% as the down payment and agree to finance the remaining 70% of the purchase price through a seller carry-back loan. Mrs. Zhang did not understand the concept of the seller carry-back loan and said that she would need to discuss Zheng's suggestions with her husband.

38.    In early November 2017, Zheng informed Mrs. Zhang that the occupants refused to pay the remaining $10,000 unless Mrs. Zhang would agree to extend the lease for another year.  Mrs. Zhang refused.  She demanded that they make the second $10,000 payment as agreed and that the Lease continue to expire in February 2018.

**E.    The Tenants' "Contact Person" and "Chief of the Gangsters" Threaten Mrs. Zhang's Life**

39.    Without Mrs. Zhang's approval, Zheng supposedly continued to

"negotiate" with the "tenants" that were occupying and growing marijuana in the Property about the possible sale of the Property to them.  Zheng sent a message to a person she referred to as the "tenants' contact person" saying that Mrs. Zhang would agree to sell the Property for a 30% down payment and a 70% seller carry-back that the buyers could pay-off with monthly installments.

40.    Mrs. Zhang did not know the seller-carry back offer had been made until November 15, 2017, when Zheng sent her an email saying that, "Attached is the text message from tenant's contact person to me this morning.  He came to my office this afternoon.  He said his boss did not believe the 'seller-carry back' loan plan that I said, that they put down 30% upfront, you lend them the other [70%].  They pay [the loan] monthly.'"

41.    In the same November 15, 2017 email, Zheng attached a text message from the "tenants' contact person" threatening Mrs. Zhang's life and warning that she should "not fight with the chief of gangsters."

42.    That text message also evidences Zheng's apparent ties to the occupants and their "contact person," which is likely a relative or close acquaintance.   In the message, the "contact person" refers to Zheng as "Jie," which is the Chinese word for an older sister related by blood or a woman with whom the person has an extremely close relationship.  While the message instructed Zheng to tell Mrs. Zhang not to "fight with the chief of gangsters," the contact person also told Zheng that, "I won't betray you.  I won't betray Mr. Wu."

43.    Under the gangsters' threats and at Zheng's misleading, Mrs. Zhang felt she had no choice but to agree to extend the Lease for another year as demanded.  Zheng supposedly relayed the message to the "gangsters," and then informed Mrs. Zhang that the gangsters paid the second $10,000 installment.  During this entire time, Zheng continued to convince Mrs. Zhang the occupants were the Mr. Wu and Mrs. Li that had signed the lease.  For this reason, Mrs. Zhang believed Zheng was negotiating with legal tenants who were legally growing

1  marijuana, not wrongful occupants or a criminal enterprise illegally growing
2  marijuana in her Property.

3  **F.**     **Mrs. Zhang's Continued Refusal to Extend the Lease Results in More**
4             **Death Threats**

5        44.    In January 2018, Mrs. Zhang's husband read an article titled "US
6  Attorney General Jefferson Sessions Orders Crackdown on Marijuana Crimes"
7  printed in the China Daily newspaper.  Mrs. Zhang forwarded a copy to Zheng and
8  said that, according to the article and contrary to Zheng's representations, the
9  occupants' marijuana growing operations were illegal.  Mrs. Zhang demanded that
10 they move out by February 28, 2018 as per the original Lease supposedly signed by
11 Mr. Wu and Mrs. Li, and that the Property be restored to its original state.

12       45.    On February 7, 2018, Zheng issued a letter to "Mr. Wu and Ms. Li"
13 saying that Mrs. Zhang would not agree to extend the Lease and telling them to
14 vacate the Property by the end of the month.  The letter failed to inform the
15 occupants of their obligation to repair and restore the Property, and to schedule a
16 move-out inspection.

17       46.    Without Mrs. Zhang's approval, Zheng nonetheless then continued to
18 "negotiate" with occupants' "contact person/manager."  On February 16, 2018, she
19 sent an email to Mrs. Zhang attaching several text messages from their contact/
20 manager.  The email stated that the occupants wanted to remain in the Property at
21 least until the end of April 2018 when the plants would be fully grown and could be
22 harvested.  They added several more death threats against Mrs. Zhang if she refused
23 to allow them to stay.  One of the messages stated:

24              "**She is so old, she will lose her life**, **do you know?**" . . .  "**Let**
25              **her go to hell, I won't care.**"  [The phrasing of the characters
26              used means "lose her life before old age through an unnatural
27              cause, implying that the gangsters would "end her life"]
28              (Emphasis added.)

47.     Again, the contact's/manager's messages referred to Zheng as "Jie," and also said, "You are Zhu Mou," meaning a person who is a strategist, planner, instigator, mastermind, or leader of a plot.

48.     In response to the threats, Mrs. Zhang responded that she would not allow the occupants to stay through April 2018.  Rather, Mrs. Zhang demanded a $100,000 security deposit to ensure the repair of the Property when the Lease expired.  Mrs. Zhang said that the $100,000 could be deposited into A-Z Realty's bank account and would be returned to the occupants after they restored the Property.  Rather than supporting Mrs. Zhang, Zheng again suggested that Mrs. Zhang sell the Property to the gangsters, but this time for a drastically reduced price that was under-market by several hundred thousand dollars.

**G.     The Rental Application Documents Reveal that Mr. Wu and Ms. Li Never Occupied the Property, But Were a Front for the Criminal Enterprise**

49.     Mrs. Zhang was suspicious of the identity of the persons who were actually occupying the Property.  Zheng and Whelan therefore provided her with copies of the rental applications and other background screening documents that A-Z Realty had supposedly received from Luo and Realty One Luo in February 2017 before the Lease was signed.

50.     The rental application documents are intentionally fraudulent.  The application forms themselves are printed on forms intended for different properties and contain information written over previously-erased or "whited-out" information.  Many of the prior addresses do not exist.  The names, email addresses and phone numbers of prior landlords and employers are incomplete or invalid.  "Mr. Wu's" and "Ms. Li's" driver licenses and social security cards are fake, and the bank statements they supposedly submitted contain forged numbers with different fonts and altered information.

51.     Zheng, Whelan and A-Z Realty negligently or knowingly permitted the

-12-

1  Property to be possessed by different occupants than Mr. Wu and Ms. Li, who were

2  a false front for the marijuana growers that took control of and destroyed the

3  Property.

4          52.     Numerous red flags should have caused A-Z Realty, Zheng and Whelan

5  to refuse to rent the Property to "Mr. Wu and Ms. Li" in the first instance.  For

6  example:

7          a.  Mr. Wu and Ms. Li applied to rent the Property as a married couple, but

8              they suspiciously completed two different applications at different

9              times.  Mr. Wu did not sign the Rental Application.

10         b.  Mr. Wu's and Ms. Li's names are printed on the Lease, but they do not

11             appear to have signed for themselves and their signatures do not match

12             the signatures on their driver licenses and social security cards.  Luo

13             appears to have signed the applications and Lease instead.

14         c.  Mr. Wu's credit scores were not obtained by A-Z Realty, but by a

15             different realty company named Treeline Realty & Investment Inc. on

16             April 19, 2016—which was 10 months before he applied to rent the

17             Property.  The credit report was produced by a company called

18             Acranet.

19         d.  A separate Experian credit report was pulled for Mr. Wu on February

20             15, 2017.  Ms. Li's Experian report was supposedly run on December

21             27, 2016, two months before she or Mr. Wu supposedly signed and

22             submitted the Rental Applications.

23         e.  Neither the Experian nor Acranet credit reports showed Mr. Wu and

24             Ms. Li as a married couple.  Indeed, Ms. Li's Experian report shows

25             that she is married to a different man named Sam Yap, and that they

26             lived in Tennessee during much of the time that Ms. Li's rental

27             application says she and Mr. Wu were living and working in Southern

28             California.

f.  The prior address Mr. Wu provided on his Rental Application does not match any of the prior addresses on the Experian or Acranet credit reports.  None of the addresses Ms. Li provided match the addresses on her Experian report.  Likewise, none of the employment histories on the Rental Applications match any of the employers on the credit reports.

g.  The copies of Ms. Li's driver license and bank statements do not match the address on her Rental Application, and while she listed the same Chase bank account number as Mr. Wu on her application, her name is not on that account.

## H.   **The Occupants/Gangsters Abandon the Damaged Property**

53.   In late February, to avoid further loss, Mrs. Zhang reluctantly agreed to sell the Property for the reduced price that Zheng suggested.

54.   By the second week in March 2018, Zheng said that she had not received any response from the "tenants" or their contact/manager.  Zheng suggested that they may have "run away."  Exasperated, Mrs. Zhang asked Zheng to get them access to the Property.

55.   Zheng issued a 3-day notice of entry and told Mrs. Zhang that she could inspect the Property on March 12, 2018.  They found that the marijuana plants had been removed, but the house was so severely damaged as to be rendered uninhabitable.

56.   Mrs. Zhang also found inside the property a letter from a utility company addressed to Fu Long Zheng.

57.   When the gangsters abandoned the Property, they left written planting and crop records on the walls, doors and cabinets.  By their own accounting, they harvested 6 sets of marijuana crops totaling approximately 18,775 plants.  The street value of those plants is estimated to exceed two million dollars.

58.   To accomplish their farming operation, the gangsters had added numerous unfinished walls, electrical wiring for high wattage UV lighting, and an

irrigation system to the interior of the house.  They separated the open living areas into different growing rooms.  For example, they walled-off the downstairs family room from the kitchen, the downstairs open living and dining rooms from the entry, and the upstairs den from the stairs and hallway.  They re-wired the electrical system to support growing lights in almost every room.  They changed the water systems both inside and outside the house, disconnecting the landscape irrigation system, including to the system for the plants that stabilize the uphill land on the property.  Those plants died, leaving the slope unstable and prone to severe mudslides.  Both air conditioning units were broken.  The sewer system was clogged.  They left countless holes of different sizes in the ceiling and walls through which a new internal air circulating system was constructed.  All windows were sealed to prevent light or vision from the outside.  Metal tubes, cables and other materials were left throughout.  All of the smoke alarms were ripped out.  The tenants had sealed the home off from outside air and then routinely flooded the floors when they watered their plants.  This created an extremely hot and humid climate good for growing the marijuana plants, but that also caused massive water damage and mold infestation.

**I.      The Necessary Repairs and Lost Rent**

59.      Mrs. Zhang began to repair the Property almost immediately.  She changed the home's locks and garage door openers, and had contractors remove the trash and soil from inside the house and the yards.  She also had the water, electrical and gas systems repaired.  At the beginning of April, she started mold treatment and remediation, which required most of the home's drywall to be removed, along with the flooring in the affected areas.  The costs of these initial repairs exceeded $25,500.

60.      Unfortunately, the Property needs additional repairs that Mrs. Zhang lacks the money to complete, including cleaning the sewer laterals to the sewer main, installing new irrigation and landscaping, installing new drywall and flooring,

repairing or installing plumbing and electrical fixtures, insulation, paint, new HVAC units and ducting, and new doors and window treatments.  Estimated costs of the additional repairs exceed $200,000.

61.     While the repairs remain unfinished, the Property is uninhabitable and unrentable.  Mrs. Zhang continues to suffer thousands of dollars of lost rent each month that the Property is not occupied.

## FIRST CLAIM FOR RELIEF

### RICO Violations, 18 U.S.C. §§ 1962(c)-(d), Against All Defendants

62.     Plaintiff hereby realleges and incorporates by reference each and every allegation above as though fully set forth herein.

63.     Since 1970, the most significant federal statute regulating cannabis has been the Controlled Substances Act (21 U.S.C. §§ 801 *et seq*.) ("CSA"). At all times relevant to this complaint, cannabis has been listed under the CSA as a Schedule I controlled substance, which identifies drugs that have no currently accepted medical use and a high potential for abuse (21 U.S.C. § 812(b)(1)).

64.     The CSA prohibits a wide range of activities related to cannabis. It makes it illegal, for example, to (a) knowingly or intentionally grow, manufacture, distribute or possess cannabis (21 U.S.C. § 841); (b) knowingly use, maintain or profit from cannabis-related premises, whether as an owner, lessee, occupant or mortgagee (21 U.S.C. § 856); (c) possess or distribute equipment, chemicals, products or material with the intent of using them to grow or produce cannabis (21 U.S.C. § 843(a)); (d) use a telephone, mail, e-mail or the Internet to further the manufacture or sale of cannabis (21 U.S.C. § 843(b)-(c)); and (e) reinvest or launder cannabis proceeds or knowingly facilitate or engage in financial transactions with such funds (21 U.S.C. §§ 1956(a), 1956(h), 1957(a)).  The CSA imposes severe fines and extended prison terms for violations (21 U.S.C. § 841(b)).

65.     In September 2015, the California Legislature enacted the Medical Marijuana Regulation and Safety Act ("MMRSA"), which instituted a

comprehensive licensing and regulatory.

66.     In November 2016, California voters approved Proposition 64, the Adult Use of Marijuana Act ("AUMA"), which legalized recreational cannabis and instituted a comprehensive licensing and regulatory scheme for its cultivation, manufacture, distribution and sale.

67.     In June 2017, California adopted the Medicinal and Adult Use Cannabis Regulation and Safety Act ("MAUCRSA"), combining the licensing and regulatory frameworks for medical and recreational cannabis into a single law. MAUCRSA, like its predecessors, requires that anyone intending to grow, manufacture, distribute or sell cannabis must first obtain both a state license and a local permit.

68.     Cannabis is still listed as a Schedule I controlled substance under the California Controlled Substances Act (Cal. Health & Safety Code § 11054(d)(13)) and commercial cannabis activity without a local permit and state license is still a crime under California law (Cal. Bus. & Prof. Code § 26038(c)).

69.     Prior to November 2017, the City of Lake Elsinore did not permit marijuana cultivation.  Since November 107, and pursuant to Ordinance No. 2017-1383, the City of Lake Elsinore restricts marijuana growing operations to light industrial and heavy industrial zones.

70.     Thus, at all times relevant to this complaint, the cultivation, distribution and sale of cannabis were and are serious crimes under federal law and were and are illegal under state law and local ordinances unless carried out pursuant to and in accordance with the terms of (1) a state cannabis license and (2) a local cannabis permit.

71.     On information and belief, Defendants never had and do not possess a state cannabis license or local cannabis permit.  The marijuana growing activities in the Property were and are illegal under the federal, state and local laws mentioned above.

72.     The Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. §§ 1961-1968) creates a private right of action for any person injured in his or her business or property by reason of a violation of 18 U.S.C. § 1962. Section 1962(c) makes it unlawful for any person employed by or associated with any enterprises engaged in, or the activities of which affect, interstate commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.

73.     Pursuant to 18 U.S.C. § 1961(1)(B), RICO racketeering activity is also defined to include the fraudulent and criminal use of interstate mail and wire communications, such as violations of 18 U.S.C. §§ 1341 and 1343.

74.     Beginning no later than February 2017 and continuing thereafter, Defendants, all of whom are persons within the meaning of 18 U.S.C. § 1961(3), formed an association-in-fact enterprise within the meaning of 18 U.S.C. § 1961(4) by establishing contractual, business and other relationships with each other and otherwise collaborating to use the Property for the commercial cultivation, processing, distribution and sale of marijuana.  The association-in-fact enabled Defendants to more efficiently achieve their collective purpose.

75.     On information and belief, the rent and other payments for the Property, and the nearly 19,000 marijuana plants grown at the property, have been used and moved in, and thereby affected, interstate commerce.

76.     On further information and belief, in violation of 18 U.S.C. § 1962(c), each of the Defendants has conducted and participated in the conduct of the affairs of the marijuana growing enterprise through a pattern of racketeering activity by committing more than two related and continuous acts of racketeering, as defined in 18 U.S.C. § 1961(1), during the past two years through the ongoing cultivation, distribution and sale of marijuana and cannabis products, a Schedule I controlled substance, in violation of the Controlled Substances Act ("CSA") and other laws, statutes and ordinances mentioned above.  Defendants Luo, Realty Group One, A-Z

Realty, Zheng, and Whelan represented the occupants and gangsters in leasing the Property and enabling the cultivation, distribution and sale of the marijuana crops. They used interstate mail and wire mechanisms to further the conspiracy. On information and belief, defendants Shi Dan Chen, Ming-Wing Lam, and Fu Long Zheng are believed to have been occupants of the Property who cultivated the marijuana, and/or the occupants' "contacts/managers" assisted with the leasing and growing and who also threatened Mrs. Zhang's life.

77.    The pattern of racketeering activity through the commission of at least two related acts of racketeering as defined in 18 U.S.C. § 1961(1) includes, but is not limited to, the cultivation of at least 6 different crops of marijuana plants inside the Property, the multiple threats made against Mrs. Zhang's life, and the numerous uses of interstate mail and wire to transmit fraudulent and misleading statements and threats.

78.    On information and belief, the criminal conspiracy is continuing and was threatened to continue, as evidenced by, among other things, by Zheng's statement that a number of persons from the Fujian Provence are looking to rent large houses in the area to create marijuana farms, and the occupants' repeated requests to extend the Lease, including for an additional year after it was set to expire. On information and belief, there is also a longstanding and on-going and possibly familial relationship between the Defendants. The Defendants' activities therefore amount to or pose a threat of continued criminal activity, including both a series of related acts extending over a substantial period of time of more than a year, as well as a specific threat of repetition with the continued sale of the marijuana and use of other properties in the same manner and for the same purposes.

79.    Plaintiff is informed and believes and on that basis alleges that each of the Defendants has conspired with some or all of the other Defendants, in violation of 18 U.S.C. § 1962(d), to commit the acts of racketeering set forth in the preceding paragraphs and have committed overt acts of racketeering in furtherance of said

conspiracy. Each of the Defendants knowingly agreed to facilitate the scheme that includes the operation and management of the marijuana farming criminal enterprise.

80.    The acts of racketeering and conspiracy to participate in and further such activities are a direct and proximate cause of actual damage to Mrs. Zhang's property, including damage to the Property, diminution in value, and lost rents, as well as the abuse and emotional trauma she has suffered from the threats to her life. Mrs. Zhan was also a specific and intended target of the illegal activity.

81.    Mrs. Zhang is entitled to three times the damages caused to her property, and an award of attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF

### Breach of Fiduciary Duty Against A-Z Realty, Zheng & Whelan

82.    Plaintiff hereby realleges and incorporates by reference each and every allegation above as though fully set forth herein.

83.    A-Z Realty, Whelan and Zheng were Mrs. Zhang's real estate property brokers and agents, and thereby had and owed her fiduciary duties and were bound to act with the utmost good faith, loyalty and honesty towards her. Those fiduciary duties arose both by regulatory statutes (including those promulgated and published by the California Department of Real Estate), and by the nature of their contractual agency relationship. Mrs. Zhang reposed certain confidences and trusts in A-Z Realty, Whelan and Zheng, particularly given Mrs. Zhang's general inexperience with property rentals and management and her limited abilities to read and understand English.

84.    A-Z Realty, Whelan and Zheng breached their fiduciary duties to Mrs. Zheng by, among other things, misleading her about the identity of the actual occupants of the Property, demanding increased property management fees leasing the Property, failing to act in Mrs. Zhang's best interests with regard to the removal or eviction of the occupants and the suggested sale of the Property to them.

85. A-Z Realty, Whelan and Zheng failed to act as a reasonably careful real estate broker and agent would have acted under the same or similar circumstances.

86. As a direct and proximate result of A-Z Realty, Whelan and Zheng's acts and omissions, Mrs. Zhang has been harmed.

87. A-Z Realty, Whelan and Zheng's acts were willful, malicious, fraudulent and oppressive, and in conscious disregard of Plaintiff's rights. Mrs. Zhang is entitled to punitive and exemplary damages in an amount that will set an example and deter similar conduct in the future.

### THIRD CLAIM FOR RELIEF

### Intentional Fraud and Deceit Against All Defendants

88. Plaintiff hereby realleges and incorporates by reference each and every allegation above as though fully set forth herein.

89. Defendants made false statements directly to Mrs. Zhang, or through her agents and upon which they intended her to rely. The false statements include, but are not limited to, the following: (a) the actual identities of the occupants of the Property, including false information and the forged documents provided to Mrs. Zhang as part of the rental applications; (b) continued statements about the identities of Mr. Wu and Ms. Li as the occupants of the Property; and (c) the occupants' willingness and intentions to pay additional amounts to continue renting the Property and to pay the costs to return the Property to its original state before it had been converted to a marijuana farm.

90. The statements and representations were false. Defendants knew the statements to be false at the time they were made, or made the representations recklessly and without regard for the truth. By making the statements, Defendants intended to induce Mrs. Zhang to sign the Lease, to permit entry into the Property, to refrain from calling the police, to refrain from evicting the occupants, and to extend the term of the lease or offer the Property for sale at a substantially reduced price to the gangsters.

91.     Mrs. Zhang reasonably and justifiably relied on the representations, which were made by or communicated to her through her trusted real estate agents and property managers.

92.     As a direct and proximate result of Defendants' false and fraudulent misrepresentations, Mrs. Zhang has been damaged, and her reliance on the misrepresentations was a substantial factor in causing such harm.

93.     Defendants' acts were willful, malicious, fraudulent and oppressive, and in conscious disregard of Plaintiff's rights.  Mrs. Zhang is entitled to punitive and exemplary damages in an amount that will set an example and deter similar conduct in the future.

## **FOURTH CLAIM FOR RELIEF**

### **Negligent Misrepresentation Against All Defendants**

94.     Plaintiff hereby realleges and incorporates by reference each and every allegation above as though fully set forth herein.

95.     Defendants made false statements directly to Mrs. Zhang, or through her agents and upon which they intended her to rely.  The false statements include, but are not limited to, the following: (a) the actual identities of the occupants of the Property, including false information and the forged documents provided to Mrs. Zhang as part of the rental applications; (b) continued statements about the identities of Mr. Wu and Ms. Li as the occupants of the Property; and (c) the occupants' willingness and intentions to pay additional amounts to continue renting the Property and to pay the costs to return the Property to its original state before it had been converted to a marijuana farm.

96.     The statements and representations were false and Defendants had no reasonable grounds for believing them to be true at the time they were made.

97.     By making the statements, Defendants intended to induce Mrs. Zhang to sign the Lease, to permit entry into the Property, to refrain from calling the police, to refrain from evicting the occupants, and to extend the term of the lease or offer

1 the Property for sale at a substantially reduced price to the gangsters.

2      98.    Mrs. Zhang reasonably and justifiably relied on the representations,

3 which were made by or communicated to her through her trusted real estate agents

4 and property managers.

5      99.    As a direct and proximate result of Defendants' false and fraudulent

6 misrepresentations, Mrs. Zhang has been damaged, and her reliance on the

7 misrepresentations was a substantial factor in causing such harm.

8 **FIFTH CLAIM FOR RELIEF**

9 **Breach of Property Management Agreement Against A-Z Realty**

10      100.   Plaintiff hereby realleges and incorporates by reference each and every

11 allegation above as though fully set forth herein.

12      101.   Mrs. Zhang and A-Z Realty had an enforceable contract, the Property

13 Management Agreement ("PMA"), which was originally signed on July 11, 2016.

14 Presumably to cover the term of the Lease, the parties signed a new PMA on

15 February 20, 2017, extending the term of the property management relationship to

16 February 28, 2018.

17      102.   A-Z Realty materially breached the PMA by, among other things:

18 failing to rent the Property to a qualified tenant; failing to use due diligence in the

19 performance of its obligations under the PMA; failing to make, cause to be made,

20 and/or supervise repairs, improvements, or alterations to the Property; failing to

21 receive and maintain a security deposit; and failing to remit funds owed to Mrs.

22 Zhang.

23      103.   Mrs. Zhang has performed all of her obligations under the PMA,

24 including mediation of this dispute prior to filing this lawsuit, except for those

25 obligations which have been excused.

26      104.   As a direct and proximate result of A-Z's breaches, Mrs. Zhang has

27 been damaged.

28

## SIXTH CLAIM FOR RELIEF

### Trespass and Wrongful Occupancy Against All Defendants

105.   Plaintiff hereby realleges and incorporates by reference each and every allegation above as though fully set forth herein.

106.   Mrs. Zhang is the owner of the Property.

107.   Defendants intentionally or recklessly or negligently entered into the Property or caused other Defendants to enter into the Property without permission or under false pretenses.

108.   Mrs. Zhang did not give permission for entry into the Property by any occupants other than Mr. Wu, Ms. Li and their supposed children.

109.   As a direct and proximate result of Defendants' acts and omissions, Mrs. Zhang has been harmed.  The damage to the real property includes, but is not limited to, the costs of repairs already made, the cost of further repairs, and the diminution of value between the costs repairs and the value of the Property prior to the trespass.  Mrs. Zhang is also entitled to the profits from the business for of the marijuana farming for which the Property was used by the unauthorized occupants.

110.   To the extent the Defendants' acts were intentional, they were also willful, malicious, fraudulent and oppressive, and in conscious disregard of Plaintiff's rights.  Mrs. Zhang is entitled to punitive and exemplary damages in an amount that will set an example and deter similar conduct in the future.

## SEVENTH CLAIM FOR RELIEF

### Nuisance Against All Defendants

111.   Plaintiff hereby realleges and incorporates by reference each and every allegation above as though fully set forth herein.

112.   Mrs. Zhang is the owner of the Property, and did not consent to its use as a marijuana farm.

113.   Defendants operated a criminal marijuana farming enterprise on and inside the Property in violation of federal, state and local laws, statutes and

ordinances. Defendants' use of the Property was physically harmful to Mrs. Zhang in that she was exposed to mold and other toxic and harmful conditions. Defendants' use of the Property also substantially and unreasonably interfered with Mrs. Zhang's use and enjoyment of the Property, including her ability to continue renting it. Defendants' operation of the marijuana cultivation activities in and on the Property therefore constitutes a nuisance.

114. As a direct and proximate result of the nuisance, Mrs. Zhang has been damaged in her health and well-being, and the value of the Property has been substantially diminished.

115. When Defendants established and operated the marijuana farming enterprise in and on the Property, they did so knowing that the enterprise was illegal and would cause health and property damage. Defendants' acts were therefore willful, malicious, fraudulent and oppressive, and in conscious disregard of Plaintiff's rights. Mrs. Zhang is entitled to punitive and exemplary damages in an amount that will set an example and deter similar conduct in the future.

## EIGHTH CLAIM FOR RELIEF

### Elder Abuse Against All Defendants

1. Plaintiff hereby realleges and incorporates by reference each and every allegation above as though fully set forth herein.

2. California's Elder Abuse and Adult Civil Protection Act, codified at Welfare & Institutions Code § 15600, *et seq*., defines elder abuse as any "[p]hysical abuse, neglect, financial abuse, abandonment, isolation, abduction, or other treatment with resulting physical harm or pain or mental suffering . . . ." Physical abuse includes acts such as assaults and criminal threats.

3. Mrs. Zhang is 75 years old and is an "elder" protected by the statute, particularly Welfare & Institutions Code § 15656(b), which prohibits any person who knows or reasonably should know that another person is an elder from willfully inflicting mental suffering upon an elder.

4.      Defendants violated California Welfare & Institutions Code § 15656(b) by, among other things, making direct and indirect threats against Mrs. Zhang's life, including stating and implying that if she refused to continue to rent the Property to them, failed to cooperate with the gangsters, or reported the marijuana enterprise to law enforcement, she would be killed.

5.      As a direct and proximate result of Defendants' threats, Mrs. Zhang has suffered and will continue to suffer damages, including but not limited to, severe emotional distress and trauma, pain and suffering, and exposure to mold and other toxic conditions in the Property.

6.      Clear and convincing evidence demonstrates that Defendants' acted with recklessness, oppression, fraud or malice, including a conscious choice with knowledge of the serious risk of harm.  Mrs. Zhang is therefore entitled to punitive and exemplary damages in an amount that will set an example and deter similar conduct in the future.

7.      Pursuant to Welfare & Institutions Code § 15657(a), Mrs. Zhang is entitled to recover her attorneys' fees and costs incurred herein.

## EIGHTH CLAIM FOR RELIEF

### Financial Elder Abuse Against All Defendants

116.    Plaintiff hereby realleges and incorporates by reference each and every allegation above as though fully set forth herein.

117.    Mrs. Zhang was over the age of 65 at the time of Defendants' conduct alleged herein.

118.    Defendants took, appropriated, and retained, or assisted other Defendants in taking, appropriating and retaining, Mrs. Zhang's property, including both her real property and the money she was owed for the supposed rental of the Property.  The illegal conduct includes, but is not limited to, the taking and use of the Property for the marijuana growing enterprise, withholding rent, security deposits, costs of repairs and other amounts, and attempting to convince her to sell

the Property at a substantially under-valued price and with the risk of a seller-financed loan.  Defendants acted in these manners for the wrongful use of Mrs. Zhang's property and with the intent to defraud her.  They also acted with undue influence and excessive persuasion over her by taking advantage of her limited English, taking advantage of her limited real estate experience, taking advantage of her distance from the Property, and by threatening her life.  Defendants also knew or should have known that their acts would likely be harmful to Mrs. Zhang.

119.   As a direct and proximate result of Defendants' acts, Mrs. Zhang has been harmed.

120.   Clear and convincing evidence demonstrates that Defendants' acted with recklessness, oppression, fraud or malice, including a conscious choice with knowledge of the serious risk of harm.  Mrs. Zhang is therefore entitled to punitive and exemplary damages in an amount that will set an example and deter similar conduct in the future.

121.   Pursuant to Welfare & Institutions Code § 15657.5(a)&(c), Mrs. Zhang is entitled to recover her attorneys' fees and costs incurred herein.

## NINTH CLAIM FOR RELIEF

### Intentional Infliction of Emotional Distress Against All Defendants

122.   Plaintiff hereby realleges and incorporates by reference each and every allegation above as though fully set forth herein.

123.   Defendants' conduct, including their fraud and death threats, was outrageous and extreme such as to exceed the bounds of that normally tolerated in a civil community.  Defendants' acts were intended to cause Mrs. Zhang emotional distress or were done with reckless disregard of the probability that Mrs. Zhang would suffer emotional distress, particularly because the conduct was directed at her with the knowledge that she would receive the death threats.

124.   As a direct and proximate result of Defendants' acts, Mrs. Zhang has suffered and will continue to suffer severe emotional distress.

## TENTH CLAIM FOR RELIEF

### Negligence Against all Defendants

125.   Plaintiff hereby realleges and incorporates by reference each and every allegation above as though fully set forth herein.

126.   Defendants owed a duty of care to Mrs. Zhang not to cause her personal injury or damage her property.

127.   Defendants breached their duties of care and were negligent in their conduct, acts and omissions.  It was reasonably foreseeable that Defendants' negligence would cause Mrs. Zhang harm.

128.   As a direct and proximate result of Defendants' acts and omissions, Mrs. Zhang has been harmed and will continue to suffer harm, including physical injury, severe emotional distress, pain and suffering, and damage to her property.

## ELEVENTH CLAIM FOR RELIEF

### Statutory Unfair Competition in Violation of Cal. Bus. & Profs. Code § 17200 Against All Defendants

129.   Plaintiff hereby realleges and incorporates by reference each and every allegation above as though fully set forth herein.

130.   California's Unfair Competition Law ("UCL") prohibits "any unlawful, unfair or fraudulent business act or practice" (Cal. Bus. & Prof. Code § 17200).  A business practice is unlawful for purposes of the UCL if it violates an independent federal, state or local law, whether civil or criminal. Thus, the UCL "borrows" violations of other laws and makes them independently actionable as unlawful business practices.

131.   Defendants have violated and are continuing to violate the federal Controlled Substances Act and other related laws, statutes and ordinances by cultivating, distributing and selling cannabis as described in this complaint. Defendants also made fraudulent misrepresentations about the identities of the occupants and the purported legality of marijuana cultivation.  They attempted to

-28-

convince her to sell the Property at a substantially undervalued price and with the risks of a seller carry-back loan.  They also threatened Mrs. Zhang's life.  These acts are unlawful, fraudulent and unfair.

132.   Defendants' unlawful, fraudulent and unfair acts have directly and proximately caused Mrs. Zhang to suffer actual injury and lost money, including damage to the Property, the costs of repairs she has made and will be required to make in the future, the diminution of value of her Property, and the medical, legal and other expenses she has and will incur as a result of Defendants' violations.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff Mrs. Zhang respectfully requests that this Court enter judgment in her favor and against the Defendants, jointly and severally, as follows:

1.     For monetary damages, costs of repair, and/or diminution of value as proven, loss of rent, and which damages are estimated to exceed $350,000, plus interest;

2.     For disgorgement of profits as proven, but which are estimated to be in excess of $2,000,000, plus interest as permitted by law, contract, or equity;

3.     For physical injury, pain and suffering, and emotional distress damages as proven

4.     For treble damages as permitted by statute;

5.     For exemplary and punitive damages as permitted by law or statute;

6.     For cost of suit;

7.     For attorneys' fees as permitted by law, contract or equity;

8.     For pre-judgment interest on damages proven under the pendant state claims as permitted by California law, contract, or equity;

9.     For post-judgment interest on damages proven under the pendant state claims as permitted by California law, contract, or equity; and

1      10.    For such other and further relief as the Court may deem just and proper.

2  DATED:  May 10, 2019

3                           CKR LAW, LLP

4

5                           By _____

6                                   JONATHAN P. HERSEY

7                                   Attorneys for Plaintiff
8                                   SHUANG YING (NANCY) ZHANG

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT & DEMAND FOR JURY TRIAL

1

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiff Shuang Ying (Nancy) Zhang hereby demands a jury trial on all issues so triable.

DATED:  May 10, 2019

CKR LAW, LLP


By       _____
                    JONATHAN P. HERSEY

            Attorneys for Plaintiff
       SHUANG YING (NANCY) ZHANG

COMPLAINT & DEMAND FOR JURY TRIAL