CKR LAW, LLP
JONATHAN P. HERSEY, Cal. Bar No. 189240
  jhersey@slaterhersey.com
100 Spectrum center Drive, Suite 420
Irvine, California 92618
Telephone:  949-398-7500
Facsimile:   949-398-7501

Attorneys for Plaintiff
SHUANG YING (NANCY) ZHANG

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHUANG YING (NANCY) ZHANG, | Case No. 5:19-CV-00887-VAP-KK |
| Plaintiff, | *Hon. Virginia A. Phillips*<br>*Courtroom 8A* |
| v. | **PLAINTIFF'S RICO CASE STATEMENT** |
| A-Z REALTY & INVESTMENT CORP., a California corporation; DONGYAN (ANNIE) ZHENG, an individual; JENNIFER WHELAN, an individual; REALTY ONE GROUP, INC., a California corporation; JIHUI (LUCKY) LUO, an individual, SHI DAN CHEN, and individual; MING-WING LAM, an individual; FU LONG ZHENG, an individual; and DOES 1-30, inclusive, | Complaint filed:    May 10, 2019 |
| Defendants. | |

Plaintiff Shuang Ying (Nancy) Zhang ("Plaintiff") submits this RICO Case Statement in compliance with the Court's July 10, 2019 Order (Doc. #13).

**1.    State whether the alleged unlawful conduct is in violation of 18 U.S.C. § 1962(a), (b), (c), or (d).**

18 U.S.C. § 1962(c) and 18 U.S.C. § 1962(d).

**2.    List each defendant and state the alleged misconduct and basis of liability of each defendant.**

Defendant Dongyan (Annie) Zheng ("Zheng") is a real estate broker, a real

1   estate broker licensed by the California Department of Real Estate, as well as the

2   Chief Executive Officer of and designated broker officer for defendant A-Z Realty

3   & Investment Corp.  Zheng is the sister of defendant Jennifer Whelan.  Defendant

4   Jennifer Whelan ("Whelan") is a licensed real estate broker, as well as the CFO and

5   Secretary of defendant A-Z Realty & Investment Corp.  She is the sister of

6   defendant Zheng.  Defendant A-Z Realty & Investment Corp. ("A-Z Realty") is a

7   California corporation owned, operated and controlled by defendants Zheng and

8   Whelan.  It is licensed by the California Department of Real Estate.  A-Z Realty,

9   Zheng and Whelan are referred to herein collectively as the "A-Z Defendants."

10      Defendant Jihui (Lucky) Luo ("Luo") is a California licensed real estate agent

11   associated with defendant Realty One Group, Inc.  Defendant Realty One Group,

12   Inc. ("ROG") is a real estate brokerage company licensed by the state of California.

13   Luo and ROG are referred to herein collectively as the "ROG Defendants."

14      Defendants Shi Dan Chen ("Chen"), Ming-Wing Lam ("Lam"), and Fu Long

15   Zheng ("F.L. Zheng") are individuals believed to have fraudulently and illegally

16   occupied and damaged Plaintiff's property.  Chen, Lam and F.L. Zheng (along with

17   other as of yet unknown persons) are referred to herein collectively as the

18   "Occupant Defendants."  Plaintiff suspects that F.L. Zheng may have a familial

19   relationship with Zheng and Whelan.

20      Plaintiff is the owner of a house located at 16 Via Palmieki Court in Lake

21   Elsinore, California (the "Property").  It is a single-family two-story home located in

22   the quiet Tuscany Hills residential community of Lake Elsinore, California.  It has

23   approximately 3,840 square feet of living space, with 5 bedrooms, 4.5 bathrooms, a

24   spacious entry and dining room, loft, two dens, and a large open concept kitchen and

25   family room.

26      Plaintiff contracted with the A-Z Defendants to manage and rent-out the

27   Property.  Plaintiff signed a Property Management Agreement ("PMA") with A-Z

28   Realty on July 11, 2016.  The PMA appointed and granted A-Z Realty the exclusive

right to rent, lease, operate and manage the Property for a 1-year term from August 1, 2016 to July 31, 2017. After the term expired, the PMA would continue as a non-exclusive agreement that either party could terminate on 30 days' notice.

In February 2017, the A-Z Defendants accepted a tenancy application from the ROG Defendants, who were supposedly representing a married couple, Miaoyun Wu and Xin Li. The ROG Defendants allegedly provided the rental application and certain background documents to the A-Z Defendants. The rental application and supporting background documents were fraudulent and contained false information based on the stolen identities of Miaoyun Wu and Xin Li, who were not the actual prospective tenants and who are not married and do not know each other. The A-Z Defendants informed Plaintiff about the rental application and claimed to have both reviewed the background documents provided by the ROG Defendants as well as performing their own background and credit searches on the prospective tenants.

Zheng told Plaintiff she checked Mr. Wu and Ms. Li's background. She said they had good credit scores, more than $60,000 in the bank, and owned a restaurant. Zheng said they would make good tenants. The A-Z Realty Defendants did not show the rental application, financial background documents or credit reports provided by the ROG Defendants or supposedly independently obtained by themselves to Plaintiff. A-Z Realty rented the Property to "Mr. Wu and Ms. Li." The Residential Lease or Month-to-Month Rental Agreement (the "Lease") is dated February 16, 2017, with an effective term of February 21, 2017 through February 28, 2018. Whelan's name is on the Lease on behalf of A-Z Realty. The tenants completed and "signed" a Move-In Inspection form on February 16, 2017, and provided a receipt for the keys on February 18, 2017. The A-Z Defendants did not show a copy of the Lease to Plaintiff until February 20, 2017. One of the documents the A-Z Defendants had Plaintiff sign on February 20, 2017 was a second PMA that extended the term of the exclusive agreement through February 28, 2018. The new PMA also increased A-Z Realty's monthly fee.

In May 2017, Zheng called Plaintiff and told her that she had "heard" that Chinese syndicates from the Fujian Province were renting big houses in residential neighborhoods to grow marijuana. Zheng said that these syndicates of growers were willing to pay $2.50/sf, almost twice the amount that Mr. Wu and Ms. Li were paying at $1.54/sf. Zheng also said that "Mr. Wu and Ms. Li" were from the Fujian Province and could be growing marijuana in the Property.

Zheng supposedly went to inspect the Property on May 11, 2017. That evening., she sent Plaintiff an email with photos of her inspection. Several photos showed newly constructed and unfinished walls, window coverings and exposed electrical wiring and irrigation that had been added to the interior of the home. Other photos showed approximately 150 marijuana plants in large tubs in the constructed growing rooms inside the Property. Two photos showed letters that Zheng supposedly found in the Property from a Dr. William S. Eidelman, M.D., stating that Chen and Lam were under Dr. Eidelman's care and were approved for the use of medical marijuana.

Zheng followed up the email with a phone call to Plaintiff. Plaintiff said that marijuana growing was illegal and that her husband would report the matter to the police the following day. Zheng responded that the doctor's letters proved that the occupants could legally grow the marijuana and suggested that Plaintiff demand higher rent from the Occupant Defendants rather than reporting them to the police and having them evicted. The next morning, Zheng sent Plaintiff another email stating that it is legal for the occupants to grow marijuana in the Property. Zheng attached four screenshots of articles purporting to describe the legality of residential marijuana growing in California. Zheng's statements on the phone and her emails were misleading, and likely an attempt to persuade her not to call the police. The website from which Zheng took the screenshots is run by an individual named Robert Bergman, an Amsterdam private citizen who uses his website to promote a marijuana seeds business. The beginning of the article, which Zheng omitted from

1  her screen shots, states that, "California can now legally grow up to six marijuana

2  plants at home," and that persons in California can "[p]ossess no more than 6

3  plants."  The pictures Zheng had sent Plaintiff the prior evening had 25 times that

4  number of plants, but Zheng omitted portions of the article (that was printed in

5  English) causing Plaintiff to believe that "Mr. Wu and Ms. Li" or whoever the real

6  occupants are were legally allowed to have a marijuana farm in the Property.

7        In actuality, and contrary to Zheng's statements, it was illegal to grow more

8  than 6 plants under both California Law and illegal to grow any marijuana plants

9  under Federal Law.  Zheng apparently did not ask the occupants (whoever they

10  were) whether they had a license to grow, and the City of Lake Elsinore did not

11  allow cannabis cultivation at all until November 14, 2017.  After that date, the City

12  restricted such growing operations to light industrial and heavy industrial zones.

13  (See Ordinance No. 2017-1383 published by City of Lake Elsinore).  Federal law

14  still prohibits private cultivation.

15        A few days later, Zheng came back to Plaintiff and told her that she

16  negotiated with the "occupants" for increased rent from $2,500 to $5,000, and a

17  $20,000 "penalty" to be paid in two $10,000 installments in June and October 2017.

18  Zheng demanded that Plaintiff pay A-Z Realty a nearly-doubled monthly

19  management fee.

20        In October 2017, Plaintiff went to A-Z Realty's office to get the October rent

21  and second $10,000 payment.  Zheng said she did not have the $10,000 but would

22  "ask the tenants."  Zheng told Plaintiff to sell the Property to the occupants, which

23  according to Zheng would be better for both her and Plaintiff.  Zheng proposed that

24  Plaintiff take 30% as the down payment and agree to finance the remaining 70% of

25  the purchase price Plaintiff that the "occupants" refused to pay the remaining

26  $10,000 unless Plaintiff would agree to extend the lease for another year.  Plaintiff

27  refused.

28        Without Plaintiff's knowledge or approval, Zheng offered to sell the Property

to the "tenants." She sent a text message to a person she referred to as the "tenants' contact person" saying that Plaintiff would agree to sell the Property for a 30% down payment and a 70% seller carry-back that the buyers could pay-off with monthly installments. Zheng then showed the "tenant's contact person's" response to Plaintiff. The response threatened Plaintiff's life and warned that she should "not fight with the chief of gangsters." It also evidences Zheng's ties to the Occupant Defendants and their "contact person," which is likely a relative or close acquaintance. In the message, the "contact person" refers to Zheng as "Jie," which is the Chinese word for an older sister related by blood or a woman with whom the person has an extremely close relationship. While the message instructed Zheng to tell Plaintiff not to "fight with the chief of gangsters," the contact person also told Zheng that, "I won't betray you. I won't betray Mr. Wu." Under these threats and at Zheng's urging, Plaintiff felt forced to agree to extend the Lease for another year as demanded. Zheng supposedly relayed the message to the "chief of the gangsters," and then informed Plaintiff that they had paid the second $10,000 installment.

In January 2018, Plaintiff's husband read an article titled "US Attorney General Jefferson Sessions Orders Crackdown on Marijuana Crimes" printed in the China Daily newspaper. Plaintiff forwarded a copy to Zheng and said that, according to the article and contrary to Zheng's representations, the occupants' marijuana growing operations were illegal. Plaintiff demanded that they move out by the end of February as per the original Lease and that the Property be restored to its original state. On February 7, 2018, Zheng issued a letter to "Mr. Wu and Ms. Li" saying that Plaintiff would not agree to extend the Lease. On February 16, 2018, Zheng sent an email to Plaintiff attaching several text messages from contact/ manager. The email stated that the occupants wanted to remain in the Property at least until the end of April 2018 when the plants would be fully grown and could be harvested. They added several more death threats against Plaintiff. Again, the

contact's/manager's messages referred to Zheng as "Jie," and also said, "You are Zhu Mou," meaning a person who is a strategist, planner, instigator, mastermind, or leader of a plot.

By the second week in March 2018, Zheng said that she had not received any further response from the "tenants" or their contact/manager.  Zheng suggested that they may have "run away."  Plaintiff demanded to inspect the Property, which she did with Zheng on March 12, 2018.  The Property was abandoned, the marijuana plants had been removed, and the house was so severely damaged as to be rendered uninhabitable.

When the gangsters abandoned the Property, they left written planting and crop records on the walls, doors and cabinets.  By their own accounting, they harvested 6 sets of marijuana crops totaling approximately 18,775 plants.  The street value of those plants is estimated to exceed two million dollars.  Plaintiff also found inside the Property a letter from a utility company addressed to F.L. Zheng.

The ROG Defendants represented the Occupant Defendants and provided false and fraudulent rental applications, identifications and financial information to assist the Occupant Defendants to gain access to the Property.  The A-Z Defendants provided the false and fraudulent rental applications, identifications and financial information to Plaintiff to trick her into leasing the Property to "Mr. Wu and Ms. Li," who in actuality were the Occupant Defendants.  The Occupant Defendants converted the Property into a large-scale marijuana growing operation, cultivating at least 6 different crops, severely damaging the Property in the process.  They, along with the A-Z Defendants, misled and threatened Plaintiff's life to deter her from reporting the operation to the police or taking steps to evict them.

**3.     List the alleged wrongdoers, other than the defendants listed in the Complaint, and state the alleged misconduct of each wrongdoer.**

"Mr. Wu" is the Occupant Defendants "manager" or "contact person" with whom the A-Z Defendants supposedly corresponded about the Property.  He is or is

associated with the "chief of the gangsters."  Wu's exact identity is not yet known. He made or relayed the death threats against Plaintiff, and he referred to Zheng as the mastermind or instigator of the operations.

Dr. William S. Eidelman provided medical letters to Shen and Lam supposedly supporting their marijuana cultivation and use, which the Occupant Defendants and A-Z Defendants fraudulently used to convince Plaintiff not to call the police or evict them.

There may be additional unidentified occupants and/or gangsters involved in the operations.

**4.      List the alleged victims and state how each victim was allegedly injured.**

Plaintiff is an individual residing in El Monte, California.  She is the owner of the Property located at 16 Via Palmieki Court in Lake Elsinore, California.  Her life and health were directly threatened on multiple occasions by the defendants/gangsters who fraudulently gained access to the Property, and who severely damaged the Property by converting it into an illegal marijuana growing farm.  Plaintiff was exposed to the toxic mold the defendants and others caused to grow in the Property.  The estimated costs of repairs of the Property exceed $275,000, and she has been unable to rent the Property.

Xun Li is an individual (unrelated to Plaintiff or victim Miaoyun Wu) residing in Rancho Cucamonga, California.  Her identity (including her driver license number, Social Security number, and banking information) was stolen and fraudulently used by the defendants to rent the Property.

Miaoyun Wu is an individual (unrelated to Plaintiff or victim Xun Li) residing in Arcadia, California.  His identity (including his driver license number, Social Security number, and banking information) was stolen and fraudulently used by the defendants to rent the Property.

5.      **Describe in detail the pattern of racketeering activity or collection of unlawful debts alleged for each RICO claim. A description of the pattern of racketeering shall include the following information:**

   a. **List the alleged predicate acts and the specific statutes which were allegedly violated;**

   b. **Provide the dates of predicate acts, the participants in the predicate acts, and a description of the facts surrounding the predicate acts;**

   c. **If the RICO claim is based in the predicate offenses of wire fraud, mail fraud, or fraud in the sale of securities, the "circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b).  Identify the time, place and contents of the alleged misrepresentations, and the identity of persons to whom and by whom the alleged misrepresentations were made;**

   d. **State whether there has been a criminal conviction for violation of each predicate act;**

   e. **State whether civil litigation has resulted in a judgment in regard to each predicate act;**

   f. **Describe how the predicate acts form a "pattern of racketeering activity"; and**

   g. **State whether the alleged predicate acts relate to each other as part of a common plan. If so, describe in detail.**

(a)      In addition to the acts described above in response to Question 2, the predicate acts and specific statutes that were allegedly violated include:

- The federal Controlled Substances Act (21 U.S.C. §§ 801 *et seq.*) ("CSA").  The CSA prohibits a wide range of activities related to cannabis. It makes it illegal, for example, to (a) knowingly or

intentionally grow, manufacture, distribute or possess cannabis (21 U.S.C. § 841); (b) knowingly use, maintain or profit from cannabis-related premises, whether as an owner, lessee, occupant or mortgagee (21 U.S.C. § 856); (c) possess or distribute equipment, chemicals, products or material with the intent of using them to grow or produce cannabis (21 U.S.C. § 843(a)); (d) use a telephone, mail, e-mail or the Internet to further the manufacture or sale of cannabis (21 U.S.C. § 843(b)-(c)); and (e) reinvest or launder cannabis proceeds or knowingly facilitate or engage in financial transactions with such funds (21 U.S.C. §§ 1956(a), 1956(h), 1957(a)). The CSA imposes severe fines and extended prison terms for violations (21 U.S.C. § 841(b)).

- Several California laws, including: the California Controlled Substances Act that still lists cannabis as a Schedule I controlled substance (Cal. Health & Safety Code § 11054(d)(13)); Cal. Bus. & Prof. Code § 26038(c)) (prohibiting commercial cannabis activity without a local permit and state license); the Medical Marijuana Regulation and Safety Act ("MMRSA"), which instituted a comprehensive licensing and regulatory scheme for the growth and sale of cannabis products; the Adult Use of Marijuana Act ("AUMA"), which legalized recreational cannabis and instituted a comprehensive licensing and regulatory scheme for its cultivation, manufacture, distribution and sale; and the Medicinal and Adult Use Cannabis Regulation and Safety Act ("MAUCRSA"), which requires anyone intending to grow, manufacture, distribute or sell cannabis first obtain a state license and a local permit.

1 • City of Lake Elsinore Ordinance No. 2017-1383, which only
2 permitted limited marijuana cultivation after November 2017 in
3 certain light industrial and heavy industrial zones.

4 • Interstate mail and wire communications laws, 18 U.S.C. §§ 1341
5 and 1343.

6 (b) The dates, participants and descriptions of the facts surrounding the
7 predicate acts are described detail in response to Question 2, and include:

8 • The illegal marijuana/cannabis growth, cultivation and sales by the
9 Occupant Defendants from February 2017 until at least March 2018
10 (and likely with sales after that date).

11 • The creation and transmission through interstate mail and by
12 interstate wire of the fraudulent rental application, fake identity
13 documents and other forged financial information by the ROG
14 Defendants and A-Z Defendants at various and numerous times as
15 specifically identified in the complaint, but starting on or about
16 February 16, 2017.

17 • The transmission through interstate mail and by interstate wire of
18 the misleading and fraudulent marijuana growing information by the
19 A-Z Defendants in May 2017.

20 • The transmission through interstate mail and by interstate wire of
21 the death threats by the Occupant Defendants and A-Z Defendants,
22 including but not limited to, November 15, 2017 and February 16,
23 2018.

24 (c) The time, place and contents of the allegedly fraudulent or mistaken
25 statements, and the identities of the persons who made them and to whom they were
26 made, include:

27 • The creation and transmission through interstate mail and by
28 interstate wire of the fraudulent Mr. Wu and Ms. Li rental

applications, fake identity documents and other forged financial information by Luo to Zheng and Whelan at or around February 16, 2017.

- The creation and transmission by the A-Z Defendants of the fraudulent Lease by Zheng and Whelan to Plaintiff on or around February 20, 2017.

- The transmission through interstate mail and by interstate wire of the misleading and fraudulent marijuana growing information by the Zheng to Plaintiff in May 2017.

- The transmission through interstate mail and by interstate wire of the Property sale proposals by Zheng to the Occupant Defendants or their unidentified manager/representative "Mr. Wu" in October and November 2017 (and specifically November 15, 2017), and then again in February 2018 (specifically February 7 & 16, 2018).

- The death threats transmitted through interstate wire by the Occupant Defendants ("Mr. Wu") and Zheng to Plaintiff, on or about November 15, 2017 and February 16, 2018.

(d)     Plaintiff is not aware of any criminal convictions arising from or related to any of the predicate acts.

(e)     Plaintiff is not aware of any civil judgments arising from or related to any of the predicate acts.

(f)     Each of the Defendants has conducted and participated in the conduct of the affairs of the marijuana growing enterprise through a pattern of racketeering activity by committing more than two related and continuous acts of racketeering, as defined in 18 U.S.C. § 1961(1), through the ongoing cultivation, distribution and sale of marijuana and cannabis products, a Schedule I controlled substance, in violation of the Controlled Substances Act ("CSA") and other laws, statutes and ordinances mentioned above.  The ROG Defendants and A-Z Defendants

1    represented the occupants and gangsters in leasing the Property and enabling the

2    cultivation, distribution and sale of the marijuana crops.  They used interstate mail

3    and wire mechanisms to further the conspiracy.  The Occupant Defendants are

4    believed to have cultivated the marijuana, and the occupants' "contact/manager"

5    ("Mr. Wu") assisted with and participated in the leasing and growing operation and

6    also threatened Plaintiff's life.  The pattern of racketeering activity through the

7    commission of at least two related acts of racketeering as defined in 18 U.S.C. §

8    1961(1) includes, but is not limited to, the suspected leasing of similar properties by

9    the Occupant Defendants, possibly with the assistance and aid of the ROG

10   Defendants and/or A-Z Defendants.  The same scheme has apparently been

11   perpetrated against other property-owners in and around the Lake Elsinore and

12   greater Southern California area.  Indeed, Zheng informed Plaintiff that tenants such

13   as the Occupant Defendants have rented and continue to rent residential properties

14   similar to Plaintiff's Property for the purpose of conducting their ongoing criminal

15   activities.  With specific regard to Plaintiff's Property, the pattern of racketeering

16   arises from and includes the separate cultivation of at least 6 different crops of

17   marijuana plants inside the Property, the multiple threats made against Plaintiff's

18   life, and the numerous uses of interstate mail and wire to transmit fraudulent and

19   misleading statements and threats.

20          Plaintiff also alleges that the criminal conspiracy is continuing and was

21   threatened to continue, as evidenced by, among other things, Zheng's statement that

22   a number of persons from the Fujian Provence are looking to rent large houses in the

23   area to create marijuana farms, and the occupants' repeated requests to extend the

24   Lease, including for an additional year after it was set to expire.  On information and

25   belief, there is also a longstanding and on-going and possibly familial relationship

26   between the defendants, including but not limited to Zhang, F.L. Zheng, and/or "Mr.

27   Wu.".  The defendants' activities therefore amount to or pose a threat of continued

28   criminal activity, including both a series of related acts extending over a substantial

period of time of more than a year (from at least February 2017 until March 2018), as well as a specific threat of repetition with the continued sale of the marijuana and use of other properties in the same manner and for the same purposes.

(g)     Plaintiff believes the predicate acts relate to a common plan or scheme involving the large-scale illegal growth and distribution of marijuana.  The defendants fraudulently trick unsuspecting property owners into renting their properties to the criminal growers.  If and when their operations are discovered, the fraudulently attempt to convince the owners that the operations are legal, and also attempt to avoid criminal prosecution and eviction through bribes and threats of physical violence.

**6.     Describe in detail the alleged enterprise for each RICO claim. A description of the enterprise shall include the following information:**

> **a. State the names of the individuals, partnerships, corporations, associations, or other legal entities, which allegedly constitute the enterprise;**
>
> **b. Describe the structure, purpose, function and course of conduct of the enterprise;**
>
> **c. State whether any defendants are employees, officers or directors of the alleged enterprise;**
>
> **d. State whether any defendants are associated with the alleged enterprise;**
>
> **e. State whether the claimant is alleging that the defendants are individuals or entities separate from the alleged enterprise, or that the defendants are the enterprise itself, or members of the enterprise; and**
>
> **f. If any defendants are alleged to be the enterprise itself, or members of the enterprise, explain whether such defendants are**

1   **perpetrators, passive instruments, or victims of the alleged**
2   **racketeering activity.**

3       (a)    Plaintiff alleges that the ROG Defendants, A-Z Defendants and
4   Occupant Defendants are each members of an association-in-fact enterprise.

5       (b)    The structure of the enterprise includes persons responsible for the
6   cultivation and sale of marijuana (the Occupant Defendants) and persons who assist
7   them with the location and leasing of the properties in which to farm their products
8   and conduct their related illegal activities (the ROG Defendants and A-Z
9   Defendants).  The Occupant Defendants may have a "contact" or "manager" ("Mr.
10  Wu") who gives the appearance of negotiating with a property manager.  The
11  enterprise may also have a "mastermind" or "instigator," possibly Zheng, Chen, or
12  F.L. Zheng.  The common purpose of the enterprise is the growth, cultivation,
13  distribution and sale of marijuana and other cannabis products.  The course of
14  conduct is as described in response to Question 2.

15      (c)    Plaintiff is not aware if any of the defendants are employees of the
16  alleged enterprise.  Plaintiff suspects that the enterprise has a director—a "leader,
17  instigator, or mastermind"—possibly Zheng, Chen, F.L. Zheng or "Mr. Wu."

18      (d)    All defendants are allegedly associated with the enterprise, although
19  ROG and/or A-Z Realty may be passive instrumentalities of the Luo and/or Zheng
20  and Whelan, respectively.

21      (e)    Plaintiff alleges that the ROG Defendants, A-Z Defendants and
22  Occupant Defendants are individuals or entities separate from the alleged enterprise,
23  which is comprised in part of their memberships.

24      (f)    The separate defendants are not alleged to the enterprise itself.  The
25  defendants are each alleged to be members of the enterprise, although ROG and/or
26  A-Z Realty may be passive instrumentalities (and therefore victims) of the Luo
27  and/or Zheng and Whelan, respectively, and the racketeering activities.

28

7.      **State and describe in detail whether the claimant is alleging that the pattern of racketeering activity and the enterprise are separate or have merged into one entity.**

Plaintiff alleges that the pattern of racketeering activities and the enterprise have merged into a single entity for the purposes of the racketeering activities related to Plaintiff's Property and the use of similar properties to cultivate and sell marijuana and cannabis products.  However, the ROG Defendants and A-Z Defendants may have separate and unrelated business activities unrelated to the alleged racketeering activities and enterprise.

8.      **Describe the alleged relationship between the activities of the enterprise and the pattern of racketeering activity. Discuss how the racketeering activity differs from the usual and daily activities of the enterprise, if at all.**

The alleged relationship between the activities of the enterprise and the pattern of racketeering includes, but is not limited to, the fraudulent leasing of properties, growth and sale of illegal marijuana and cannabis products in the properties, and attempts to avoid criminal prosecution or disruption of the enterprise.  If and when their operations are discovered, the fraudulently attempt to convince the owners that the operations are legal, and also attempt to avoid criminal prosecution and eviction through bribes and threats of physical violence.  However, the usual and daily activities of the ROG Defendants and A-Z Defendants likely include representing legitimate clients with the sale, purchase, renting and/or management of their properties unrelated to marijuana growth and distribution.

9.      **Describe what benefits, if any, the alleged enterprise receives from the alleged pattern of racketeering.**

The enterprise receives the proceeds from its illegal marijuana cultivation and sale of marijuana and cannabis products.

**10.     Describe the effect of the activities of the enterprise on interstate or foreign commerce.**

The effect of the activities of the enterprise on interstate and/or foreign commerce includes the alleged transport, distribution and sale of large quantities of marijuana and other cannabis products across state lines and in the stream of interstate and international commerce, including but not limited to the use of interstate wires for communication and the interstate and international transfer of money, both for the illegal crop products and also for the property rentals.

**11.     If the complaint alleges a violation of 18 U.S.C. § 1962(a), provide the following information:**

> **a. State who received the income derived from the pattern of racketeering activity or through the collection of an unlawful debt; and**
>
> **b. Describe the use or investment of such income.**

The complaint does not allege a violation of 18 U.S.C. § 1962(a).

**12.     If the complaint alleges a violation of 18 U.S.C. § 1962(b), describe in detail the acquisition or maintenance of any interest in or control of the alleged enterprise.**

The complaint does not allege a violation of 18 U.S.C. § 1962(b).

**13.     If the complaint alleges a violation of 18 U.S.C. § 1962(c), provide the following information:**

> **a. State who is employed by or associated with the enterprise; and**
>
> **b. State whether the same entity is both the liable "person" and the "enterprise" under § 1962(c).**

(a)     Plaintiff is not aware that any of the defendants or any other persons are "employed" by the enterprise.  Plaintiff alleges that the enterprise is an association-in-fact of the ROG Defendants, A-Z Defendants, and Occupant Defendants.

(b)     The "persons" liable for the criminal racketeering activities are the individual defendants and corporations separately identified as the ROG Defendants, A-Z Defendants, and Occupant Defendants.  Plaintiff alleges that the enterprise is an association-in-fact of the ROG Defendants, A-Z Defendants, and Occupant Defendants.

**14.     If the complaint alleges a violation of 18 U.S.C. § 1962(d), describe in detail the alleged conspiracy.**

The complaint alleges a violation of 18 U.S.C. § 1962(d).  The broad range of circumstances and predicate acts giving rise to the conspiracy are described in response to Question 2, and also in paragraphs 20-58 of the complaint, which are hereby incorporated herein by reference.  Plaintiff alleges that each of the defendants conspired with some or all of the other defendants, and possibly other unidentified individuals and entities, in violation of 18 U.S.C. § 1962(d), to commit the acts of racketeering.  Each of the Defendants knowingly agreed to facilitate the scheme that includes the operation and management of the marijuana farming criminal enterprise, including but not limited to obtaining false identity documentation and creating false rental applications, providing false tenant information and leases, obtaining medical growth and usage letters to give the impression of legitimacy and legality, and assisting in the growth, distribution and sale of the illegal marijuana products.  They also conspired to trick, convince or threaten Plaintiff and other property owners not to report the criminal activities to law enforcement agencies.

**15.     Describe the alleged injury to business or property.**

The alleged injury includes, but is not limited to the more than $275,000 of damage done to the Property.  To accomplish their farming operation, the gangsters had added numerous unfinished walls, electrical wiring for high wattage UV lighting, and an irrigation system to the interior of the house.  They separated the open living areas into different growing rooms.  For example, they walled-off the

downstairs family room from the kitchen, the downstairs open living and dining rooms from the entry, and the upstairs den from the stairs and hallway.  They re-wired the electrical system to support growing lights in almost every room.  They changed the water systems both inside and outside the house, disconnecting the landscape irrigation system, including to the system for the plants that stabilize the uphill land on the property.  Those plants died, leaving the slope unstable and prone to severe mudslides.  Both air conditioning units were broken.  The sewer system was clogged.  They left countless holes of different sizes in the ceiling and walls through which a new internal air circulating system was constructed.  All windows were sealed to prevent light or vision from the outside.  Metal tubes, cables and other materials were left throughout.  All of the smoke alarms were ripped out.  The tenants had sealed the home off from outside air and then routinely flooded the floors when they watered their plants.  This created an extremely hot and humid climate good for growing the marijuana plants, but that also caused massive water damage and mold infestation.  Plaintiff was forced to pay for some immediate repairs.  She changed the home's locks and garage door openers, and had contractors remove the trash and soil from inside the house and the yards.  She also had the water, electrical and gas systems repaired.  She started mold treatment and remediation, which required most of the home's drywall to be removed, along with the flooring in the affected areas.  The costs of these initial repairs exceeded $25,500.  The Property needs additional repairs that Plaintiff lacks the money to complete, including cleaning the sewer laterals to the sewer main, installing new irrigation and landscaping, installing new drywall and flooring, repairing or installing plumbing and electrical fixtures, insulation, paint, new HVAC units and ducting, and new doors and window treatments.  Estimated costs of the additional repairs exceed $250,000.  The Property remains unrented.

**16.    Describe the direct causal relationship between the alleged injury and the violation of the RICO statute.**

The acts of racketeering and conspiracy to participate in and further such activities are a direct and proximate cause of actual damage to Plaintiff's Property, including damage and costs of repair, diminution in value, and lost rents, as well as the abuse and emotional trauma she has suffered from the threats to her life.

**17.    List the damages sustained for which each defendant is allegedly liable.**

As for the RICO claim, each defendant is responsible for the damage to and costs of repair of the Property (estimated in excess of $275,000) and the lost rent (estimated at least $2,500 per month since March 2018 and continuing).  The profits of the criminal enterprise may also be disgorged to Plaintiff, and are estimated to exceed $2,000,000 based on the crop production records discovered in the Property. Per the RICO statute, these damages may be tripled, and the defendants are also responsible for Plaintiff's attorneys' fees and costs.

**18.    List all other federal causes of action, if any, and provide the relevant statute numbers.**

The complaint does not allege any other federal claims.

**19.    List all supplemental state claims, if any.**

The supplemental state law claims include: breach of fiduciary duty against the A-Z Defendants; intentional fraud and deceit against all defendants; negligent misrepresentation against all defendants; breach of the PMA contract against A-Z Realty; trespass and wrongful occupancy against all defendants; nuisance against all defendants; elder abuse against all defendants; financial elder abuse against all defendants; intentional infliction of emotional distress against all defendants; negligence/property damage against all defendants; and statutory unfair competition in violation of California Business & Professions Code § 17200 against all defendants.

1  **20.   Provide any additional information that would be helpful to the**
2  **Court in processing the RICO claim.**

3  Defendants' alleged racketeering activities and enterprise were cloaked in
4  fraud (e.g., the assumption of false identities to lease the Property).  Plaintiff
5  believes that the identities of additional participants and facts demonstrating the
6  broader scope of the enterprise's activities will be uncovered in discovery.  Plaintiff
7  reserves the right to amend this Statement to provide the Court and parties with
8  additional information during discovery that will assist in the processing of the
9  RICO claim asserted in this action if and when appropriate and necessary.

10
11  DATED: July 22, 2019                    CKR LAW, LLP
12
                                      By:  */s/ Jonathan P. Hersey*
13                                          Jonathan P. Hersey
                                            Attorneys for Plaintiff
14                                          SHUANG YING (NANCY) ZHANG
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFF'S RICO CASE STATEMENT