1 | S. Frank Harrell – SBN 133437
sharrell@lynberg.com
2 | Tamara M. Heathcote – SBN 193312
theahtcote@lynberg.com
3 | **LYNBERG & WATKINS**
A Professional Corporation
4 | 1100 Town & Country Road, Suite 1450
Orange, California 92868
5 | (714) 937-1010 Telephone
(714) 937-1003 Facsimile
6 |
Attorneys for Defendant, REALTY ONE GROUP, INC. and JIHUI (LUCKY) LUO
7 |

8 | **UNITED STATES DISTRICT COURT**

9 | **CENTRAL DISTRICT OF CALIFORNIA**

10 |

11 |

| SHUANG YING (NANCY) ZHANG, | CASE NO. 5:19-cv-00887-KK |
|---|---|
| Plaintiff, | *Assigned for All Purposes to:*<br>*Hon. Kenly Kato – Ctrm  3/4* |
| vs. | **DEFENDANTS REALTY ONE GROUP, INC. AND JIHUI (LUCKY) LUO'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW** |
| A-Z REALTY & INVESTMENT CORP., a California corporation; DONGYAN (ANNIE) ZHENG, an individual; JENNIFER WHELAN, an individual; REALTY ONE GROUP, INC., a California Corporation; JIHUI (LUCKY) LUO, an individual; SHI DAN CHEN, and individual; MING-WING LAM, an individual; FU LONG ZHENG, an individual; and DOES 1-30, inclusive, | *Trial Date:     March 15, 2021*<br>*Complaint filed: May 10, 2019* |
| Defendants. | |

DEFENDANTS REALTY ONE GROUP, INC. AND JIHUI (LUCKY) LUO'S
MEMORANDUM OF CONTENTIONS OF FACT AND LAW

# I.   CLAIMS AND DEFENSES (LOCAL RULE 16-4.1)

### A.   Claim 1:   RICO Violations, 18 U.S.C. §§ 1962(c)-(d).

Plaintiff Shuang Ying (Nancy) Zhang ("Plaintiff") claims Defendants A-Z Realty & Investment Corp, Dongyan (Annie) Zheng and Jennifer Whelan (collectively "A-Z Realty Defendants"); Defendants Realty One Group, Inc. and Jihui (Lucky) Luo (collectively "Realty One Defendants"); Defendant Shi Dan Cheng ("Cheng") and Defendant Ming-Wing Lam ("Lam") formed an association-in-fact enterprise by establishing contractual, business, and other relationships with each other and collaborated to use the Property for the commercial cultivation, processing distribution and sale of marijuana in violation of RICO statutes.

#### 1.   Elements Required to Establish Claim 1:

##### a)   RICO Violation Pursuant to 18 U.S.C. § 1962(c)

To succeed on this claim, Plaintiff must prove each of the following five facts by a preponderance of the evidence:

First, you must find the existence of an enterprise.

Second, you must find that the enterprise engaged in, or had some effect on, interstate or foreign commerce.

Third, you must find that Defendants were employed by or associated with the alleged enterprise.

Fourth, you must find that Defendants participated, either directly or indirectly, in the conduct of the affairs of the enterprise.

And fifth, you must find that Defendants participated through a pattern of racketeering activity.

For the first element, Plaintiff must prove the existence of an enterprise. Association-in-fact enterprise: An "enterprise" doesn't have to be a legal entity. It can be an association of persons or entities. The association between the enterprise's members might be loose or informal. But the enterprise must have at least a purpose,

relationships among those associated with the enterprise, and a duration sufficient to permit those associates to pursue the enterprise's purpose.

For the second element, Plaintiff, must prove that the enterprise engaged in or had an effect on interstate or foreign commerce. "Engage in or have an effect on interstate or foreign commerce" means that the enterprise either engaged in, or had an effect on commerce between two or more states, or on commerce between a state and a foreign country.

For the third element, Plaintiff must prove that Defendants were employed by or associated with the alleged enterprise. The requirement that Defendants be "employed by or associated with" the enterprise means they must have some minimal association with the alleged enterprise. Defendants must know something about the alleged enterprise's activities as they relate to the racketeering activities.

For the fourth element, Plaintiff must also prove by a preponderance of the evidence that Defendants "participated, directly or indirectly, in the conduct of the affairs of the enterprise." To prove this, Plaintiff must show that Defendants actively conducted or participated in conducting the affairs of the alleged enterprise through a pattern of racketeering activity. Defendants don't need to participate in, or be aware of, all of the enterprise's activities. It's sufficient if Defendants conducted or participated in the conduct of some of the enterprise's activities through a pattern of racketeering activity.

For the fifth element, Plaintiff must prove that Defendants participated in the conduct of the enterprise's affairs through a pattern of racketeering activity. "Racketeering activity" is an act that violates the Controlled Substances Act.

Plaintiff must also prove by a preponderance of the evidence that Defendants violated the Controlled Substances Act.

An act of "racketeering activity" is also called a "predicate act."

A "pattern of racketeering activity" means that Defendants committed at least

DEFENDANTS REALTY ONE GROUP, INC. AND JIHUI (LUCKY) LUO'S
MEMORANDUM OF CONTENTIONS OF FACT AND LAW

two distinct predicate acts. Distinct does not have to mean different types. But by itself, proof of two or more predicate acts doesn't establish a pattern under RICO.

To prove a pattern of predicate acts, Plaintiff must show that the acts were related to one another and to the enterprise. Two or more acts of racketeering activity that aren't related don't establish a pattern of racketeering activity under RICO. Predicate acts are "related" to one another if they have the same or similar purposes, results, participants, victims, or methods. Predicate acts are also related if they have common distinguishing characteristics and aren't isolated events.

To make up a pattern of racketeering activity, predicate acts must demonstrate continuity. Continuity can be demonstrated in two basic ways. The first is to demonstrate related predicate acts extending over a substantial period of time. The second is to show conduct that doesn't occur over a substantial period of time but, by its nature, is likely to be repeated into the future.

Ninth Circuit Manual of Model Jury Instructions (2017), 8.0 which refers one to use the Eleventh Circuit Pattern Jury Instructions – Civil Cases (2013), 7.3.

### b) Violation of Controlled Substances Act

To prove that Defendants violated this Act, Plaintiff must prove that:

1.    Defendants sold, furnished, administered, gave away, transported for sale, or imported into California a controlled substance;

2.    Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty One Group, Inc.; Jihui (Lucky) Luo; Shi Dan Chen and Ming-Wing Lam knew of its presence;

3.    Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty One Group, Inc.; Jihui (Lucky) Luo; Shi Dan Chen and Ming-Wing Lam knew of the substance's nature or character as a controlled substance;

4.    The controlled substance was Cannabis

DEFENDANTS REALTY ONE GROUP, INC. AND JIHUI (LUCKY) LUO'S
MEMORANDUM OF CONTENTIONS OF FACT AND LAW

1    5.    The controlled substance was in a usable amount.

2  California Criminal Jury Instructions (2020) 2300.

3              c)    **RICO Violation Pursuant to 18 U.S.C. § 1962(d)**

4  To prove a RICO conspiracy, Plaintiff must prove each of the following three

5  facts by a preponderance of evidence:

6  First, you must find that two or more people agreed to try to accomplish an

7  unlawful plan to engage in a pattern of racketeering activity.

8  And second, you must find that a defendant agreed to the overall objective of

9  the conspiracy.

10  Or, as an alternative to the second element, you must find that a defendant

11  agreed with at least one other defendant to commit two predicate acts as part of the

12  conspiracy.

13  Ninth Circuit Manual of Model Jury Instructions (2017) 8.0 which refers one to use

14  the Eleventh Circuit Pattern Jury Instructions – Civil Cases (2013) 7.4.

15              **2.    Key Evidence in Opposition to Claim 1**

16  Plaintiff cannot establish the elements for Claim 1 as to the Realty One

17  Defendants.

18  Plaintiff and her husband have been wealthy, sophisticated real estate

19  investors for many years. They purchased the Property in October 2009 for

20  $341,000. Plaintiff never resided in the Property but, rather, intended to (and did)

21  use it as a source of rental income.

22  The relevant occurrences began when Plaintiff put the Property on the rental

23  market with her self-selected agent – the A-Z Realty Defendants.  The A-Z Realty

24  Defendants thereafter advertised the Property to prospective tenants.

25  Persons who identified themselves as "Miaoyun Wu" and "Xin Li" (the

26  "Paper Tenants"), thereafter approached the Realty One Defendants for help in

27  leasing the Property through "WeChat", a Chinese language web platform used by

28

DEFENDANTS REALTY ONE GROUP, INC. AND JIHUI (LUCKY) LUO'S
MEMORANDUM OF CONTENTIONS OF FACT AND LAW

billions worldwide for commerce (include real estate rentals).[1] Realty One's agent, Ms. Lucky Luo, requested the Paper Tenants to provide standard identification and other identifying information in support of their application to lease the Property. Nothing seemed out of the ordinary to Ms. Luo.[2] And nothing about the Paper Tenants or their identification papers seemed odd or unusual.

The Realty One Defendants thereafter passed on the Paper Tenants' signed rental application to Plaintiff's agents (the A-Z Realty Defendants). Consistent with their duties to Plaintiff, A-Z Defendants should have reviewed the Paper Tenants' information and performed a background check on them. According to the A-Z Defendants, when nothing suspicious turned up, the A-Z Realty Defendants presented the Paper Tenants to Plaintiff and recommended that Plaintiff enter a lease agreement with them. Plaintiff agreed and the Property was leased to the Paper Tenants. Ms. Luo received a $300 fee for her work on the rental.

Approximately two months after the Paper Tenants supposedly moved into the Property, the A-Z Realty Defendants contacted Plaintiff and informed her that "Chinese syndicates" were looking to rent large houses in which to grow marijuana. Plaintiff was also informed that these syndicates were willing to pay almost twice the market rate than was currently being paid to rent the Property.

According to Plaintiff, a few days later, this announcement started to make sense when the A-Z Realty Defendants advised her that the rental Property in issue was being used to cultivate marijuana. Specifically, the A-Z Realty Defendants stated the Property had newly constructed walls, exposed electrical wiring and an irrigation system for the interior of the home. The A-Z Realty Defendants further

---

[1] All of the persons involved in this transaction speak Mandarin as their first language. For her part, Ms. Luo has very limited English skills.
[2] As often occurs on "WeChat", the contact between Ms. Luo and the Paper Tenants was all on line.

DEFENDANTS REALTY ONE GROUP, INC. AND JIHUI (LUCKY) LUO'S
MEMORANDUM OF CONTENTIONS OF FACT AND LAW

1  advised that the Property's interior now featured approximately 150 marijuana

2  plants growing in "large tubs". Moreover, the Paper Tenants were using an alias to

3  conceal their operation. They were actually persons named "Shi Dan Chen" and

4  "Ming-Wing Lam" (the "Tenant Defendants").

5  By her own admission, Plaintiff declined to contact the police with any of this

6  unsettling information. Instead, and according to Plaintiff, she listened attentively

7  while the A-Z Defendants attempted to convince her that the activities occurring in

8  the Property were all actually "legal". As Plaintiff tells it, the A-Z Realty

9  Defendants advised her that she could profit handsomely from the marijuana trade.

10  To prove their point, the A-Z Realty Defendants informed Plaintiff that they

11  had already negotiated a "rent increase" with the Tenant Defendants from $2,500 to

12  $5,000 along with an agreed $20,000 enhanced payment for marijuana cultivation

13  ($10,000 of which was to be paid in June 2017 and $10,000 more in October 2017).

14  According to Plaintiff, the A-Z Realty Defendants also demanded that Plaintiff pay

15  them a nearly doubled monthly management fee to account for their "good work".

16  Once again, Plaintiff declined to contact the authorities with any of this

17  illegality.

18  In accordance with the above, after the rental agreement was signed, there is

19  no evidence that the Realty One Defendants had any further contact with the

20  Defendant Tenants or any other of the Defendants.  This evidence is supported by

21  the testimony of Plaintiff; Defendant Dongyan (Annie) Zheng; and Ms. Luo.  This is

22  also supported by the documentary evidence including the emails between Ms. Luo

23  and the A-Z Realty Defendants during the sending of the financial information from

24  the perspective renters and A-Z Realty Defendants.

25  **B.     Claim 2:  Intentional Fraud and Deceit**

26  Plaintiff claims Defendants made false statements directly to Plaintiff or

27  through her agents and upon which they intended her to rely including (a) the actual

28

DEFENDANTS REALTY ONE GROUP, INC. AND JIHUI (LUCKY) LUO'S
MEMORANDUM OF CONTENTIONS OF FACT AND LAW

1  identities of the occupants of the Property, including false information and the

2  forged documents provided to Plaintiff; (b)  continued statements about the

3  identifies of Mr. Wu and Ms. Li as occupants of the property; and (c) the occupants'

4  willingness and intentions to pay additional amounts to continue renting the

5  Property and to pay the costs to return the Property to its original state before it had

6  been converted to a marijuana farm.

### 1.    Elements Required to Establish Claim 2

To establish this claim, Plaintiff must prove all of the following:

1.    That Defendants represented to Plaintiff that a fact was true;

2.    That Defendants' representation was false;

3.    That Defendants knew that the representation was false when they
made it, or that they made the representation recklessly and without regard for its
truth;

4.    That Defendants intended that Plaintiff rely on the representation;

5.    That Plaintiff reasonably relied on Defendant's representation;

6.    That Plaintiff was harmed; and

7.    That Plaintiff's reliance on Defendants' representation was a
substantial factor in causing her harm.

California CACI Jury Instructions (2021) 1900.

### 2.    Key Evidence in Opposition to Claim 2

There has been no evidence presented that the Realty One Defendants did
anything more than pass along the information provided by the perspective renters
to the A-Z Realty Defendants.  There was nothing requiring the Realty One
Defendants to perform any type of background check or financial verification.  In
fact, Realty One Defendants' expert will testify that it was the responsibility of A-Z
Realty Defendants to verify the background and financial information as to the
perspective tenants or to inform Plaintiff that this verification was not performed.

1  Plaintiff was aware of the acts transpiring in her home and condoned them by

2  accepting increased rent payments and security deposits.  She did not call the police

3  as she wanted the conduct in the Property to continue for as long as she was getting

4  paid the additional funds.

5  ### C.  Claim 3:  Negligent Misrepresentation

6  Plaintiff claims that Defendants made false statements

7  Plaintiff claims Defendants made false statements directly to Plaintiff or

8  through her agents and upon which they intended her to rely including (a) the actual

9  identities of the occupants of the Property, including false information and the

10  forged documents provided to Plaintiff; (b)  continued statements about the

11  identifies of Mr. Wu and Ms. Li as occupants of the property; and (c) the occupants'

12  willingness and intentions to pay additional amounts to continue renting the

13  Property and to pay the costs to return the Property to its original state before it had

14  been converted to a marijuana farm.

15  ### 1.  Elements Required to Establish Claim 3

16  To establish this claim, Plaintiff, Shuang Ying (Nancy) Zhang must prove all

17  of the following:

18  1.  That Defendants represented to Plaintiff that a fact was true;

19  2.  That Defendants' representation was not true;

20  3.  That although Defendants may have honestly believed that the

21  representation was true, they had no reasonable grounds for believing the

22  representation was true when they made it;

23  4.  That Defendants intended that Plaintiff rely on this representation;

24  5.  That Plaintiff reasonably relied on Defendants' representation;

25  6.  That Plaintiff was harmed; and

26  7.  That Plaintiff's reliance on Defendants' representation was a

27  substantial factor in causing her harm.

28

DEFENDANTS REALTY ONE GROUP, INC. AND JIHUI (LUCKY) LUO'S
MEMORANDUM OF CONTENTIONS OF FACT AND LAW

1  California CACI Jury Instructions (2021) 1903.

2  ## 2.     Key Evidence In Opposition to Claim 3

3      There has been no evidence presented that the Realty One Defendants did

4  anything more than pass along the information provided by the perspective renters

5  to the A-Z Realty Defendants.  There was nothing requiring the Realty One

6  Defendants to perform any type of background check or financial verification.  In

7  fact, Realty One Defendants' expert will testify that it was the responsibility of A-Z

8  Realty Defendants to verify the background and financial information as to the

9  perspective tenants or to inform Plaintiff that this verification was not performed.

10      Plaintiff was aware of the acts transpiring in her home and condoned them by

11  accepting increased rent payments and security deposits.  She did not call the police

12  as she wanted the conduct in the Property to continue for as long as she was getting

13  paid the additional funds.

14  ## D.     Claim 4:  Tresspass and Wrongful Occupancy

15      Plaintiff claims that Defendants intentionally or recklessly or negligently

16  entered into the Property or caused other Defendants to enter into the Property

17  without permission or under false pretenses.

18  ## 1.     Elements Required to Establish Claim 4

19      To establish this claim, Plaintiff must prove all of the following:

20  1.     That Plaintiff owned the property;

21  2.     That Defendants intentionally, recklessly negligently entered Plaintiff's

22  property or intentionally, recklessly or negligently caused another person to enter

23  Plaintiff's property;

24  3.     That Plaintiff did not give permission for the entry;

25  4.     That Plaintiff was actually harmed; and

26  5.     That Defendants' entry was a substantial factor in causing Plaintiff's

27  harm.

28

DEFENDANTS REALTY ONE GROUP, INC. AND JIHUI (LUCKY) LUO'S
MEMORANDUM OF CONTENTIONS OF FACT AND LAW

California CACI Jury Instructions (2021) 2000.

## 2.    Key Evidence in Opposition to Claim 4

Evidence in the form of deposition testimony and emails establish that the only actions undertaken by the Realty One Defendants were to pass along information provided by the perspective tenants to the A-Z Realty Defendants. There was nothing requiring the Realty One Defendants to perform any type of background check or financial verification.  In fact, Realty One Defendants' expert will testify that it was the responsibility of A-Z Realty Defendants to verify the background and financial information as to the perspective tenants or to inform Plaintiff that this verification was not performed. It was based on this information that Plaintiff elected to rent the Property.  Realty One Defendants did not have any involvement in any activity following the signing of the rental agreement.

Plaintiff was aware of the acts transpiring in her home and condoned them by accepting increased rent payments and security deposits.  She did not call the police as she wanted the conduct in the Property to continue for as long as she was getting paid the additional funds.

## E.    Claim 5:  Nuisance

Plaintiff claims Defendants operated a criminal marijuana farming enterprise on and inside the Property in violation of federal, state and local laws, statutes and ordinances and that the use of the Property was physically harmful to Plaintiff in that she was exposed to mold and other toxic and harmful conditions.  Plaintiff also claims that Defendants' use of the property substantially and unreasonable interfered with her use and enjoyment of the Property.

### 1.    Elements Required to Establish Claim 5

To establish this claim, Plaintiff must prove all of the following:

1.    That Plaintiff owned the property;

2.    That Defendants by acting or failing to act, created a condition or

DEFENDANTS REALTY ONE GROUP, INC. AND JIHUI (LUCKY) LUO'S
MEMORANDUM OF CONTENTIONS OF FACT AND LAW

permitted a condition to exist that [insert one or more of the following:]

[was harmful to health;] [or]

[was indecent or offensive to the senses;] [or]

[was an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property;] [or]

[unlawfully obstructed the free passage or use, in the customary manner, of any navigable lake, or river, bay, stream, canal, or basin, or any public park, square, street, or highway;] [or]

[was [a/an] [fire hazard/specify other potentially dangerous condition] to [name of plaintiff]'s property;]

3.   That Defendants' conduct in acting or failing to act was intentional and unreasonable;

4.   That this condition substantially interfered with Plaintiff's use or enjoyment of her land;

5.   That an ordinary person would reasonably be annoyed or disturbed by Defendants' conduct;

6.   That Plaintiff did not consent to Defendants' conduct;

7.   That Plaintiff was harmed;

8.   That Defendants' conduct was a substantial factor in causing Plaintiff's harm; and

9.   That the seriousness of the harm outweighs the public benefit of Defendants' conduct.

California CACI Jury Instructions (2021) 2021.

**2.    Key Evidence in Opposition to Claim 5.**

Evidence in the form of deposition testimony and emails establish that the only actions undertaken by the Realty One Defendants were to pass along information provided by the perspective tenants to the A-Z Realty Defendants.

DEFENDANTS REALTY ONE GROUP, INC. AND JIHUI (LUCKY) LUO'S
MEMORANDUM OF CONTENTIONS OF FACT AND LAW

There was nothing requiring the Realty One Defendants to perform any type of background check or financial verification.  In fact, Realty One Defendants' expert will testify that it was the responsibility of A-Z Realty Defendants to verify the background and financial information as to the perspective tenants or to inform Plaintiff that this verification was not performed. It was based on this information that Plaintiff elected to rent the Property.  Realty One Defendants did not have any involvement in any activity following the signing of the rental agreement.

Plaintiff was aware of the acts transpiring in her home and condoned them by accepting increased rent payments and security deposits.  She did not call the police as she wanted the conduct in the Property to continue for as long as she was getting paid the additional funds.

### F.    Claim 6: Elder Abuse

Plaintiff claims that she is an elder and protected by a statute which prohibits any person who knows or reasonably should know that another person is an elder from willfully inflicting mental suffering upon on elder.

Plaintiff also claims that Defendants violated a statute by making direct and indirect threats against Plaintiff's life.

### 1.    Elements Required to Establish Claim 6

To establish this claim, Plaintiff must prove that all of the following are more likely to be true than not true:

1.    That Defendants took/hid/appropriated/obtained or retained Plaintiff's property; or assisted in taking/hiding/appropriating/obtaining or retaining Plaintiff's property;

2.    That Plaintiff was 65 years of age or older at the time of the conduct;

3.    That Defendants took/hid/appropriated/obtained or retained/assisted in taking/hiding/appropriating/obtaining or retaining the property for a wrongful use/ or with the intent to defraud or by undue influence;

DEFENDANTS REALTY ONE GROUP, INC. AND JIHUI (LUCKY) LUO'S
MEMORANDUM OF CONTENTIONS OF FACT AND LAW

4.      That Plaintiff was harmed; and

5.      That Defendants' conduct was a substantial factor in causing Plaintiff's harm.

California CACI Jury Instructions (2021) 3100.

### 2.      Key Evidence in Opposition to Claim 6

Evidence in the form of deposition testimony and emails establish that the only actions undertaken by the Realty One Defendants were to pass along information provided by the perspective tenants to the A-Z Realty Defendants. There was nothing requiring the Realty One Defendants to perform any type of background check or financial verification.  In fact, Realty One Defendants' expert will testify that it was the responsibility of A-Z Realty Defendants to verify the background and financial information as to the perspective tenants or to inform Plaintiff that this verification was not performed. It was based on this information that Plaintiff elected to rent the Property.  Realty One Defendants did not have any involvement in any activity following the signing of the rental agreement.

Plaintiff was aware of the acts transpiring in her home and condoned them by accepting increased rent payments and security deposits.  She did not call the police as she wanted the conduct in the Property to continue for as long as she was getting paid the additional funds.

### G.      Claim 7:  Intentional Infliction of Emotional Distress

Plaintiff claims that Defendants' conduct, including their fraud and death threats, was outrageous and extreme such as to exceed the bounds of that normally tolerated in a civil community.

### 1.      Elements Required to Establish Claim 7

To establish this claim, Plaintiff must prove all of the following:

1.      That Defendants' conduct was outrageous;

2.      That Defendants intended to cause Plaintiff emotional distress;

3.      That Plaintiff suffered severe emotional distress; and

4.      That Defendants' conduct was a substantial factor in causing Plaintiff's severe emotional distress.

California CACI Jury Instructions (2021) 1600.

### 2.      Key Evidence in Opposition to Claim 7

Evidence in the form of deposition testimony and emails establish that the only actions undertaken by the Realty One Defendants were to pass along information provided by the perspective tenants to the A-Z Realty Defendants. There was nothing requiring the Realty One Defendants to perform any type of background check or financial verification.  In fact, Realty One Defendants' expert will testify that it was the responsibility of A-Z Realty Defendants to verify the background and financial information as to the perspective tenants or to inform Plaintiff that this verification was not performed. It was based on this information that Plaintiff elected to rent the Property.  Realty One Defendants did not have any involvement in any activity following the signing of the rental agreement.

Plaintiff was aware of the acts transpiring in her home and condoned them by accepting increased rent payments and security deposits.  She did not call the police as she wanted the conduct in the Property to continue for as long as she was getting paid the additional funds.

The acts that Plaintiff claims constituted the infliction of emotional distress occurred long after the signing of the rental agreement when Realty One Defendants had no further involvement in the actions/inactions involving the Property.

### H.      Claim 8: Negligence

Plaintiff claims that Defendants owed a duty of care to Plaintiff not to cause personal injury or damage to her property.  This duty was breached by Defendants through their negligent conduct, acts and omissions.

DEFENDANTS REALTY ONE GROUP, INC. AND JIHUI (LUCKY) LUO'S
MEMORANDUM OF CONTENTIONS OF FACT AND LAW

### 1.    Elements Required to Establish Claim 8

To establish this claim, Plaintiff must prove all of the following:

1.    That Defendants were negligent;

2.    That Plaintiff was harmed; and

3.    That Defendants' negligence was a substantial factor in causing Plaintiff's harm.

California CACI Jury Instructions (2021) 400.

### 2.    Key Evidence in Opposition to Claim 8

Evidence in the form of deposition testimony and emails establish that the only actions undertaken by the Realty One Defendants were to pass along information provided by the perspective tenants to the A-Z Realty Defendants. There was nothing requiring the Realty One Defendants to perform any type of background check or financial verification.  In fact, Realty One Defendants' expert will testify that it was the responsibility of A-Z Realty Defendants to verify the background and financial information as to the perspective tenants or to inform Plaintiff that this verification was not performed. It was based on this information that Plaintiff elected to rent the Property.  Realty One Defendants did not have any involvement in any activity following the signing of the rental agreement.  No actions on the part of the Realty One Defendants was negligent.

Moreover, the Realty One Defendants were not in an agency relationship with Plaintiff.  To the contrary, the Realty One Defendants were in an agency relationship with the perspective tenants.  Therefore, the Realty One Defendants did not owe any duty of due care toward Plaintiff.

### I.    Claim 9:  Statutory Unfair Competition in Violation fo Cal. Bus. & Profs. Code § 17200

Plaintiff claims that Defendants are continuing to violate the federal Controlled Substances Act by cultivating, distributing and selling cannabis which

DEFENDANTS REALTY ONE GROUP, INC. AND JIHUI (LUCKY) LUO'S
MEMORANDUM OF CONTENTIONS OF FACT AND LAW

constitutes an unlawful, unfair or fraudulent business act or practice.

### 1.    Elements Required to Establish Claim 9

To prove a violation of a statute, Plaintiff must prove that:

1.    Defendants sold, furnished, administered, gave away, transported for sale, or imported into California a controlled substance;

2.    Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty One Group, Inc.; Jihui (Lucky) Luo; Shi Dan Chen and Ming-Wing Lam knew of its presence;

3.    Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty One Group, Inc.; Jihui (Lucky) Luo; Shi Dan Chen and Ming-Wing Lam knew of the substance's nature or character as a controlled substance;

4.    The controlled substance was Cannabis

5.    The controlled substance was in a usable amount.

California Criminal Jury Instructions (2020) 2300.

### 2.    Key Evidence in Opposition to Claim

Evidence in the form of deposition testimony and emails establish that the only actions undertaken by the Realty One Defendants were to pass along information provided by the perspective tenants to the A-Z Realty Defendants. There was nothing requiring the Realty One Defendants to perform any type of background check or financial verification.  In fact, Realty One Defendants' expert will testify that it was the responsibility of A-Z Realty Defendants to verify the background and financial information as to the perspective tenants or to inform Plaintiff that this verification was not performed. It was based on this information that Plaintiff elected to rent the Property.  Realty One Defendants did not have any involvement in any activity following the signing of the rental agreement precluding any violation of the Controlled Substance Act.

DEFENDANTS REALTY ONE GROUP, INC. AND JIHUI (LUCKY) LUO'S
MEMORANDUM OF CONTENTIONS OF FACT AND LAW

## II.      COUNTERCLAIMS AND AFFIRMATIVE DEFENSES (LOCAL RULE 16-4.1)

### A.      Counterclaims

Cross-Claimants Realty One Group and Jihui (Lucky) Luo asserted cross-claims against Cross-Defendants A-Z Realty & Investment Corp., Dongyan (Annie) Zheng, Jennifer Whelan, Shi Dan Chen and Ming-Wing Lam.

#### 1.      Counter Claim No. 1:  Equitable Indemnity and Contribution

##### a)      Elements Required to Establish Counter Claim 1

The Realty One Defendants claim that if they are required to pay a court judgment in favor of Plaintiff and attorney fees and that Cross-Defendants must reimburse the Realty One Defendants based on the Cross-Defendants' share of responsibility. In order for the Realty One Defendants to recover from the Cross-Defendants, the Realty One Defendants must prove both of the following:

1.      That the Cross-Defendants were negligent or committed the wrongdoing claimed by Plaintiff; and

2.      That the Cross-Defendants' negligence and wrongdoing contributed as a substantial factor in causing Plaintiff's harm.

California CACI Jury Instructions (2021) 3800

##### b)      Key Evidence Relied on in Support of Counter Claim 1

Evidence in the form of deposition testimony and emails establish that the only actions undertaken by the Realty One Defendants were to pass along information provided by the perspective tenants to the A-Z Realty Defendants. There was nothing requiring the Realty One Defendants to perform any type of background check or financial verification.  In fact, Realty One Defendants' expert will testify that it was the responsibility of A-Z Realty Defendants to verify the background and financial information as to the perspective tenants or to inform

1  Plaintiff that this verification was not performed. It was based on this information

2  that Plaintiff elected to rent the Property.  Realty One Defendants did not have any

3  involvement in any activity following the signing of the rental agreement

4      **B.    Affirmative Defenses**

5          **1.    Affirmative Defense No. 1:  Comparative Fault of Plaintiff**

6          The Realty One Defendants allege that any injury or damage suffered by

7  Plaintiff was caused solely by reason of Plaintiff's own wrongful acts and conduct

8  and not by reason of any unlawful act or omission of the Realty One Defendants.

9  Any injury to Plaintiff was caused by her own negligence and failure to act with

10 reasonable care, which carelessness, negligence and omissions were the proximate

11 cause of the damage, if any, to Plaintiff.

12              a)    **Elements Required to Establish Affirmative Defense**

13                  **No. 1**

14         To succeed on this claim, the Realty One Defendants must prove both of the

15 following:

16         1. That Plaintiff was negligent or failed to act with reasonable care; and

17         2. That Plaintiff's negligence or failure to act was a substantial factor in

18 causing her harm.

19         If the Realty One Defendants prove the above, Plaintiff's damages are

20 reduced by a determination of the percentage of Plaintiff's responsibility.

21              b)    **Evidence Relied on in Support of Affirmative Defense**

22                  **No. 1**

23         Plaintiff and her husband have been wealthy, sophisticated real estate

24 investors for many years. They purchased the Property in October 2009 for

25 $341,000. Plaintiff never resided in the Property but, rather, intended to (and did)

26 use it as a source of rental income.

27         The relevant occurrences began when Plaintiff put the Property on the rental

28

DEFENDANTS REALTY ONE GROUP, INC. AND JIHUI (LUCKY) LUO'S
MEMORANDUM OF CONTENTIONS OF FACT AND LAW

1   market with her self-selected agent – the A-Z Invesetment Defendants.  The A-Z
2   Realty Defendants thereafter advertised the Property to prospective tenants.

3        Persons who identified themselves as "Miaoyun Wu" and "Xin Li" (the
4   "Paper Tenants"), thereafter approached the Realty One Defendants for help in
5   leasing the Property through "WeChat", a Chinese language web platform used by
6   billions worldwide for commerce (include real estate rentals). Realty One's agent,
7   Ms. Lucky Luo, requested the Paper Tenants to provide standard identification and
8   other identifying information in support of their application to lease the Property.
9   Nothing seemed out of the ordinary to Ms. Luo. And nothing about the Paper
10  Tenants or their identification papers seemed odd or unusual.

11       The Realty One Defendants thereafter passed on the Paper Tenants' signed
12  rental application to Plaintiff's agents (the A-Z Realty Defendants). Consistent with
13  their duties to Plaintiff, A-Z Defendants should have reviewed the Paper Tenants'
14  information and performed a background check on them. According to the A-Z
15  Defendants, when nothing suspicious turned up, the A-Z Realty Defendants
16  presented the Paper Tenants to Plaintiff and recommended that Plaintiff enter a lease
17  agreement with them. Plaintiff agreed and the Property was leased to the Paper
18  Tenants. Ms. Luo received a $300 fee for her work on the rental.

19       Approximately two months after the Paper Tenants supposedly moved into
20  the Property, the A-Z Realty Defendants contacted Plaintiff and informed her that
21  "Chinese syndicates" were looking to rent large houses in which to grow marijuana.
22  Plaintiff was also informed that these syndicates were willing to pay almost twice
23  the market rate than was currently being paid to rent the Property.

24       According to Plaintiff, a few days later, this announcement started to make
25  sense when the A-Z Realty Defendants advised her that the rental Property in issue
26  was being used to cultivate marijuana. Specifically, the A-Z Realty Defendants
27  stated the Property had newly constructed walls, exposed electrical wiring and an

28

DEFENDANTS REALTY ONE GROUP, INC. AND JIHUI (LUCKY) LUO'S
MEMORANDUM OF CONTENTIONS OF FACT AND LAW

irrigation system for the interior of the home. The A-Z Realty Defendants further advised that the Property's interior now featured approximately 150 marijuana plants growing in "large tubs". Moreover, the Paper Tenants were using an alias to conceal their operation. They were actually persons named "Shi Dan Chen" and "Ming-Wing Lam" (the "Tenant Defendants").

By her own admission, Plaintiff declined to contact the police with any of this unsettling information. Instead, and according to Plaintiff, she listened attentively while the A-Z Defendants attempted to convince her that the activities occurring in the Property were all actually "legal". As Plaintiff tells it, the A-Z Realty Defendants advised her that she could profit handsomely from the marijuana trade.

To prove their point, the A-Z Realty Defendants informed Plaintiff that they had already negotiated a "rent increase" with the Tenant Defendants from $2,500 to $5,000 along with an agreed $20,000 enhanced payment for marijuana cultivation ($10,000 of which was to be paid in June 2017 and $10,000 more in October 2017). According to Plaintiff, the A-Z Realty Defendants also demanded that Plaintiff pay them a nearly doubled monthly management fee to account for their "good work".

Once again, Plaintiff declined to contact the authorities with any of this illegality and instead continued to receive her additional payments for the illegal activity being conducted on her property.

### 2.    Affirmative Defense No. 2 – Assumption of the Risk

Plaintiff, willingly, voluntarily and knowingly assumed each, every and all the risks and hazards involved in the activities referred to in Plaintiff's complaint. Plaintiff was aware of the dangers and risks with respect to the alleged actions, and did knowingly and voluntarily, and freely assume and expose herself to the known risks which assumption of the risk caused and/or contributed to the alleged damages sought by Plaintiff.

1

2

a) **Elements Required to Establish Affirmative Defense No. 2**

3   To succeed on this claim, the Realty One Defendants must prove both of the

4   following:

5   1. That Plaintiff was aware of the risks involved with renting her house and

6   continuing to rent her house to those engaged in the criminal activity of cultivating,

7   harvesting and selling marijuana; and

8   2. That Plaintiff's risk was a substantial factor in causing her harm.

9   If the Realty One Defendants prove the above, Plaintiff's damages are

10   reduced by a determination of the percentage of Plaintiff's responsibility.

11

12

b) **Evidence Relied on in Support of Affirmative Defense No. 2**

13   Plaintiff and her husband have been wealthy, sophisticated real estate

14   investors for many years. They purchased the Property in October 2009 for

15   $341,000. Plaintiff never resided in the Property but, rather, intended to (and did)

16   use it as a source of rental income.

17   The relevant occurrences began when Plaintiff put the Property on the rental

18   market with her self-selected agent – the A-Z Invesetment Defendants.  The A-Z

19   Realty Defendants thereafter advertised the Property to prospective tenants.

20   Persons who identified themselves as "Miaoyun Wu" and "Xin Li" (the

21   "Paper Tenants"), thereafter approached the Realty One Defendants for help in

22   leasing the Property through "WeChat", a Chinese language web platform used by

23   billions worldwide for commerce (include real estate rentals). Realty One's agent,

24   Ms. Lucky Luo, requested the Paper Tenants to provide standard identification and

25   other identifying information in support of their application to lease the Property.

26   Nothing seemed out of the ordinary to Ms. Luo. And nothing about the Paper

27   Tenants or their identification papers seemed odd or unusual.

28

1    The Realty One Defendants thereafter passed on the Paper Tenants' signed
2    rental application to Plaintiff's agents (the A-Z Realty Defendants). Consistent with
3    their duties to Plaintiff, A-Z Defendants should have reviewed the Paper Tenants'
4    information and performed a background check on them. According to the A-Z
5    Defendants, when nothing suspicious turned up, the A-Z Realty Defendants
6    presented the Paper Tenants to Plaintiff and recommended that Plaintiff enter a lease
7    agreement with them. Plaintiff agreed and the Property was leased to the Paper
8    Tenants. Ms. Luo received a $300 fee for her work on the rental.

9    Approximately two months after the Paper Tenants supposedly moved into
10   the Property, the A-Z Realty Defendants contacted Plaintiff and informed her that
11   "Chinese syndicates" were looking to rent large houses in which to grow marijuana.
12   Plaintiff was also informed that these syndicates were willing to pay almost twice
13   the market rate than was currently being paid to rent the Property.

14   According to Plaintiff, a few days later, this announcement started to make
15   sense when the A-Z Realty Defendants advised her that the rental Property in issue
16   was being used to cultivate marijuana. Specifically, the A-Z Realty Defendants
17   stated the Property had newly constructed walls, exposed electrical wiring and an
18   irrigation system for the interior of the home. The A-Z Realty Defendants further
19   advised that the Property's interior now featured approximately 150 marijuana
20   plants growing in "large tubs". Moreover, the Paper Tenants were using an alias to
21   conceal their operation. They were actually persons named "Shi Dan Chen" and
22   "Ming-Wing Lam" (the "Tenant Defendants").

23   By her own admission, Plaintiff declined to contact the police with any of this
24   unsettling information. Instead, and according to Plaintiff, she listened attentively
25   while the A-Z Defendants attempted to convince her that the activities occurring in
26   the Property were all actually "legal". As Plaintiff tells it, the A-Z Realty
27   Defendants advised her that she could profit handsomely from the marijuana trade.
28

---

**23**

DEFENDANTS REALTY ONE GROUP, INC. AND JIHUI (LUCKY) LUO'S
MEMORANDUM OF CONTENTIONS OF FACT AND LAW

To prove their point, the A-Z Realty Defendants informed Plaintiff that they had already negotiated a "rent increase" with the Tenant Defendants from $2,500 to $5,000 along with an agreed $20,000 enhanced payment for marijuana cultivation ($10,000 of which was to be paid in June 2017 and $10,000 more in October 2017). According to Plaintiff, the A-Z Realty Defendants also demanded that Plaintiff pay them a nearly doubled monthly management fee to account for their "good work".

Once again, Plaintiff declined to contact the authorities with any of this illegality and instead continued to receive her additional payments for the illegal activity being conducted on her property.

### 3. Affirmative Defense No. 3: Superseding/Intervening Acts

The Realty One Defendants claim that damages allegedly sustained by Plaintiff, which such damages are generally and specifically denied to exist, were the result of the active and affirmative wrongful acts, fraud, and omissions to act of Plaintiff and independent third parties and/or entities whose active and affirmative wrongdoing resulted in superseding and intervening causes of Plaintiff's alleged damages which thereby relieves these responding Defendants from liability. Any damages awarded in this action should therefore be in direct proportion to the fault of these Defendants, if any, as provided by <u>California Civil Code</u> §§1431 to 1431.5.

### a) Elements Required to Establish Affirmative Defense No. 3

The Realty One Defendants claim that if they are required to pay a court judgment in favor of Plaintiff and attorney fees and that Cross-Defendants must reimburse the Realty One Defendants based on the Cross-Defendants' share of responsibility. In order for the Realty One Defendants to recover from the Cross-Defendants, the Realty One Defendants must prove both of the following:

1. That the Cross-Defendants were negligent or committed the wrongdoing claimed by Plaintiff; and

DEFENDANTS REALTY ONE GROUP, INC. AND JIHUI (LUCKY) LUO'S
MEMORANDUM OF CONTENTIONS OF FACT AND LAW

2.      That the Cross-Defendants' negligence and wrongdoing contributed as a substantial factor in causing Plaintiff's harm.

California CACI Jury Instructions (2021) 3800

             **b)      Evidence Relied on in Support of Affirmative Defense No. 3**

Plaintiff and her husband have been wealthy, sophisticated real estate investors for many years. They purchased the Property in October 2009 for $341,000. Plaintiff never resided in the Property but, rather, intended to (and did) use it as a source of rental income.

The relevant occurrences began when Plaintiff put the Property on the rental market with her self-selected agent – the A-Z Invesetment Defendants.  The A-Z Realty Defendants thereafter advertised the Property to prospective tenants.

Persons who identified themselves as "Miaoyun Wu" and "Xin Li" (the "Paper Tenants"), thereafter approached the Realty One Defendants for help in leasing the Property through "WeChat", a Chinese language web platform used by billions worldwide for commerce (include real estate rentals). Realty One's agent, Ms. Lucky Luo, requested the Paper Tenants to provide standard identification and other identifying information in support of their application to lease the Property. Nothing seemed out of the ordinary to Ms. Luo. And nothing about the Paper Tenants or their identification papers seemed odd or unusual.

The Realty One Defendants thereafter passed on the Paper Tenants' signed rental application to Plaintiff's agents (the A-Z Realty Defendants). Consistent with their duties to Plaintiff, A-Z Defendants should have reviewed the Paper Tenants' information and performed a background check on them. According to the A-Z Defendants, when nothing suspicious turned up, the A-Z Realty Defendants presented the Paper Tenants to Plaintiff and recommended that Plaintiff enter a lease agreement with them. Plaintiff agreed and the Property was leased to the Paper

DEFENDANTS REALTY ONE GROUP, INC. AND JIHUI (LUCKY) LUO'S
MEMORANDUM OF CONTENTIONS OF FACT AND LAW

1   Tenants. Ms. Luo received a $300 fee for her work on the rental.

2       Approximately two months after the Paper Tenants supposedly moved into

3   the Property, the A-Z Realty Defendants contacted Plaintiff and informed her that

4   "Chinese syndicates" were looking to rent large houses in which to grow marijuana.

5   Plaintiff was also informed that these syndicates were willing to pay almost twice

6   the market rate than was currently being paid to rent the Property.

7       According to Plaintiff, a few days later, this announcement started to make

8   sense when the A-Z Realty Defendants advised her that the rental Property in issue

9   was being used to cultivate marijuana. Specifically, the A-Z Realty Defendants

10  stated the Property had newly constructed walls, exposed electrical wiring and an

11  irrigation system for the interior of the home. The A-Z Realty Defendants further

12  advised that the Property's interior now featured approximately 150 marijuana

13  plants growing in "large tubs". Moreover, the Paper Tenants were using an alias to

14  conceal their operation. They were actually persons named "Shi Dan Chen" and

15  "Ming-Wing Lam" (the "Tenant Defendants").

16      By her own admission, Plaintiff declined to contact the police with any of this

17  unsettling information. Instead, and according to Plaintiff, she listened attentively

18  while the A-Z Defendants attempted to convince her that the activities occurring in

19  the Property were all actually "legal". As Plaintiff tells it, the A-Z Realty

20  Defendants advised her that she could profit handsomely from the marijuana trade.

21      To prove their point, the A-Z Realty Defendants informed Plaintiff that they

22  had already negotiated a "rent increase" with the Tenant Defendants from $2,500 to

23  $5,000 along with an agreed $20,000 enhanced payment for marijuana cultivation

24  ($10,000 of which was to be paid in June 2017 and $10,000 more in October 2017).

25  According to Plaintiff, the A-Z Realty Defendants also demanded that Plaintiff pay

26  them a nearly doubled monthly management fee to account for their "good work".

27  Once again, Plaintiff declined to contact the authorities with any of this illegality

28

DEFENDANTS REALTY ONE GROUP, INC. AND JIHUI (LUCKY) LUO'S
MEMORANDUM OF CONTENTIONS OF FACT AND LAW

1  and instead continued to receive her additional payments for the illegal activity

2  being conducted on her property.

### 4.   Affirmative Defense No. 4: Unclean Hands

4  Plaintiff's suit is barred by the principle of unclean hands.  Defendants Realty One

5  claim that Plaintiff is attempting to profit from her own criminal acts. Attempting to

6  profit from illegal marijuana cultivation is a criminal act.

7      The justice system will not allow a person to bring a claim for damages

8  which arose based upon her own criminal acts.  The justice system will not enable

9  the wrongdoer to profit from her own wrongs.  If Defendants Realty One Group and

10  Zihui (Lucky) Luo prove that Plaintiff Shuang Ying (Nancy) Zhang attempted to

11  profit from her wrongdoing, you should find that Plaintiff, Shuang Ying (Nancy)

12  Zhang is not entitled to recover damages in this action.  Susag v. City of Lake

13  Forest, 94 Cal. App. 4th 1401, 1412 (2002); Bigelow v. RKO Radio Pictures, Inc.,

14  327 U.S. 251, 264 (1946); Dart Industries, Inc. v. Liberty Mut. Ins. Co., 484 F.2d

15  1295, 1298 (9th Cir. 1973).

### a)   Elements Required to Establish Affirmative Defense No. 4.

18  The Realty One Defendants have asserted the affirmative defense of 'unclean

19  hands' as to Plaintiff.  To aid you in evaluating this affirmative defense, you may

20  consider the following statement of law: 'No one can take advantage of his own

21  wrong.' In other words, she who comes into court must come with clean hands. A

22  plaintiff must act fairly in the matter for which she seeks monetary damages. Stated

23  otherwise, relief is barred to a plaintiff who has violated principles of fairness, good

24  conscience or good faith.

25  A finding of unclean hands is required when a plaintiff seeking damages has

26  violated a duty of good faith or has acted unconscionably in connection with the

27  same subject matter or relationship out of which the litigant claims a right to

28

DEFENDANTS REALTY ONE GROUP, INC. AND JIHUI (LUCKY) LUO'S
MEMORANDUM OF CONTENTIONS OF FACT AND LAW

1  damages. If you find such a violation of good faith or conscience, then you should

2  find that Plaintiff is not entitled to recover damages in this action.

3  The only conduct on which you may make a finding of unclean hands is that

4  conduct directly related to the subject matter or relationship at issue in this litigation.

5  Unclean hands does not mean that someone is a bad person in general or in some

6  other respect; you may find unclean hands only if you find a direct connection

7  between the alleged unclean hands conduct and the facts of this case.  California

8  Civil Code § 3517; see, *Adler v. Fed. Republic of Nigeria, 209 F.3d 869, 877 (9th*

9  *Cir. 2000); Seller Agency Council, Inc. v. Kennedy Ctr. for Real Estate Educ., Inc.,*

10  *621 F.3d 981, 986 (9th Cir.2010); Ellenburg v. Brockway, Inc., 763 F.2d 1091,*

11  *1097 (9th Cir.1985); Kendall-Jackson Winery, Ltd. v. Superior Court,* 76

12  Cal.App.4th 970, 979 (1999); Lynn v. Duckel, 46 Cal.2d 845, 850, (1956);

13  Fibreboard Paper Products Corp. v. East Bay Union of Machinists, 227 Cal.App.2d

14  675, 727–28, (1964); Health Maint. Network v. Blue Cross of Southern Cal., 202

15  Cal.App.3d 1043, 1061 (1988); Watson v. Poore, 18 Cal.2d 302, 313 (1941);

16  Seligman v. Tucker, 6 Cal.App.3d 691, 700 (1970); and Moriarty v. Carlson, 184

17  Cal.App.2d 51, 56 (1960).

18  **a)   Evidence Relied on in Support of Affirmative Defense**

19  **No. 3**

20  Plaintiff and her husband have been wealthy, sophisticated real estate

21  investors for many years. They purchased the Property in October 2009 for

22  $341,000. Plaintiff never resided in the Property but, rather, intended to (and did)

23  use it as a source of rental income.

24  The relevant occurrences began when Plaintiff put the Property on the rental

25  market with her self-selected agent – the A-Z Invesetment Defendants.  The A-Z

26  Realty Defendants thereafter advertised the Property to prospective tenants.

27  Persons who identified themselves as "Miaoyun Wu" and "Xin Li" (the

28

DEFENDANTS REALTY ONE GROUP, INC. AND JIHUI (LUCKY) LUO'S
MEMORANDUM OF CONTENTIONS OF FACT AND LAW

"Paper Tenants"), thereafter approached the Realty One Defendants for help in leasing the Property through "WeChat", a Chinese language web platform used by billions worldwide for commerce (include real estate rentals). Realty One's agent, Ms. Lucky Luo, requested the Paper Tenants to provide standard identification and other identifying information in support of their application to lease the Property. Nothing seemed out of the ordinary to Ms. Luo. And nothing about the Paper Tenants or their identification papers seemed odd or unusual.

The Realty One Defendants thereafter passed on the Paper Tenants' signed rental application to Plaintiff's agents (the A-Z Realty Defendants). Consistent with their duties to Plaintiff, A-Z Defendants should have reviewed the Paper Tenants' information and performed a background check on them. According to the A-Z Defendants, when nothing suspicious turned up, the A-Z Realty Defendants presented the Paper Tenants to Plaintiff and recommended that Plaintiff enter a lease agreement with them. Plaintiff agreed and the Property was leased to the Paper Tenants. Ms. Luo received a $300 fee for her work on the rental.

Approximately two months after the Paper Tenants supposedly moved into the Property, the A-Z Realty Defendants contacted Plaintiff and informed her that "Chinese syndicates" were looking to rent large houses in which to grow marijuana. Plaintiff was also informed that these syndicates were willing to pay almost twice the market rate than was currently being paid to rent the Property.

According to Plaintiff, a few days later, this announcement started to make sense when the A-Z Realty Defendants advised her that the rental Property in issue was being used to cultivate marijuana. Specifically, the A-Z Realty Defendants stated the Property had newly constructed walls, exposed electrical wiring and an irrigation system for the interior of the home. The A-Z Realty Defendants further advised that the Property's interior now featured approximately 150 marijuana plants growing in "large tubs". Moreover, the Paper Tenants were using an alias to

DEFENDANTS REALTY ONE GROUP, INC. AND JIHUI (LUCKY) LUO'S
MEMORANDUM OF CONTENTIONS OF FACT AND LAW

conceal their operation. They were actually persons named "Shi Dan Chen" and "Ming-Wing Lam" (the "Tenant Defendants").

By her own admission, Plaintiff declined to contact the police with any of this unsettling information. Instead, and according to Plaintiff, she listened attentively while the A-Z Defendants attempted to convince her that the activities occurring in the Property were all actually "legal". As Plaintiff tells it, the A-Z Realty Defendants advised her that she could profit handsomely from the marijuana trade.

To prove their point, the A-Z Realty Defendants informed Plaintiff that they had already negotiated a "rent increase" with the Tenant Defendants from $2,500 to $5,000 along with an agreed $20,000 enhanced payment for marijuana cultivation ($10,000 of which was to be paid in June 2017 and $10,000 more in October 2017). According to Plaintiff, the A-Z Realty Defendants also demanded that Plaintiff pay them a nearly doubled monthly management fee to account for their "good work".

Once again, Plaintiff declined to contact the authorities with any of this illegality and instead continued to receive her additional payments for the illegal activity being conducted on her property.

### 5.     Affirmative Defense No. 5:  Failure to Mitigate

By the exercise of reasonable effort, Plaintiff could have mitigated the amount of damages, if any there were, but Plaintiff failed and refused, and continues to fail and refuse, to exercise a reasonable effort to mitigate damages and therefore Plaintiff is barred from seeking recovery of those damages.

### a)     Elements Required to Establish Affirmative Defense No. 5

The plaintiff has a duty to use reasonable efforts to mitigate damages. To mitigate means to avoid or reduce damages.

The defendant has the burden of proving by a preponderance of the evidence:

1.     that the plaintiff failed to use reasonable efforts to mitigate damages;

DEFENDANTS REALTY ONE GROUP, INC. AND JIHUI (LUCKY) LUO'S
MEMORANDUM OF CONTENTIONS OF FACT AND LAW

1 and

2        2.        the amount by which damages would have been mitigated.

3                        b)        **Evidence Relied on in Support of Affirmative Defense**

4                                  **No. 5**

5        Pursuant to the Property Management Agreement between Plaintiff and the

6 A-Z Realty Defendants, Plaintiff was required to "carry and ay for (i) public and

7 premises liability insurance in an amount of no less than $1,000,000; and (ii)

8 property damage and worker's compensation insurance adequate to protect the

9 interests of the Owner and Property Manager."  Plaintiff admitted in her deposition

10 that she failed to report the damage to her property to her insurance carrier.  If

11 Plaintiff had carried the type of insurance coverage required pursuant to the Property

12 Management Agreement, the coverage would have been sufficient to repair the

13 property and avoid the continuing accumulation of the monthly loss of rental

14 income.

15        **6.        Affirmative Defense No. 6:  Plaintiff Consented to the Acts**

16                **and Omissions Alleged in the Complaint**

17                        a)        **Elements Required to Establish Affirmative Defense**

18                                  **No. 6**

19        To the extent that Plaintiff consented to the acts or omissions complained of,

20 Plaintiff cannot recover for those same acts or omissions.

21                        b)        **Evidence Relied on in Support of Affirmative Defense**

22                                  **No. 6**

23        Plaintiff and her husband have been wealthy, sophisticated real estate

24 investors for many years. They purchased the Property in October 2009 for

25 $341,000. Plaintiff never resided in the Property but, rather, intended to (and did)

26 use it as a source of rental income.

27        The relevant occurrences began when Plaintiff put the Property on the rental

28

**DEFENDANTS REALTY ONE GROUP, INC. AND JIHUI (LUCKY) LUO'S**
**MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

market with her self-selected agent – the A-Z Invesetment Defendants.  The A-Z Realty Defendants thereafter advertised the Property to prospective tenants.

Persons who identified themselves as "Miaoyun Wu" and "Xin Li" (the "Paper Tenants"), thereafter approached the Realty One Defendants for help in leasing the Property through "WeChat", a Chinese language web platform used by billions worldwide for commerce (include real estate rentals). Realty One's agent, Ms. Lucky Luo, requested the Paper Tenants to provide standard identification and other identifying information in support of their application to lease the Property. Nothing seemed out of the ordinary to Ms. Luo. And nothing about the Paper Tenants or their identification papers seemed odd or unusual.

The Realty One Defendants thereafter passed on the Paper Tenants' signed rental application to Plaintiff's agents (the A-Z Realty Defendants). Consistent with their duties to Plaintiff, A-Z Defendants should have reviewed the Paper Tenants' information and performed a background check on them. According to the A-Z Defendants, when nothing suspicious turned up, the A-Z Realty Defendants presented the Paper Tenants to Plaintiff and recommended that Plaintiff enter a lease agreement with them. Plaintiff agreed and the Property was leased to the Paper Tenants. Ms. Luo received a $300 fee for her work on the rental.

Approximately two months after the Paper Tenants supposedly moved into the Property, the A-Z Realty Defendants contacted Plaintiff and informed her that "Chinese syndicates" were looking to rent large houses in which to grow marijuana. Plaintiff was also informed that these syndicates were willing to pay almost twice the market rate than was currently being paid to rent the Property.

According to Plaintiff, a few days later, this announcement started to make sense when the A-Z Realty Defendants advised her that the rental Property in issue was being used to cultivate marijuana. Specifically, the A-Z Realty Defendants stated the Property had newly constructed walls, exposed electrical wiring and an

DEFENDANTS REALTY ONE GROUP, INC. AND JIHUI (LUCKY) LUO'S
MEMORANDUM OF CONTENTIONS OF FACT AND LAW

irrigation system for the interior of the home. The A-Z Realty Defendants further advised that the Property's interior now featured approximately 150 marijuana plants growing in "large tubs". Moreover, the Paper Tenants were using an alias to conceal their operation. They were actually persons named "Shi Dan Chen" and "Ming-Wing Lam" (the "Tenant Defendants").

By her own admission, Plaintiff declined to contact the police with any of this unsettling information. Instead, and according to Plaintiff, she listened attentively while the A-Z Defendants attempted to convince her that the activities occurring in the Property were all actually "legal". As Plaintiff tells it, the A-Z Realty Defendants advised her that she could profit handsomely from the marijuana trade.

To prove their point, the A-Z Realty Defendants informed Plaintiff that they had already negotiated a "rent increase" with the Tenant Defendants from $2,500 to $5,000 along with an agreed $20,000 enhanced payment for marijuana cultivation ($10,000 of which was to be paid in June 2017 and $10,000 more in October 2017). According to Plaintiff, the A-Z Realty Defendants also demanded that Plaintiff pay them a nearly doubled monthly management fee to account for their "good work".

Once again, Plaintiff declined to contact the authorities with any of this illegality and instead continued to receive her additional payments for the illegal activity being conducted on her property.

### 7. Affirmative Defense No. 7

#### a) Elements Required to Establish Affirmative Defense No. 7

Defendants were agents who had no knowledge of, and did not participate in any fraudulent act of their principals or any enterprise; as such, Defendants are not vicariously liable for the torts, if any, of said principals or any enterprise that they may have operated or managed. Defendants had no knowledge or awareness of the essential nature or scope of any fraudulent enterprise or conspiracy; neither did

DEFENDANTS REALTY ONE GROUP, INC. AND JIHUI (LUCKY) LUO'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

1  Defendants have any intention to facilitate such an enterprise or conspiracy.

2  Defendants did not knowingly agree to facilitate any scheme that included operation

3  or management of any fraudulent enterprise or conspiracy.

4          b)          **Key Evidence in Support of Affirmative Defense No. 7**

5          Evidence in the form of deposition testimony and emails establish that the

6  only actions undertaken by the Realty One Defendants were to pass along

7  information provided by the perspective tenants to the A-Z Realty Defendants.

8  There was nothing requiring the Realty One Defendants to perform any type of

9  background check or financial verification.  In fact, Realty One Defendants' expert

10  will testify that it was the responsibility of A-Z Realty Defendants to verify the

11  background and financial information as to the perspective tenants or to inform

12  Plaintiff that this verification was not performed. It was based on this information

13  that Plaintiff elected to rent the Property.  Realty One Defendants did not have any

14  involvement in any activity following the signing of the rental agreement including

15  any knowledge or participation in the actions of the persons residing in the Property.

16  **III.    EVIDENTIARY ISSUES (LOCAL RULE 16-4.2)**

17          Defendants have not filed any motions in limines but does oppose the motions

18  in limines filed by Plaintiff as to the preclusion of reference to homeowner's

19  insurance and as to preclusion of reference to the criminal actions of Plaintiff.

20  **IV.    BIFURCATION OF ISSUES (LOCAL RULE 16-4.3)**

21          There has been no request for bifurcation of issues.

22  **V.    JURY TRIAL (LOCAL RULE 16-4.4)**

23          Timely requested by Plaintiffs and Defendants.

24  **VI.    ATTORNEY'S FEES (LOCAL RULE 16-4.5)**

25          Requested by Realty One Defendants as part of their claims against the other

26  Defendants.

27

28

DEFENDANTS REALTY ONE GROUP, INC. AND JIHUI (LUCKY) LUO'S
MEMORANDUM OF CONTENTIONS OF FACT AND LAW

1

## VII.    **ABANDONMENT OF ISSUES**

2

None on behalf of the Realty One Defendants.

3

DATED:  February 4, 2021                    **LYNBERG & WATKINS**
                                            A Professional Corporation

4

5

6

By: _____
                                            **S. FRANK HARRELL**
7                                           **TAMARA M. HEATHCOTE**
                                            Attorneys for Defendant, REALTY ONE
8                                           GROUP, INC. and JIHUI (LUCKY) LUO

9

10

11

12

4819-9610-8234, v. 1

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

35

DEFENDANTS REALTY ONE GROUP, INC. AND JIHUI (LUCKY) LUO'S
MEMORANDUM OF CONTENTIONS OF FACT AND LAW