1

2

3

4

5

6

7

8

9        UNITED STATES DISTRICT COURT

10       CENTRAL DISTRICT OF CALIFORNIA

11

| | |
|---|---|
| SHUANG YING (NANCY) ZHANG, | Case No. 5:19-CV-00887-KK |
| Plaintiff, | Judge: Hon. Kenly Kiya Kato |
| v. | **FINAL PRETRIAL CONFERENCE ORDER** |
| A-Z REALTY & INVESTMENT CORP., a California corporation; DONGYAN (ANNIE) ZHENG, an individual; JENNIFER WHELAN, an individual; REALTY ONE GROUP, INC., a California corporation; JIHUI (LUCKY) LUO, an individual, SHI DAN CHEN, and individual; MING-WING LAM, an individual; FU LONG ZHENG, an individual; and DOES 1-30, inclusive, | Complaint Filed:   May 10, 2019<br>Trial Date:          March 15, 2021 |
| Defendants. | **Pretrial Conference:**<br>Date:      February 25, 2021<br>Time:      10:00a.m.<br>Crtrm:    3/4 – Riverside |

1   Following pretrial proceedings, pursuant to F.R.Civ.P. 16 and L.R. 16, IT IS
2   ORDERED:
3       1.    The parties are:
4           1.    Shuang Ying (Nancy) Zhang;
5           2.    A-Z Realty & Investment Corp.;
6           3.    Dongyan (Annie) Zheng
7           4.    Jennifer Whelan;
8           5.    Realty One Group, Inc.;
9           6.    Jihui (Lucky) Luo;
10          7.    Shi Dan Chen;
11          8.    Ming-Wing Lam
12  Each of these parties has been served and has appeared. All other parties
13  named in the pleadings and not identified in the preceding paragraph are now
14  dismissed.
15  The pleadings which raise the issues are:
16          1.    Complaint;
17          2.    Amended Answers and Counterclaims;
18          3.    Answers of Shi Dan Chen and Ming-Wing Lam.
19      2.    Federal jurisdiction and venue are invoked upon the grounds:
20  This Court has original subject matter jurisdiction pursuant to 28
21  U.S.C. §§ 1331 because the First Claim for Relief alleges a claim under the
22  Racketeer Influenced and Corrupt Organizations ("RICO") act, codified as Title IX
23  of the Organized Crime Control Act of 1970, 18 U.S.C. § 1961, et seq. The Court
24  has and should exercise supplemental jurisdiction over the pendent claims pursuant
25  to 28 U.S.C. § 1367(a) because they are based, in part, on the same operative facts
26  as those in the First Claim for Relief and are part of the same case or controversy
27  under Article III of the United States Constitution. Further, the exercise of
28  jurisdiction over the pendent state law claims will promote judicial economy,

1 | convenience, and fairness to the parties.

2 |     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)

3 | because (a) the named defendants reside in this district and appear to be residents of

4 | the State of California, (b) the Property is located in this judicial district, and (c) a

5 | substantial part of the events or omissions giving rise to the claims occurred here.

6 |     3.    The trial is estimated to take ten (10) trial days.

7 |     4.    The trial is to be a jury trial.

8 |     5.    The following facts are admitted and require no proof:

9 |     a.    Mrs. Zhang is a 75-year old Chinese immigrant.  She does not

10 | speak or read English.

11 |     b.    Dongyan (Annie) Zheng ("Annie") represented Mrs. Zhang with

12 | the purchase of the Property in 2009.  The Property was built in 2006.

13 |     c.    The Property is a single-family two-story home located in the

14 | Tuscany Hills residential community.  It has approximately 3,840 square feet

15 | of living space.

16 |     d.    Mrs. Zhang and her husband live in El Monte, California,

17 | approximately an hour's drive from Lake Elsinore.

18 |     e.    On July 11, 2016, Mrs. Zhang and Annie signed a Property

19 | Management Agreement ("PMA").  Annie signed the PMA as the agent and

20 | on behalf of A-Z Realty, the real estate brokerage company that she owns and

21 | operates with her sister, Jennifer Whelan.

22 |     f.    The PMA appointed and granted A-Z Realty the exclusive right

23 | to rent, lease, operate and manage the Property for a one-year term from

24 | August 1, 2016 to July 31, 2017.  After the term expired, the PMA would

25 | continue as a non-exclusive agreement that either party could terminate on 30

26 | days' notice.

27 |     g.    A-Z Realty accepted a tenancy application from a married

28 | couple, Miaoyun Wu and his wife, Xin Li, in February 2017.

Case 5:19-cv-00887-KK   Document 121-1   Filed 02/11/21   Page 4 of 105   Page ID #:1351

h.      A-Z Realty rented the property to Mr. Wu and Ms. Li.  The Residential Lease or Month-to-Month Rental Agreement ("Lease") is dated February 16, 2017, with an effective term of February 21, 2017 through February 28, 2018.

i.      In May 2017, Annie told Mrs. Zhang that she had heard from a contractor that Chinese people from Fujian were looking for big houses in residential neighborhoods to grow marijuana.

6.      The following facts, though stipulated, shall be without prejudice to any evidentiary objection:  N/A

7.      Plaintiff(s):

(a) Plaintiff plans to pursue the following claims against the following defendants:

### (i)      RICO Violations, 18 U.S.C. §§ 1962(c)-(d), Against All Defendants

#### (a)      Elements

To recover under 18 U.S.C. § 1962(c), a plaintiff must prove (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity (known as "predicate acts"), (5) causing injury to the plaintiff's "business or property" by the conduct constituting the violation.

Conduct: The conduct element of § 1962(c) requires that the defendant have some part in directing the affairs of the enterprise. Liability is not limited to those with primary responsibility for the enterprise's affairs, nor is a formal position within the enterprise required. However, the defendant is not liable under § 1962(c) unless the defendant has participated in the operation or management of the enterprise itself. In determining whether the conduct element has been satisfied, relevant questions include whether the defendant "occupies a position in the chain of command," "knowingly implements [the enterprise's] decisions," or is "indispensable to achieving the enterprise's goal."

Enterprise: An "enterprise includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." RICO does not require that either the racketeering enterprise or the predicate acts of racketeering be motivated by an economic purpose.

For purposes of § 1962(c), a single individual or entity cannot be both the RICO enterprise and an individual defendant. However, "the inability of a corporation to operate except through its officers is not an impediment to § 1962(c) suits." An organizational defendant can be a member of a larger associated-in-fact enterprise.

An associated-in-fact enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct." Its existence is proven through evidence of an ongoing organization, formal or informal, and evidence that the various associates function as a continuing unit. No particular organizational structure, separate or otherwise, is necessary for an associated-in-fact enterprise. Defendants in RICO actions must have had "some knowledge of the nature of the enterprise . . . to avoid an unjust association of the defendant[s] with the crimes of others," but the requirement of a common purpose may be met so long as the defendants were "each aware of the essential nature and scope of [the] enterprise and intended to participate in it."

A RICO enterprise is not defeated even when some of the enterprise's participants lack detailed knowledge of all of the other participants or their activities. Instead, "it is sufficient that the defendant know the general nature of the enterprise and know that the enterprise extends beyond his individual role." In particular cases, "the evidence used to prove the pattern of racketeering activity and the evidence establishing an enterprise" may overlap. However, "enterprise" and "conduct" are two separate and necessary elements of a civil RICO claim.

Pattern: A pattern is defined as "at least two acts of racketeering activity"

4

within ten years of each other. Proving two predicate acts is a necessary condition for finding a violation, but may not be sufficient. To establish a "pattern of racketeering activity," the predicate acts must be both "related" and "continuous." Related conduct "embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." Relatedness of the alleged or proven predicate acts is rarely an issue. However, merely alleging that the predicate acts share the same participants is insufficient to establish that they are related.

The continuity requirement reflects Congress's concern in RICO with long-term criminal conduct.

Plaintiffs must prove either "open-ended" or "closed-ended" continuity—that is, a plaintiff must either prove a series of related predicate acts committed over a substantial period of time (known as closed-ended continuity), or show past conduct that by its nature projects into the future with a threat of repetition (known as open-ended continuity).

There is no bright line rule for what period of time the pattern of activity must extend to establish closed-ended continuity, though activity spanning only several months is unlikely to satisfy the requirement. Open-ended continuity is shown through "predicate acts that specifically threaten repetition or that become a regular way of doing business."

Racketeering Activity: To constitute racketeering activity, the relevant conduct must consist of at least one of the indictable predicate acts listed in 18 U.S.C. § 1961. Predicate acts must be proved by a preponderance of the evidence.

A RICO conspiracy under § 1962(d) may be established by proof of an agreement to commit a substantive violation of RICO. The conspirator need not have agreed to commit or facilitate each and every part of the substantive offense. However, the conspirator must have been "aware of the essential nature and scope

1   of the enterprise and intended to participate in it." The "agreement need not be

2   express as long as its existence can be inferred from words, actions, or

3   interdependence of activities and persons involved." If a RICO conspiracy is

4   demonstrated, "[a]ll conspirators are liable for the acts of their co-conspirators."

5       A defendant can be held liable for a RICO conspiracy if the evidence shows

6   that he or she "knowingly agree[d] to facilitate a scheme which includes the

7   operation or management of a RICO enterprise." There is no requirement that the

8   defendant have actually conspired to operate or manage the enterprise himself or

9   herself. Id. (affirming conviction under § 1962(d) of defendant who collected money

10  on behalf of member of enterprise, facilitated communications between conspirators

11  and accepted payment for drugs sold through enterprise).

12      Section 1962(d) applies to intracorporate, as well as intercorporate

13  conspiracies; thus, it is possible for a corporation to engage in a RICO conspiracy

14  with its own officers and representatives.

15      Authority:  Instruction 8.0, Ninth Circuit Manual of Model Jury Instructions

16  (Civil) 2017 Edition (last updated June 2020).

17                          **(b)    Evidence**

18      Beginning no later than February 2017 and continuing thereafter, Defendants,

19  formed an association-in-fact enterprise by establishing contractual, business and

20  other relationships with each other and otherwise collaborating to use the Property

21  for the commercial cultivation, processing, distribution and sale of marijuana. The

22  association-in-fact enabled Defendants to achieve their collective purpose more

23  efficiently.

24      The rent and other payments for the Property, and the nearly 19,000

25  marijuana plants grown at the property, have been used and moved in interstate

26  commerce.

27      Each of the Defendants has conducted and participated in the conduct of the

28  affairs of the marijuana growing enterprise through a pattern of racketeering activity

6

by committing more than two related and continuous acts of racketeering through the ongoing cultivation, distribution and sale of marijuana and cannabis products. Defendants Luo, Realty Group One, A-Z Realty, Zheng, and Whelan represented the occupants and gangsters in leasing the Property and enabling the cultivation, distribution and sale of the marijuana crops.  Defendants Shi Dan Chen and Ming-Wing Lam were occupants of the Property who cultivated the marijuana, and/or the occupants' "contacts/managers" assisted with the leasing and growing and who also threatened Mrs. Zhang's life

A number of persons from the Fujian Provence were looking to rent large houses in the area to create marijuana farms.  The occupants repeatedly requested to extend the Lease, including for an additional year after it was set to expire.  There was also an on-going relationship between the Defendants.

### (ii). Breach of Fiduciary Duty Against A-Z Realty, Zheng & Whelan

#### (a) Elements

To establish this claim, Plaintiff Zhang must prove the following:

1. That Defendants were Plaintiff Zhang's real estate agent and property manager;

2. That Defendants (a) knowingly acted against Plaintiff Zhang's interests in connection with marijuana operation at the Property; and/or (b) acted on behalf of a party whose interests were adverse to Plaintiff Zhang in connection with the marijuana operation at the Property

3. That Plaintiff Zhang did not give informed consent to Defendants' conduct;

4. That Plaintiff Zhang was harmed; and

5. That Defendants' conduct was a substantial factor in causing Plaintiff Zhang's harm.

Authority:  California Civil Jury Instructions 4102 (2021 Edition).

1

**(b)     Evidence**

2        A-Z Realty, Whelan and Zheng were Mrs. Zhang's real estate property

3   Brokers, managers, and agents.  Based on their contractual agency relationship. Mrs.

4   Zhang reposed certain confidences and trusts in A-Z Realty, Whelan and Zheng,

5   particularly given Mrs. Zhang's general inexperience with property rentals and

6   management and her limited abilities to read and understand English.

7        A-Z Realty, Whelan and Zheng misled Mrs. Zheng about the identity of the

8   actual occupants of the Property, demanding increased property management fees

9   leasing the Property, failing to act in Mrs. Zhang's best interests with regard to the

10  removal or eviction of the occupants and the suggested sale of the Property to them.

11              **(iii).   Intentional Fraud and Deceit Against All Defendants**

12                    **(a)     Elements**

13        To establish this claim, Plaintiff Zhang must prove all of the following:

14        1. That Defendants were Plaintiff Zhang's real estate agents and/or property

15  managers and otherwise owed a fiduciary duty to Plaintiff Zhang to provide her with

16  honest and accurate information.

17        2. That Defendants acted on Plaintiff Zhang's behalf for purposes of leasing

18  and managing the Property and providing her with honest and accurate information

19  related to the occupants of  the Property.

20        3. That Defendants knew, or should have known, that information related to

21  the occupants of the Property was fraudulent, that the occupants intended to grow

22  and sell a substantial amount of marijuana at the property and that the marijuana

23  operation at the Property was illegal.

24        4. Defendants misled Plaintiff Zhang by failing to disclose this information

25  and/or providing Plaintiff Zhang with information that was inaccurate or

26  incomplete;

27        5. That Plaintiff Zhang was harmed; and

28        6. That Defendants' conduct was a substantial factor in causing Plaintiff

8

Zhang's harm.

Authority:  California Civil Jury Instructions 4111 (2021 Edition).

**(b)   Evidence**

Defendants made false statements directly to Mrs. Zhang, or through her agents and upon which they intended her to rely.  The false statements include, but are not limited to, the following: (a) the actual identities of the occupants of the Property, including false information and the forged documents provided to Mrs. Zhang as part of the rental applications; (b) continued statements about the identities of Mr. Wu and Ms. Li as the occupants of the Property; and (c) the occupants' willingness and intentions to pay additional amounts to continue renting the Property and to pay the costs to return the Property to its original state before it had been converted to a marijuana farm.

Defendants knew the statements to be false at the time they were made, or made the representations recklessly and without regard for the truth. By making the statements, Defendants intended to induce Mrs. Zhang to sign the Lease, to permit entry into the Property, to refrain from calling the police, to refrain from evicting the occupants, and to extend the term of the lease or offer the Property for sale at a substantially reduced price to the gangsters.

**(iv).   Negligent Misrepresentation Against All Defendants**

**(a)   Elements**

To establish this claim, Plaintiff Zhang must prove all of the following:

1. That Defendants represented to Plaintiff Zhang that a fact was true;

2. That Defendants' representation was not true;

3. That although Defendants may have honestly believed that the representation was true, Defendants had no reasonable grounds for believing the representation was true when made;

4. That Defendants intended that Plaintiff Zhang rely on this representations;

5. That Plaintiff Zhang reasonably relied on Defendants' representations;

9

6. That Plaintiff Zhang was harmed; and

7. That Plaintiff Zhang's reliance on Defendants' representations were a substantial factor in causing Plaintiff Zhang's harm.

Authority:  California Civil Jury Instructions 1903 (2021 Edition).

### (b) Evidence

Defendants made false statements directly to Mrs. Zhang, or through her agents and upon which they intended her to rely. The false statements include, but are not limited to, the following: (a) the actual identities of the occupants of the Property, including false information and the forged documents provided to Mrs. Zhang as part of the rental applications; (b) continued statements about the identities of Mr. Wu and Ms. Li as the occupants of the Property; and (c) the occupants' willingness and intentions to pay additional amounts to continue renting the Property and to pay the costs to return the Property to its original state before it had been converted to a marijuana farm.

The statements and representations were false and Defendants had no reasonable grounds for believing them to be true at the time they were made.  By making the statements, Defendants intended to induce Mrs. Zhang to sign the Lease, to permit entry into the Property, to refrain from calling the police, to refrain from evicting the occupants, and to extend the term of the lease or offer the Property for sale at a substantially reduced price to the gangsters.

### (v).   Breach of Property Management Agreement Against A-Z Realty

#### (a)   Elements

To recover damages from A-Z Realty for breach of contract, Plaintiff Zhang must prove all of the following:

1. That Plaintiff Zhang and A-Z Realty entered into a contract;

2. That A-Z Realty did something that the contract prohibited it from doing;

5. That Plaintiff Zhang was harmed; and

10

6. That A-Z Realty's breach of contract was a substantial factor in causing Plaintiff Zhang's harm.

Authority:  California Civil Jury Instructions 303 (2021 Edition).

### (b)     Evidence

Mrs. Zhang and A-Z Realty had an enforceable contract, the Property Management Agreement ("PMA"), which was originally signed on July 11, 2016. The parties signed a new PMA on February 20, 2017, extending the term of the property management relationship to February 28, 2018.

A-Z Realty materially breached the PMA by, among other things: failing to rent the Property to a qualified tenant; failing to use due diligence in the performance of its obligations under the PMA; failing to make, cause to be made, and/or supervise repairs, improvements, or alterations to the Property; failing to receive and maintain a security deposit; and failing to remit funds owed to Mrs. Zhang.

Mrs. Zhang has performed all of her obligations under the PMA, Including mediation of this dispute prior to filing this lawsuit.

### (vi)     Trespass and Wrongful Occupancy Against All Defendants
### (a)     Elements

To recover damages from Defendants for trespass and wrongful occupancy, Plaintiff Zhang must prove all of the following:

1. Mrs. Zhang is the owner of the Property.

2. Defendants intentionally or recklessly or negligently entered into the Property or caused other Defendants to enter into the Property without permission or under false pretenses.

3. Mrs. Zhang did not give permission for entry into the Property by any occupants other than Mr. Wu, Ms. Li and their supposed children.

4.. As a direct and proximate result of Defendants' acts and omissions, Mrs. Zhang has been harmed.

**(b)    Evidence**

Mrs. Zhang is the owner of the Property.  Defendants entered into the Property and/or caused other Defendants to enter into the Property without permission or under false pretenses.

Mrs. Zhang did not give permission for entry into the Property by any occupants other than Mr. Wu, Ms. Li and their supposed children.

As a direct and proximate result of Defendants' acts and omissions, Mrs. Zhang has been harmed. The damage to the real property includes, but is not limited to, the costs of repairs already made, the cost of further repairs, and the diminution of value between the costs repairs and the value of the Property prior to the trespass.

Damages include the profits from the business for of the marijuana farming for which the Property was used by the unauthorized occupants.

**(vii)   Nuisance Against All Defendants**

**(a)    Elements**

To establish this claim, Plaintiff Zhang must prove all of the following:

1. That Plaintiff Zhang owned the property;

2. That Defendants, by acting or failing to act, created a condition or permitted a condition to exist that (i) was harmful to health; (ii) was indecent or offensive to the senses; and/or (iii) was an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property;

3. That Defendants" conduct in acting or failing to act was intentional and unreasonable and/or unintentional, but negligent or reckless and/or the condition that Defendants created or permitted to exist was the result of an abnormally dangerous activity;

4. That this condition substantially interfered with Plaintiff Zhang's use or enjoyment of her land;

5. That an ordinary person would reasonably be annoyed or disturbed by Defendants' conduct;

6. That Plaintiff Zhang did not consent to Defendants' conduct;

7. That Plaintiff Zhang was harmed;

8. That Defendants' conduct was a substantial factor in causing Plaintiff Zhang's harm; and

9. That the seriousness of the harm outweighs the public benefit of Defendants' conduct.

Authority:  California Civil Jury Instructions 2021 (2021 Edition)

### (b)     Evidence

Mrs. Zhang is the owner of the Property, and did not consent to its use as a marijuana farm.

Defendants operated a criminal marijuana farming enterprise on and inside the Property in violation of federal, state and local laws, statutes and ordinances. Defendants' use of the Property was physically harmful to Mrs. Zhang in that she was exposed to mold and other toxic and harmful conditions.

Defendants' use of the Property also substantially and unreasonably interfered with Mrs. Zhang's use and enjoyment of the Property, including her ability to continue renting it.

Mrs. Zhang has been damaged in her health and well-being, and the value of the Property has been substantially diminished.

When Defendants established and operated the marijuana farming enterprise in and on the Property, they did so knowing that the enterprise was illegal and would cause health and property damage.

### (viii)  Elder Abuse Against All Defendants

### (a)     Elements

To establish this claim, Plaintiff Zhang must prove that all of the following are more likely to be true than not true:

1. That Defendants took and/or appropriated Mrs. Zhang's property and/or assisted in taking and/or appropriating Mrs. Zhang's property;

2. That Mrs. Zhang was 65 years of age or older at the time of the conduct;

3. That Defendants took and/or obtained the property for a wrongful use, or with the intent to defraud, or by undue influence;

4. That Mrs. Zhang was harmed; and

5. That Defendants' conduct was a substantial factor in causing Plaintiff Zhang's harm.

One way Plaintiff Zhang can prove that Defendants took and/or obtained the property for a wrongful use is by proving that Defendants knew or should have known that their conduct was likely to be harmful to Mrs. Zhang.

Defendants took and/or obtained the property if Mrs. Zhang was deprived of the property by an agreement regardless of whether the property was held by Mrs. Zhang.

Authority:  California Civil Jury Instructions 3100 (2021 Edition)

**(b)     Evidence**

Mrs. Zhang is over 75 years old.  Defendants made direct and indirect threats against Mrs. Zhang's life, including stating and implying that if she refused to continue to rent the Property to them, failed to cooperate with the gangsters, or reported the marijuana enterprise to law enforcement, she would be killed.

Defendants took, appropriated, and retained, or assisted other Defendants in taking, appropriating and retaining, Mrs. Zhang's property, including both her real property and the money she was owed for the supposed rental of the Property.  The illegal conduct includes, but is not limited to, the taking and use of the Property for the marijuana growing enterprise, withholding rent, security deposits, costs of repairs and other amounts, and attempting to convince her to sell the Property at a substantially under-valued price and with the risk of a seller-financed loan.

Defendants also took advantage of Mrs. Zhang's limited English, limited real estate experience, her distance from the Property, and by threatening her life.

**(ix)   Intentional Infliction of Emotional Distress Against All Defendants**

      **(a)   Elements**

To establish this claim, Plaintiff Zhang must prove all of the following:

1. That Defendants' conduct was outrageous;

2. That Defendants intended to cause Plaintiff Zhang emotional distress and/or acted with reckless disregard of the probability that Plaintiff Zhang would suffer emotional distress, knowing that Plaintiff Zhang was present when the conduct occurred;

3. That Plaintiff Zhang suffered severe emotional distress; and

4. That Defendants' conduct was a substantial factor in causing Plaintiff Zhang's severe emotional distress.

Authority:  California Civil Jury Instructions 1600 (2021 Edition).

      **(b)   Evidence**

Defendants' conduct, including their fraud and death threats.  Defendants' conduct was directed at her with the knowledge that she would receive the death threats.  Mrs. Zhang has suffered and will continue to suffer severe emotional distress.

**(x)   Negligence Against all Defendants**

      **(a)   Elements**

To establish this claim, Plaintiff Zhang must prove all of the following:

1. That Defendants were negligent;

2. That Plaintiff Zhang was harmed; and

3. That Defendants' negligence was a substantial factor in causing Plaintiff Zhang's harm.

Authority:  California Civil Jury Instructions 400 (2021 Edition).

      **(b)   Evidence**

Defendants owed a duty of care to Mrs. Zhang not to cause her personal

15

injury or damage her property.   Defendants breached their duties of care and were negligent in their conduct, acts and omissions.  It was reasonably foreseeable that Defendants' negligence would cause Mrs. Zhang harm.

### (xi)   Statutory Unfair Competition in Violation of Cal. Bus. & Profs. Code § 17200 Against All Defendants

#### (a)   Elements

California's Unfair Competition Law ("UCL") prohibits "any unlawful, unfair or fraudulent business act or practice" (Cal. Bus. & Prof. Code § 17200). A business practice is unlawful for purposes of the UCL if it violates an independent federal, state or local law, whether civil or criminal. Thus, the UCL "borrows" violations of other laws and makes them independently actionable as unlawful business practices.

#### (b)   Evidence

Defendants have violated and are continuing to violate the federal Controlled Substances Act and other related laws, statutes and ordinances by cultivating, distributing and selling cannabis. Defendants also made fraudulent misrepresentations about the identities of the occupants and the purported legality of marijuana cultivation. They attempted to convince Plaintiff Zhang to sell the Property at a substantially undervalued price and with the risks of a seller carry-back loan. They also threatened Mrs. Zhang's life.

**Defendants A-Z Realty & Investment Corp., Dongyan (Annie) Zheng, Jennifer Whelan:**

(a)   Defendants A-Z Realty & Investment Corp., Dongyan (Annie) Zheng, Jennifer Whelan plan to pursue the following counterclaims and affirmative defenses:

#### Counterclaims:

Cross-Claimants Defendants A-Z Realty & Investment Corp., Dongyan (Annie) Zheng, Jennifer Whelan asserted cross-claims against Cross-Defendants Realty One Group, Jihui (Lucky) Luo, Shi Dan Chen and Ming-Wing Lam.

**1.      Counter Claim No. 1:  Equitable Indemnity and Contribution**

      **a)      Elements Required to Establish Counter Claim 1**

The A-Z Realty Defendants claim that if they are required to pay a court judgment in favor of Plaintiff and attorney fees and that Cross-Defendants must reimburse the A-Z Realty Defendants based on the Cross-Defendants' share of responsibility. In order for the A-Z Realty Defendants to recover from the Cross-Defendants, the A-Z Realty Defendants must prove both of the following:

      1.      That the Cross-Defendants were negligent or committed the wrongdoing claimed by Plaintiff; and

      2.      That the Cross-Defendants' negligence and wrongdoing contributed as a substantial factor in causing Plaintiff's harm.

California CACI Jury Instructions (2021) 3800

      **b)      Key Evidence Relied on in Support of Counter Claim 1**

Evidence in the form of deposition testimony and emails establishes that the A-Z Realty Defendants provided Plaintiff with the tenant applications drafted by and supplied by the Realty One Defendants.  Evidence in the form of deposition testimony establishes that the Realty One Defendants conducted the background check and financial verification on the prospective tenants prior to providing the applications to the A-Z Realty Defendants.  The A-Z Realty Defendants' expert will testify that the Realty One Defendants fell below their standard of care by providing fictitious applications with poorly verified background checks and financial information as to the perspective tenants.

It was based on the information supplied by the Realty One Defendants that Plaintiff elected to rent the Property.

**Affirmative Defenses**

      **1.      Affirmative Defense No. 1:  Comparative Fault of Plaintiff**

The A-Z Realty Defendants allege that any injury or damage suffered by

17

1  Plaintiff was caused solely by reason of Plaintiff's own wrongful acts and conduct
2  and not by reason of any unlawful act or omission of the Realty One Defendants.
3  Any injury to Plaintiff was caused by her own negligence and failure to act with
4  reasonable care, which carelessness, negligence and omissions were the proximate
5  cause of the damage, if any, to Plaintiff.

6          **a)      Elements Required to Establish Affirmative Defense**
7                     **No. 1**

8          To succeed on this claim, the A-Z Realty Defendants must prove both of the
9  following:

10         1.      That Plaintiff was negligent or failed to act with reasonable care; and
11         2.      That Plaintiff's negligence or failure to act was a substantial factor in
12 causing her harm.

13         If the A-Z Realty Defendants prove the above, Plaintiff's damages are
14 reduced by a determination of the percentage of Plaintiff's responsibility.

15         **b)      Evidence Relied on in Support of Affirmative Defense**
16                    **No. 1**

17         The essence of Plaintiff's claims against A-Z Realty Defendants is that they
18 were involved in the marijuana cultivation at the Property and distribution of same,
19 which is a federal offense. Plaintiff has attempted to use the timeline of interaction
20 between Plaintiff and the A-Z Realty Defendants and as evidence of the A-Z Realty
21 Defendants' involvement in the tenants' criminal enterprise. However, the timeline
22 is more likely to show the A-Z Realty Defendants' diligence and lack of
23 involvement. Prior to tenants moving into the Property, tenants paid (1) pro-rated
24 February 2017 rent; (2) March 2017 rent; and (3) the security deposit.  All contact
25 up to that point had been with tenant's agent, Defendants Realty One Group and
26 Lucky Luo, which is not unusual where tenants have an agent working on their
27 behalf.
28

After move-in, Ms. Zheng of the A-Z Realty Defendants received a text from the person she believed was tenant, Wu, and he asked for information to switch over utilities into his name.  The information was provided by text message.  On or about March 30, 2017 the person Ms. Zheng believed was Wu called and asked for the address to hand-deliver April 2017's rent, and also asked Ms. Zheng for "other rental opportunities."  April 2017's rent was paid.  On April 30, 2017, the person claiming to be Wu hand-delivered May's rent.  Up to this point the A-Z Realty Defendants had absolutely no reason to suspect anything was amiss and had a duty to allow tenants to quietly enjoy the Property.  On May 9, 2017 one of the contractors the A-Z Realty Defendants use asked Ms. Zheng if she had 3000 square foot properties for rent.  The contractor explained that "Chinese" clients like to lease these types of properties to grow marijuana.  Ms. Zheng told the contractor she was not interested but began suspecting such activity with properties she was managing, including the subject Property.  Prior to that she had not heard of such matters.  Ms. Zheng immediately called Plaintiff and told her about her concerns.  Ms. Zheng then called and texted Wu, who did not respond.  On May 10, 2017 Ms. Zheng drove to the Property and posted a Notice of Entry.  She saw that all windows and doors were fully blacked out and reported same to Plaintiff.  "Wu" then called Ms. Zheng and admitted they were growing marijuana in the Property but that they had a "doctor's note to grow up to 200 plants each."  "Wu" agreed to have Ms. Zheng inspect the Property on May 11, 2017 and Ms. Zheng urged Plaintiff and her son to join the inspection.  Plaintiff and her son declined.  Ms. Zheng took photographs at time of inspection to document the condition of the Property.

Ms. Zheng then found information online about the rules and regulations of marijuana growing and sent this information to Plaintiff.  She also called the state and local authorities, who told her that a new law had passed in January 2018 allowing for growing marijuana and the Murrieta police department told her that they would not likely arrest the tenants if they had the proper paperwork and that

this would be a civil matter.  Ms. Zheng also called an eviction attorney in an effort to obtain information regarding Plaintiff's rights.

Ms. Zheng reported all of this to Plaintiff. Plaintiff told her they were open to allowing tenants to stay in exchange for increased rent. At that time Plaintiff, her son and her husband were all communicating with the A-Z Realty Defendants about the situation.

On May 12, 2017, Ms. Zheng told Plaintiff and her family that they had three options: (1) Report the matter to authorities; (2) Evict tenant; or (3) Negotiate new rental terms. At that time, Ms. Zheng told Plaintiff that if she continued to rent to tenants then she, the A-Z Realty Defendants, would quit as property manager. Plaintiff opted for more rent after begging Ms. Zheng not to quit.

On May 13, 2018, Plaintiff told Ms. Zheng tenants could stay if they paid $20,000.00 more in deposit and increased the rent to $5,000.00 per month.  Ms. Zheng felt bad for Plaintiff because she and her husband had health issues and agreed to stay on as property manager.  The tenants paid $10,000.00, first half of the increased deposit and began paying $5,000.00 per month in rent.  These monthly payments were tendered directly to Plaintiff.  In October 2018 Ms. Zheng contacted tenants for the second $10,000.00 installment of increased security deposit.  Tenants asked for a second year of lease.  After numerous phone calls, Plaintiff verbally agreed to sign a year lease extension with tenants if tenants paid the second installment of $10,000.00 toward the $20,000.00 deposit.  Tenants made such payment in October 2017.  In January 2018, Plaintiff and her son advised Ms. Zheng that they decided not to sign the year extension because they found a clipping stating the federal government is cracking down on marijuana and they were concerned. However, Plaintiff instructed Ms. Zheng to allow tenants to stay until February 2018 to collect all rent due.  At that time, Ms. Zheng put tenants on notice that they must vacate by end of existing lease term.

The tenants then called and texted Ms. Zheng and became upset that Plaintiff was going back on her word to allow them to stay another year. The tenants asked for an extension through April 2018 in order to harvest the recent crop. Plaintiff, by this point believing the marijuana grow operation was illegal, nonetheless asked for an addition $100,000.00 and in exchange the tenants would be allowed to remain through the end of April 2018. The tenants declined. Plaintiff then offered to sell the Property to tenants for $480,000.00 and after some discussion tenants verbally agreed to pay $450,000.00 and to close by March 5, 2018. However, when the time came, tenants vanished.

The A-Z Realty Defendants will testify to the above and such testimony is inconsistent with engagement in any criminal conspiracy.

### 2. Affirmative Defense No. 2 – Assumption of the Risk

Plaintiff, willingly, voluntarily and knowingly assumed each, every and all the risks and hazards involved in the activities referred to in Plaintiff's complaint. Plaintiff was aware of the dangers and risks with respect to the alleged actions, and did knowingly and voluntarily, and freely assume and expose herself to the known risks which assumption of the risk caused and/or contributed to the alleged damages sought by Plaintiff.

### a) Elements Required to Establish Affirmative Defense No. 2

To succeed on this claim, the A-Z Realty Defendants must prove both of the following:

1. That Plaintiff was aware of the risks involved with renting her house and continuing to rent her house to those engaged in the criminal activity of cultivating, harvesting and selling marijuana; and

2. That Plaintiff's risk was a substantial factor in causing her harm.

If the A-Z Realty Defendants prove the above, Plaintiff's damages are reduced by a determination of the percentage of Plaintiff's responsibility.

1                      **b)**       **Evidence Relied on in Support of Affirmative Defense**

2                                 **No. 2**

3       The essence of Plaintiff's claims against A-Z Realty Defendants is that they

4 were involved in the marijuana cultivation at the Property and distribution of same,

5 which is a federal offense. Plaintiff has attempted to use the timeline of interaction

6 between Plaintiff and the A-Z Realty Defendants and as evidence of the A-Z Realty

7 Defendants' involvement in the tenants' criminal enterprise. However, the timeline

8 is more likely to show the A-Z Realty Defendants' diligence and lack of

9 involvement. Prior to tenants moving into the Property, tenants paid (1) pro-rated

10 February 2017 rent; (2) March 2017 rent; and (3) the security deposit.  All contact

11 up to that point had been with tenant's agent, Defendants Realty One Group and

12 Lucky Luo, which is not unusual where tenants have an agent working on their

13 behalf.

14       After move-in, Ms. Zheng of the A-Z Realty Defendants received a text from

15 the person she believed was tenant, Wu, and he asked for information to switch over

16 utilities into his name.  The information was provided by text message.  On or about

17 March 30, 2017 the person Ms. Zheng believed was Wu called and asked for the

18 address to hand-deliver April 2017's rent, and also asked Ms. Zheng for "other

19 rental opportunities."  April 2017's rent was paid.  On April 30, 2017, the person

20 claiming to be Wu hand-delivered May's rent.  Up to this point the A-Z Realty

21 Defendants had absolutely no reason to suspect anything was amiss and had a duty

22 to allow tenants to quietly enjoy the Property.  On May 9, 2017 one of the

23 contractors the A-Z Realty Defendants use asked Ms. Zheng if she had 3000 square

24 foot properties for rent.  The contractor explained that "Chinese" clients like to lease

25 these types of properties to grow marijuana.  Ms. Zheng told the contractor she was

26 not interested but began suspecting such activity with properties she was managing,

27 including the subject Property.  Prior to that she had not heard of such matters.  Ms.

28 Zheng immediately called Plaintiff and told her about her concerns.  Ms. Zheng then

called and texted Wu, who did not respond.  On May 10, 2017 Ms. Zheng drove to the Property and posted a Notice of Entry.  She saw that all windows and doors were fully blacked out and reported same to Plaintiff.  "Wu" then called Ms. Zheng and admitted they were growing marijuana in the Property but that they had a "doctor's note to grow up to 200 plants each."  "Wu" agreed to have Ms. Zheng inspect the Property on May 11, 2017 and Ms. Zheng urged Plaintiff and her son to join the inspection.  Plaintiff and her son declined.  Ms. Zheng took photographs at time of inspection to document the condition of the Property.

Ms. Zheng then found information online about the rules and regulations of marijuana growing and sent this information to Plaintiff.  She also called the state and local authorities, who told her that a new law had passed in January 2018 allowing for growing marijuana and the Murrieta police department told her that they would not likely arrest the tenants if they had the proper paperwork and that this would be a civil matter.  Ms. Zheng also called an eviction attorney in an effort to obtain information regarding Plaintiff's rights.

Ms. Zheng reported all of this to Plaintiff. Plaintiff told her they were open to allowing tenants to stay in exchange for increased rent. At that time Plaintiff, her son and her husband were all communicating with the A-Z Realty Defendants about the situation.

On May 12, 2017, Ms. Zheng told Plaintiff and her family that they had three options: (1) Report the matter to authorities; (2) Evict tenant; or (3) Negotiate new rental terms. At that time, Ms. Zheng told Plaintiff that if she continued to rent to tenants then she, the A-Z Realty Defendants, would quit as property manager. Plaintiff opted for more rent after begging Ms. Zheng not to quit.

On May 13, 2018, Plaintiff told Ms. Zheng tenants could stay if they paid $20,000.00 more in deposit and increased the rent to $5,000.00 per month.  Ms. Zheng felt bad for Plaintiff because she and her husband had health issues and agreed to stay on as property manager.  The tenants paid $10,000.00, first half of the

increased deposit and began paying $5,000.00 per month in rent.  These monthly payments were tendered directly to Plaintiff.  In October 2018 Ms. Zheng contacted tenants for the second $10,000.00 installment of increased security deposit.  Tenants asked for a second year of lease.  After numerous phone calls, Plaintiff verbally agreed to sign a year lease extension with tenants if tenants paid the second installment of $10,000.00 toward the $20,000.00 deposit.  Tenants made such payment in October 2017.  In January 2018, Plaintiff and her son advised Ms. Zheng that they decided not to sign the year extension because they found a clipping stating the federal government is cracking down on marijuana and they were concerned. However, Plaintiff instructed Ms. Zheng to allow tenants to stay until February 2018 to collect all rent due.  At that time, Ms. Zheng put tenants on notice that they must vacate by end of existing lease term.

The tenants then called and texted Ms. Zheng and became upset that Plaintiff was going back on her word to allow them to stay another year.  The tenants asked for an extension through April 2018 in order to harvest the recent crop.  Plaintiff, by this point believing the marijuana grow operation was illegal, nonetheless asked for an addition $100,000.00 and in exchange the tenants would be allowed to remain through the end of April 2018.  The tenants declined.  Plaintiff then offered to sell the Property to tenants for $480,000.00 and after some discussion tenants verbally agreed to pay $450,000.00 and to close by March 5, 2018.  However, when the time came, tenants vanished.

The A-Z Realty Defendants will testify to the above and such testimony is inconsistent with engagement in any criminal conspiracy.

### 3.    Affirmative Defense No. 3: Superseding/Intervening Acts

The A-Z Realty Defendants claim that damages allegedly sustained by Plaintiff, which such damages are generally and specifically denied to exist, were the result of the active and affirmative wrongful acts, fraud, and omissions to act of Plaintiff and independent third parties and/or entities whose active and affirmative

wrongdoing resulted in superseding and intervening causes of Plaintiff's alleged damages which thereby relieves these responding Defendants from liability.  Any damages awarded in this action should therefore be in direct proportion to the fault of these Defendants, if any, as provided by California Civil Code §§1431 to 1431.5.

### a) Elements Required to Establish Affirmative Defense No. 3

The A-Z Realty Defendants claim that if they are required to pay a court judgment in favor of Plaintiff and attorney fees and that Cross-Defendants must reimburse the A-Z Realty Defendants based on the Cross-Defendants' share of responsibility. In order for the A-Z Realty Defendants to recover from the Cross-Defendants, the A-Z Realty Defendants must prove both of the following:

1.    That the Cross-Defendants were negligent or committed the wrongdoing claimed by Plaintiff; and

2.    That the Cross-Defendants' negligence and wrongdoing contributed as a substantial factor in causing Plaintiff's harm.

California CACI Jury Instructions (2021) 3800

### b) Evidence Relied on in Support of Affirmative Defense No. 3

The essence of Plaintiff's claims against A-Z Realty Defendants is that they were involved in the marijuana cultivation at the Property and distribution of same, which is a federal offense. Plaintiff has attempted to use the timeline of interaction between Plaintiff and the A-Z Realty Defendants and as evidence of the A-Z Realty Defendants' involvement in the tenants' criminal enterprise. However, the timeline is more likely to show the A-Z Realty Defendants' diligence and lack of involvement. Prior to tenants moving into the Property, tenants paid (1) pro-rated February 2017 rent; (2) March 2017 rent; and (3) the security deposit.  All contact up to that point had been with tenant's agent, Defendants Realty One Group and

Lucky Luo, which is not unusual where tenants have an agent working on their behalf.

After move-in, Ms. Zheng of the A-Z Realty Defendants received a text from the person she believed was tenant, Wu, and he asked for information to switch over utilities into his name. The information was provided by text message. On or about March 30, 2017 the person Ms. Zheng believed was Wu called and asked for the address to hand-deliver April 2017's rent, and also asked Ms. Zheng for "other rental opportunities." April 2017's rent was paid. On April 30, 2017, the person claiming to be Wu hand-delivered May's rent. Up to this point the A-Z Realty Defendants had absolutely no reason to suspect anything was amiss and had a duty to allow tenants to quietly enjoy the Property. On May 9, 2017 one of the contractors the A-Z Realty Defendants use asked Ms. Zheng if she had 3000 square foot properties for rent. The contractor explained that "Chinese" clients like to lease these types of properties to grow marijuana. Ms. Zheng told the contractor she was not interested but began suspecting such activity with properties she was managing, including the subject Property. Prior to that she had not heard of such matters. Ms. Zheng immediately called Plaintiff and told her about her concerns. Ms. Zheng then called and texted Wu, who did not respond. On May 10, 2017 Ms. Zheng drove to the Property and posted a Notice of Entry. She saw that all windows and doors were fully blacked out and reported same to Plaintiff. "Wu" then called Ms. Zheng and admitted they were growing marijuana in the Property but that they had a "doctor's note to grow up to 200 plants each." "Wu" agreed to have Ms. Zheng inspect the Property on May 11, 2017 and Ms. Zheng urged Plaintiff and her son to join the inspection. Plaintiff and her son declined. Ms. Zheng took photographs at time of inspection to document the condition of the Property.

Ms. Zheng then found information online about the rules and regulations of marijuana growing and sent this information to Plaintiff. She also called the state and local authorities, who told her that a new law had passed in January 2018

allowing for growing marijuana and the Murrieta police department told her that they would not likely arrest the tenants if they had the proper paperwork and that this would be a civil matter. Ms. Zheng also called an eviction attorney in an effort to obtain information regarding Plaintiff's rights.

Ms. Zheng reported all of this to Plaintiff. Plaintiff told her they were open to allowing tenants to stay in exchange for increased rent. At that time Plaintiff, her son and her husband were all communicating with the A-Z Realty Defendants about the situation.

On May 12, 2017, Ms. Zheng told Plaintiff and her family that they had three options: (1) Report the matter to authorities; (2) Evict tenant; or (3) Negotiate new rental terms. At that time, Ms. Zheng told Plaintiff that if she continued to rent to tenants then she, the A-Z Realty Defendants, would quit as property manager. Plaintiff opted for more rent after begging Ms. Zheng not to quit.

On May 13, 2018, Plaintiff told Ms. Zheng tenants could stay if they paid $20,000.00 more in deposit and increased the rent to $5,000.00 per month. Ms. Zheng felt bad for Plaintiff because she and her husband had health issues and agreed to stay on as property manager. The tenants paid $10,000.00, first half of the increased deposit and began paying $5,000.00 per month in rent. These monthly payments were tendered directly to Plaintiff. In October 2018 Ms. Zheng contacted tenants for the second $10,000.00 installment of increased security deposit. Tenants asked for a second year of lease. After numerous phone calls, Plaintiff verbally agreed to sign a year lease extension with tenants if tenants paid the second installment of $10,000.00 toward the $20,000.00 deposit. Tenants made such payment in October 2017. In January 2018, Plaintiff and her son advised Ms. Zheng that they decided not to sign the year extension because they found a clipping stating the federal government is cracking down on marijuana and they were concerned. However, Plaintiff instructed Ms. Zheng to allow tenants to stay until February 2018 to collect all rent due. At that time, Ms. Zheng put tenants on notice that they must

1  vacate by end of existing lease term.

2      The tenants then called and texted Ms. Zheng and became upset that Plaintiff

3  was going back on her word to allow them to stay another year. The tenants asked

4  for an extension through April 2018 in order to harvest the recent crop. Plaintiff, by

5  this point believing the marijuana grow operation was illegal, nonetheless asked for

6  an addition $100,000.00 and in exchange the tenants would be allowed to remain

7  through the end of April 2018. The tenants declined. Plaintiff then offered to sell

8  the Property to tenants for $480,000.00 and after some discussion tenants verbally

9  agreed to pay $450,000.00 and to close by March 5, 2018. However, when the time

10  came, tenants vanished.

11      The A-Z Realty Defendants will testify to the above and such testimony is

12  inconsistent with engagement in any criminal conspiracy.

13            **4.**      **Affirmative Defense No. 4: Unclean Hands**

14      Plaintiff's suit is barred by the principle of unclean hands. The A-Z Realty

15  Defendants claim that Plaintiff is attempting to profit from her own criminal acts.

16  Attempting to profit from illegal marijuana cultivation is a criminal act.

17      The justice system will not allow a person to bring a claim for damages which

18  arose based upon her own criminal acts. The justice system will not enable the

19  wrongdoer to profit from her own wrongs. If the A-Z Realty Defendants prove that

20  Plaintiff Shuang Ying (Nancy) Zhang attempted to profit from her wrongdoing, you

21  should find that Plaintiff, Shuang Ying (Nancy) Zhang is not entitled to recover

22  damages in this action. Susag v. City of Lake Forest, 94 Cal. App. 4th 1401, 1412

23  (2002); Bigelow v. RKO Radio Pictures, Inc., 327 U.S. 251, 264 (1946); Dart

24  Industries, Inc. v. Liberty Mut. Ins. Co., 484 F.2d 1295, 1298 (9th Cir. 1973).

25            **a)**      **Elements Required to Establish Affirmative Defense**

26                    **No. 4.**

27      The A-Z Realty Defendants have asserted the affirmative defense of 'unclean

28  hands' as to Plaintiff. To aid you in evaluating this affirmative defense, you may

consider the following statement of law: 'No one can take advantage of his own wrong.' In other words, she who comes into court must come with clean hands. A plaintiff must act fairly in the matter for which she seeks monetary damages. Stated otherwise, relief is barred to a plaintiff who has violated principles of fairness, good conscience or good faith.

A finding of unclean hands is required when a plaintiff seeking damages has violated a duty of good faith or has acted unconscionably in connection with the same subject matter or relationship out of which the litigant claims a right to damages. If you find such a violation of good faith or conscience, then you should find that Plaintiff is not entitled to recover damages in this action.

The only conduct on which you may make a finding of unclean hands is that conduct directly related to the subject matter or relationship at issue in this litigation. Unclean hands does not mean that someone is a bad person in general or in some other respect; you may find unclean hands only if you find a direct connection between the alleged unclean hands conduct and the facts of this case.  California Civil Code § 3517; see, *Adler v. Fed. Republic of Nigeria, 209 F.3d 869, 877 (9th Cir. 2000); Seller Agency Council, Inc. v. Kennedy Ctr. for Real Estate Educ., Inc., 621 F.3d 981, 986 (9th Cir.2010); Ellenburg v. Brockway, Inc., 763 F.2d 1091, 1097 (9th Cir.1985); Kendall-Jackson Winery, Ltd. v. Superior Court,* 76 Cal.App.4th 970, 979 (1999); Lynn v. Duckel, 46 Cal.2d 845, 850, (1956); Fibreboard Paper Products Corp. v. East Bay Union of Machinists, 227 Cal.App.2d 675, 727–28, (1964); Health Maint. Network v. Blue Cross of Southern Cal., 202 Cal.App.3d 1043, 1061 (1988); Watson v. Poore, 18 Cal.2d 302, 313 (1941); Seligman v. Tucker, 6 Cal.App.3d 691, 700 (1970); and Moriarty v. Carlson, 184 Cal.App.2d 51, 56 (1960).

       **b)**      **Evidence Relied on in Support of Affirmative Defense No. 4**

The essence of Plaintiff's claims against A-Z Realty Defendants is that they

were involved in the marijuana cultivation at the Property and distribution of same, which is a federal offense. Plaintiff has attempted to use the timeline of interaction between Plaintiff and the A-Z Realty Defendants and as evidence of the A-Z Realty Defendants' involvement in the tenants' criminal enterprise. However, the timeline is more likely to show the A-Z Realty Defendants' diligence and lack of involvement. Prior to tenants moving into the Property, tenants paid (1) pro-rated February 2017 rent; (2) March 2017 rent; and (3) the security deposit. All contact up to that point had been with tenant's agent, Defendants Realty One Group and Lucky Luo, which is not unusual where tenants have an agent working on their behalf.

        After move-in, Ms. Zheng of the A-Z Realty Defendants received a text from the person she believed was tenant, Wu, and he asked for information to switch over utilities into his name. The information was provided by text message. On or about March 30, 2017 the person Ms. Zheng believed was Wu called and asked for the address to hand-deliver April 2017's rent, and also asked Ms. Zheng for "other rental opportunities." April 2017's rent was paid. On April 30, 2017, the person claiming to be Wu hand-delivered May's rent. Up to this point the A-Z Realty Defendants had absolutely no reason to suspect anything was amiss and had a duty to allow tenants to quietly enjoy the Property. On May 9, 2017 one of the contractors the A-Z Realty Defendants use asked Ms. Zheng if she had 3000 square foot properties for rent. The contractor explained that "Chinese" clients like to lease these types of properties to grow marijuana. Ms. Zheng told the contractor she was not interested but began suspecting such activity with properties she was managing, including the subject Property. Prior to that she had not heard of such matters. Ms. Zheng immediately called Plaintiff and told her about her concerns. Ms. Zheng then called and texted Wu, who did not respond. On May 10, 2017 Ms. Zheng drove to the Property and posted a Notice of Entry. She saw that all windows and doors were fully blacked out and reported same to Plaintiff. "Wu" then called Ms. Zheng and

admitted they were growing marijuana in the Property but that they had a "doctor's note to grow up to 200 plants each."  "Wu" agreed to have Ms. Zheng inspect the Property on May 11, 2017 and Ms. Zheng urged Plaintiff and her son to join the inspection.  Plaintiff and her son declined.  Ms. Zheng took photographs at time of inspection to document the condition of the Property.

Ms. Zheng then found information online about the rules and regulations of marijuana growing and sent this information to Plaintiff.  She also called the state and local authorities, who told her that a new law had passed in January 2018 allowing for growing marijuana and the Murrieta police department told her that they would not likely arrest the tenants if they had the proper paperwork and that this would be a civil matter.  Ms. Zheng also called an eviction attorney in an effort to obtain information regarding Plaintiff's rights.

Ms. Zheng reported all of this to Plaintiff. Plaintiff told her they were open to allowing tenants to stay in exchange for increased rent. At that time Plaintiff, her son and her husband were all communicating with the A-Z Realty Defendants about the situation.

On May 12, 2017, Ms. Zheng told Plaintiff and her family that they had three options: (1) Report the matter to authorities; (2) Evict tenant; or (3) Negotiate new rental terms. At that time, Ms. Zheng told Plaintiff that if she continued to rent to tenants then she, the A-Z Realty Defendants, would quit as property manager. Plaintiff opted for more rent after begging Ms. Zheng not to quit.

On May 13, 2018, Plaintiff told Ms. Zheng tenants could stay if they paid $20,000.00 more in deposit and increased the rent to $5,000.00 per month.  Ms. Zheng felt bad for Plaintiff because she and her husband had health issues and agreed to stay on as property manager.  The tenants paid $10,000.00, first half of the increased deposit and began paying $5,000.00 per month in rent.  These monthly payments were tendered directly to Plaintiff.  In October 2018 Ms. Zheng contacted tenants for the second $10,000.00 installment of increased security deposit.  Tenants

asked for a second year of lease.  After numerous phone calls, Plaintiff verbally agreed to sign a year lease extension with tenants if tenants paid the second installment of $10,000.00 toward the $20,000.00 deposit.  Tenants made such payment in October 2017.  In January 2018, Plaintiff and her son advised Ms. Zheng that they decided not to sign the year extension because they found a clipping stating the federal government is cracking down on marijuana and they were concerned. However, Plaintiff instructed Ms. Zheng to allow tenants to stay until February 2018 to collect all rent due.  At that time, Ms. Zheng put tenants on notice that they must vacate by end of existing lease term.

The tenants then called and texted Ms. Zheng and became upset that Plaintiff was going back on her word to allow them to stay another year.  The tenants asked for an extension through April 2018 in order to harvest the recent crop.  Plaintiff, by this point believing the marijuana grow operation was illegal, nonetheless asked for an addition $100,000.00 and in exchange the tenants would be allowed to remain through the end of April 2018.  The tenants declined.  Plaintiff then offered to sell the Property to tenants for $480,000.00 and after some discussion tenants verbally agreed to pay $450,000.00 and to close by March 5, 2018.  However, when the time came, tenants vanished.

The A-Z Realty Defendants will testify to the above and such testimony is inconsistent with engagement in any criminal conspiracy.

### 5. Affirmative Defense No. 5:  Failure to Mitigate

By the exercise of reasonable effort, Plaintiff could have mitigated the amount of damages, if any there were, but Plaintiff failed and refused, and continues to fail and refuse, to exercise a reasonable effort to mitigate damages and therefore Plaintiff is barred from seeking recovery of those damages.

#### a) Elements Required to Establish Affirmative Defense No. 5

The plaintiff has a duty to use reasonable efforts to mitigate damages.  To

mitigate means to avoid or reduce damages.

The defendant has the burden of proving by a preponderance of the evidence:

1.     that the plaintiff failed to use reasonable efforts to mitigate damages; and

2.     the amount by which damages would have been mitigated.

### b)     Evidence Relied on in Support of Affirmative Defense No. 5

Pursuant to the Property Management Agreement between Plaintiff and the A-Z Realty Defendants, Plaintiff was required to "carry and ay for (i) public and premises liability insurance in an amount of no less than $1,000,000; and (ii) property damage and worker's compensation insurance adequate to protect the interests of the Owner and Property Manager." Plaintiff admitted in her deposition that she failed to report the damage to her property to her insurance carrier. If Plaintiff had carried the type of insurance coverage required pursuant to the Property Management Agreement, the coverage would have been sufficient to repair the property and avoid the continuing accumulation of the monthly loss of rental income.

### 6.     Affirmative Defense No. 6:  Plaintiff Consented to the Acts and Omissions Alleged in the Complaint

### a)     Elements Required to Establish Affirmative Defense No. 6

To the extent that Plaintiff consented to the acts or omissions complained of, Plaintiff cannot recover for those same acts or omissions.

### b)     Evidence Relied on in Support of Affirmative Defense No. 6

The essence of Plaintiff's claims against A-Z Realty Defendants is that they were involved in the marijuana cultivation at the Property and distribution of same, which is a federal offense. Plaintiff has attempted to use the timeline of interaction

33

between Plaintiff and the A-Z Realty Defendants and as evidence of the A-Z Realty Defendants' involvement in the tenants' criminal enterprise. However, the timeline is more likely to show the A-Z Realty Defendants' diligence and lack of involvement. Prior to tenants moving into the Property, tenants paid (1) pro-rated February 2017 rent; (2) March 2017 rent; and (3) the security deposit. All contact up to that point had been with tenant's agent, Defendants Realty One Group and Lucky Luo, which is not unusual where tenants have an agent working on their behalf.

After move-in, Ms. Zheng of the A-Z Realty Defendants received a text from the person she believed was tenant, Wu, and he asked for information to switch over utilities into his name. The information was provided by text message. On or about March 30, 2017 the person Ms. Zheng believed was Wu called and asked for the address to hand-deliver April 2017's rent, and also asked Ms. Zheng for "other rental opportunities." April 2017's rent was paid. On April 30, 2017, the person claiming to be Wu hand-delivered May's rent. Up to this point the A-Z Realty Defendants had absolutely no reason to suspect anything was amiss and had a duty to allow tenants to quietly enjoy the Property. On May 9, 2017 one of the contractors the A-Z Realty Defendants use asked Ms. Zheng if she had 3000 square foot properties for rent. The contractor explained that "Chinese" clients like to lease these types of properties to grow marijuana. Ms. Zheng told the contractor she was not interested but began suspecting such activity with properties she was managing, including the subject Property. Prior to that she had not heard of such matters. Ms. Zheng immediately called Plaintiff and told her about her concerns. Ms. Zheng then called and texted Wu, who did not respond. On May 10, 2017 Ms. Zheng drove to the Property and posted a Notice of Entry. She saw that all windows and doors were fully blacked out and reported same to Plaintiff. "Wu" then called Ms. Zheng and admitted they were growing marijuana in the Property but that they had a "doctor's note to grow up to 200 plants each." "Wu" agreed to have Ms. Zheng inspect the

Property on May 11, 2017 and Ms. Zheng urged Plaintiff and her son to join the inspection.  Plaintiff and her son declined.  Ms. Zheng took photographs at time of inspection to document the condition of the Property.

Ms. Zheng then found information online about the rules and regulations of marijuana growing and sent this information to Plaintiff.  She also called the state and local authorities, who told her that a new law had passed in January 2018 allowing for growing marijuana and the Murrieta police department told her that they would not likely arrest the tenants if they had the proper paperwork and that this would be a civil matter.  Ms. Zheng also called an eviction attorney in an effort to obtain information regarding Plaintiff's rights.

Ms. Zheng reported all of this to Plaintiff. Plaintiff told her they were open to allowing tenants to stay in exchange for increased rent. At that time Plaintiff, her son and her husband were all communicating with the A-Z Realty Defendants about the situation.

On May 12, 2017, Ms. Zheng told Plaintiff and her family that they had three options: (1) Report the matter to authorities; (2) Evict tenant; or (3) Negotiate new rental terms. At that time, Ms. Zheng told Plaintiff that if she continued to rent to tenants then she, the A-Z Realty Defendants, would quit as property manager. Plaintiff opted for more rent after begging Ms. Zheng not to quit.

On May 13, 2018, Plaintiff told Ms. Zheng tenants could stay if they paid $20,000.00 more in deposit and increased the rent to $5,000.00 per month.  Ms. Zheng felt bad for Plaintiff because she and her husband had health issues and agreed to stay on as property manager.  The tenants paid $10,000.00, first half of the increased deposit and began paying $5,000.00 per month in rent.  These monthly payments were tendered directly to Plaintiff.  In October 2018 Ms. Zheng contacted tenants for the second $10,000.00 installment of increased security deposit.  Tenants asked for a second year of lease.  After numerous phone calls, Plaintiff verbally agreed to sign a year lease extension with tenants if tenants paid the second

installment of $10,000.00 toward the $20,000.00 deposit.  Tenants made such payment in October 2017.  In January 2018, Plaintiff and her son advised Ms. Zheng that they decided not to sign the year extension because they found a clipping stating the federal government is cracking down on marijuana and they were concerned. However, Plaintiff instructed Ms. Zheng to allow tenants to stay until February 2018 to collect all rent due.  At that time, Ms. Zheng put tenants on notice that they must vacate by end of existing lease term.

The tenants then called and texted Ms. Zheng and became upset that Plaintiff was going back on her word to allow them to stay another year.  The tenants asked for an extension through April 2018 in order to harvest the recent crop.  Plaintiff, by this point believing the marijuana grow operation was illegal, nonetheless asked for an addition $100,000.00 and in exchange the tenants would be allowed to remain through the end of April 2018.  The tenants declined.  Plaintiff then offered to sell the Property to tenants for $480,000.00 and after some discussion tenants verbally agreed to pay $450,000.00 and to close by March 5, 2018.  However, when the time came, tenants vanished.

The A-Z Realty Defendants will testify to the above and such testimony is inconsistent with engagement in any criminal conspiracy.

### 7.    Affirmative Defense No. 7

#### a)    Elements Required to Establish Affirmative Defense No. 7

Defendants were agents who had no knowledge of, and did not participate in any fraudulent act of their principals or any enterprise; as such, Defendants are not vicariously liable for the torts, if any, of said principals or any enterprise that they may have operated or managed.  Defendants had no knowledge or awareness of the essential nature or scope of any fraudulent enterprise or conspiracy; neither did Defendants have any intention to facilitate such an enterprise or conspiracy.

Defendants did not knowingly agree to facilitate any scheme that included operation or management of any fraudulent enterprise or conspiracy.

### b) Key Evidence in Support of Affirmative Defense No. 7

Evidence in the form of deposition testimony and emails establishes that the A-Z Realty Defendants provided Plaintiff with the tenant applications drafted by and supplied by the Realty One Defendants. Evidence in the form of deposition testimony establishes that the Realty One Defendants conducted the background check and financial verification on the prospective tenants prior to providing the applications to the A-Z Realty Defendants. The A-Z Realty Defendants' expert will testify that the Realty One Defendants fell below their standard of care by providing fictitious applications with poorly verified background checks and financial information as to the perspective tenants.

It was based on the information supplied by the Realty One Defendants that Plaintiff elected to rent the Property.

### 8. Affirmative Defense No. 8

#### a) Elements Required to Establish Affirmative Defense No. 8

The Complaint and each purported claim alleged therein are barred, in whole or in part, by misrepresentations, concealment, and omissions made by Plaintiff and/or third parties to Defendants regarding the alleged transactions, to the detriment of Defendants. Defendants reasonably relied on the foregoing misrepresentations, concealment, and omissions in conforming Defendants' conduct to all applicable standards and obligations.

#### b) Key Evidence in Support of Affirmative Defense No. 8

Evidence in the form of deposition testimony and emails establishes that the A-Z Realty Defendants provided Plaintiff with the tenant applications drafted by and supplied by the Realty One Defendants. Evidence in the form of deposition testimony establishes that the Realty One Defendants conducted the background

check and financial verification on the prospective tenants prior to providing the applications to the A-Z Realty Defendants.  The A-Z Realty Defendants' expert will testify that the Realty One Defendants fell below their standard of care by providing fictitious applications with poorly verified background checks and financial information as to the perspective tenants.

It was based on the information supplied by the Realty One Defendants that Plaintiff elected to rent the Property.

### 9.   Affirmative Defense No. 9 - Estoppel

#### a)   Elements Required to Establish Affirmative Defense No. 9

Plaintiff is estopped by her own actions and conduct from asserting any claim against the A-Z Realty Defendants .  The justice system will not allow a person to bring a claim for damages which arose based upon her own criminal acts.  The justice system will not enable the wrongdoer to profit from her own wrongs.  If the A-Z Realty Defendants prove that Plaintiff Shuang Ying (Nancy) Zhang attempted to profit from her wrongdoing, you should find that Plaintiff, Shuang Ying (Nancy) Zhang is not entitled to recover damages in this action.  Susag v. City of Lake Forest, 94 Cal. App. 4th 1401, 1412 (2002); Bigelow v. RKO Radio Pictures, Inc., 327 U.S. 251, 264 (1946); Dart Industries, Inc. v. Liberty Mut. Ins. Co., 484 F.2d 1295, 1298 (9th Cir. 1973).

#### b)   Key Evidence in Support of Affirmative Defense No. 9

The essence of Plaintiff's claims against A-Z Realty Defendants is that they were involved in the marijuana cultivation at the Property and distribution of same, which is a federal offense. Plaintiff has attempted to use the timeline of interaction between Plaintiff and the A-Z Realty Defendants and as evidence of the A-Z Realty Defendants' involvement in the tenants' criminal enterprise. However, the timeline is more likely to show the A-Z Realty Defendants' diligence and lack of involvement. Prior to tenants moving into the Property, tenants paid (1) pro-rated

February 2017 rent; (2) March 2017 rent; and (3) the security deposit.  All contact up to that point had been with tenant's agent, Defendants Realty One Group and Lucky Luo, which is not unusual where tenants have an agent working on their behalf.

After move-in, Ms. Zheng of the A-Z Realty Defendants received a text from the person she believed was tenant, Wu, and he asked for information to switch over utilities into his name.  The information was provided by text message.  On or about March 30, 2017 the person Ms. Zheng believed was Wu called and asked for the address to hand-deliver April 2017's rent, and also asked Ms. Zheng for "other rental opportunities."  April 2017's rent was paid.  On April 30, 2017, the person claiming to be Wu hand-delivered May's rent.  Up to this point the A-Z Realty Defendants had absolutely no reason to suspect anything was amiss and had a duty to allow tenants to quietly enjoy the Property.  On May 9, 2017 one of the contractors the A-Z Realty Defendants use asked Ms. Zheng if she had 3000 square foot properties for rent.  The contractor explained that "Chinese" clients like to lease these types of properties to grow marijuana.  Ms. Zheng told the contractor she was not interested but began suspecting such activity with properties she was managing, including the subject Property.  Prior to that she had not heard of such matters.  Ms. Zheng immediately called Plaintiff and told her about her concerns.  Ms. Zheng then called and texted Wu, who did not respond.  On May 10, 2017 Ms. Zheng drove to the Property and posted a Notice of Entry.  She saw that all windows and doors were fully blacked out and reported same to Plaintiff.  "Wu" then called Ms. Zheng and admitted they were growing marijuana in the Property but that they had a "doctor's note to grow up to 200 plants each."  "Wu" agreed to have Ms. Zheng inspect the Property on May 11, 2017 and Ms. Zheng urged Plaintiff and her son to join the inspection.  Plaintiff and her son declined.  Ms. Zheng took photographs at time of inspection to document the condition of the Property.

Ms. Zheng then found information online about the rules and regulations of marijuana growing and sent this information to Plaintiff.  She also called the state and local authorities, who told her that a new law had passed in January 2018 allowing for growing marijuana and the Murrieta police department told her that they would not likely arrest the tenants if they had the proper paperwork and that this would be a civil matter.  Ms. Zheng also called an eviction attorney in an effort to obtain information regarding Plaintiff's rights.

Ms. Zheng reported all of this to Plaintiff. Plaintiff told her they were open to allowing tenants to stay in exchange for increased rent. At that time Plaintiff, her son and her husband were all communicating with the A-Z Realty Defendants about the situation.

On May 12, 2017, Ms. Zheng told Plaintiff and her family that they had three options: (1) Report the matter to authorities; (2) Evict tenant; or (3) Negotiate new rental terms. At that time, Ms. Zheng told Plaintiff that if she continued to rent to tenants then she, the A-Z Realty Defendants, would quit as property manager. Plaintiff opted for more rent after begging Ms. Zheng not to quit.

On May 13, 2018, Plaintiff told Ms. Zheng tenants could stay if they paid $20,000.00 more in deposit and increased the rent to $5,000.00 per month.  Ms. Zheng felt bad for Plaintiff because she and her husband had health issues and agreed to stay on as property manager.  The tenants paid $10,000.00, first half of the increased deposit and began paying $5,000.00 per month in rent.  These monthly payments were tendered directly to Plaintiff.  In October 2018 Ms. Zheng contacted tenants for the second $10,000.00 installment of increased security deposit.  Tenants asked for a second year of lease.  After numerous phone calls, Plaintiff verbally agreed to sign a year lease extension with tenants if tenants paid the second installment of $10,000.00 toward the $20,000.00 deposit.  Tenants made such payment in October 2017.  In January 2018, Plaintiff and her son advised Ms. Zheng that they decided not to sign the year extension because they found a clipping stating

the federal government is cracking down on marijuana and they were concerned. However, Plaintiff instructed Ms. Zheng to allow tenants to stay until February 2018 to collect all rent due. At that time, Ms. Zheng put tenants on notice that they must vacate by end of existing lease term.

The tenants then called and texted Ms. Zheng and became upset that Plaintiff was going back on her word to allow them to stay another year. The tenants asked for an extension through April 2018 in order to harvest the recent crop. Plaintiff, by this point believing the marijuana grow operation was illegal, nonetheless asked for an addition $100,000.00 and in exchange the tenants would be allowed to remain through the end of April 2018. The tenants declined. Plaintiff then offered to sell the Property to tenants for $480,000.00 and after some discussion tenants verbally agreed to pay $450,000.00 and to close by March 5, 2018. However, when the time came, tenants vanished.

The A-Z Realty Defendants will testify to the above and such testimony is inconsistent with engagement in any criminal conspiracy.

> **10. Affirmative Defense No. 10 – Defendants had no knowledge or awareness of the essential nature or scope of any fraudulent enterprise or conspiracy; neither did Defendants have any intention to facilitate such an enterprise or conspiracy.**
>
> > **a) Elements Required to Establish Affirmative Defense No. 10**

Racketeer Influenced and Corrupt Organization Act (Rico) – 18 U.S.C. § 1962(C)– Conduct The Affairs Of The Enterprise Jury Instruction:

Plaintiff, Shuang Ying (Nancy) Zhang asserts a claim against Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty One Group, Inc.; Jihui (Lucky) Luo; Shi Dan Chen and Ming-Wing Lam for allegedly

violating the Racketeer Influenced and Corrupt Organizations Act, commonly known as RICO. Plaintiff, Shuang Ying (Nancy) Zhang specifically claims that Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty One Group, Inc.; Jihui (Lucky) Luo; Shi Dan Chen and Ming-Wing Lam violated § 1962(c) of RICO.

To succeed on this claim, Plaintiff, Shuang Ying (Nancy) Zhang must prove each of the following five facts by a preponderance of the evidence:

First, you must find the existence of an enterprise.

Second, you must find that the enterprise engaged in, or had some effect on, interstate or foreign commerce.

Third, you must find that Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty One Group, Inc.; Jihui (Lucky) Luo; Shi Dan Chen and Ming-Wing Lam were employed by or associated with the alleged enterprise.

Fourth, you must find that Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty One Group, Inc.; Jihui (Lucky) Luo; Shi Dan Chen and Ming-Wing Lam participated, either directly or indirectly, in the conduct of the affairs of the enterprise.

And fifth, you must find that Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty One Group, Inc.; Jihui (Lucky) Luo; Shi Dan Chen and Ming-Wing Lam participated through a pattern of racketeering activity.

**Conduct:** The conduct element of § 1962(c) requires that the defendant have some part in directing the affairs of the enterprise. Liability is not limited to those with primary responsibility for the enterprise's affairs, nor is a formal position within the enterprise required. However, the defendant is not liable under § 1962(c) unless the defendant has participated in the operation or management of the enterprise itself. In determining whether the conduct element has been satisfied,

relevant questions include whether the defendant "occupies a position in the chain of command," "knowingly implements [the enterprise's] decisions," or is "indispensable to achieving the enterprise's goal."

**Enterprise:** An "enterprise includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." RICO does not require that either the racketeering enterprise or the predicate acts of racketeering be motivated by an economic purpose.

For purposes of § 1962(c), a single individual or entity cannot be both the RICO enterprise and an individual defendant. However, "the inability of a corporation to operate except through its officers is not an impediment to § 1962(c) suits." An organizational defendant can be a member of a larger associated-in-fact enterprise.

An associated-in-fact enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct." Its existence is proven through evidence of an ongoing organization, formal or informal, and evidence that the various associates function as a continuing unit. No particular organizational structure, separate or otherwise, is necessary for an associated-in-fact enterprise. Defendants in RICO actions must have had "some knowledge of the nature of the enterprise . . . to avoid an unjust association of the defendant[s] with the crimes of others," but the requirement of a common purpose may be met so long as the defendants were "each aware of the essential nature and scope of [the] enterprise and intended to participate in it."

A RICO enterprise is not defeated even when some of the enterprise's participants lack detailed knowledge of all of the other participants or their activities. Instead, "it is sufficient that the defendant know the general nature of the enterprise and know that the enterprise extends beyond his individual role." In particular cases, "the evidence used to prove the pattern of racketeering activity and

the evidence establishing an enterprise" may overlap. However, "enterprise" and "conduct" are two separate and necessary elements of a civil RICO claim.

**Pattern:** A pattern is defined as "at least two acts of racketeering activity" within ten years of each other. Proving two predicate acts is a necessary condition for finding a violation, but may not be sufficient. To establish a "pattern of racketeering activity," the predicate acts must be both "related" and "continuous."

Related conduct "embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." Relatedness of the alleged or proven predicate acts is rarely an issue. However, merely alleging that the predicate acts share the same participants is insufficient to establish that they are related.

The continuity requirement reflects Congress's concern in RICO with long-term criminal conduct.

Plaintiffs must prove either "open-ended" or "closed-ended" continuity—that is, a plaintiff must either prove a series of related predicate acts committed over a substantial period of time (known as closed-ended continuity), or show past conduct that by its nature projects into the future with a threat of repetition (known as open-ended continuity).

There is no bright line rule for what period of time the pattern of activity must extend to establish closed-ended continuity, though activity spanning only several months is unlikely to satisfy the requirement. Open-ended continuity is shown through "predicate acts that specifically threaten repetition or that become a regular way of doing business."

**Racketeering Activity:** To constitute racketeering activity, the relevant conduct must consist of at least one of the indictable predicate acts listed in 18 U.S.C. § 1961. Predicate acts must be proved by a preponderance of the evidence.

a)      **Key Evidence in Support of Affirmative Defense No. 10**

1       The essence of Plaintiff's RICO claims against A-Z Realty Defendants is that

2  they were involved in the marijuana cultivation at the Property and distribution of

3  same, which is a federal offense. Plaintiff has attempted to use the timeline of

4  interaction between Plaintiff and the A-Z Realty Defendants and as evidence of the

5  A-Z Realty Defendants' involvement in the tenants' criminal enterprise. However,

6  the timeline is more likely to show the A-Z Realty Defendants' diligence and lack of

7  involvement. Prior to tenants moving into the Property, tenants paid (1) pro-rated

8  February 2017 rent; (2) March 2017 rent; and (3) the security deposit.  All contact

9  up to that point had been with tenant's agent, Defendants Realty One Group and

10 Lucky Luo, which is not unusual where tenants have an agent working on their

11 behalf.

12      After move-in, Ms. Zheng of the A-Z Realty Defendants received a text from

13 the person she believed was tenant, Wu, and he asked for information to switch over

14 utilities into his name.  The information was provided by text message.  On or about

15 March 30, 2017 the person Ms. Zheng believed was Wu called and asked for the

16 address to hand-deliver April 2017's rent, and also asked Ms. Zheng for "other

17 rental opportunities."  April 2017's rent was paid.  On April 30, 2017, the person

18 claiming to be Wu hand-delivered May's rent.  Up to this point the A-Z Realty

19 Defendants had absolutely no reason to suspect anything was amiss and had a duty

20 to allow tenants to quietly enjoy the Property.  On May 9, 2017 one of the

21 contractors the A-Z Realty Defendants use asked Ms. Zheng if she had 3000 square

22 foot properties for rent.  The contractor explained that "Chinese" clients like to lease

23 these types of properties to grow marijuana.  Ms. Zheng told the contractor she was

24 not interested but began suspecting such activity with properties she was managing,

25 including the subject Property.  Prior to that she had not heard of such matters.  Ms.

26 Zheng immediately called Plaintiff and told her about her concerns.  Ms. Zheng then

27 called and texted Wu, who did not respond.  On May 10, 2017 Ms. Zheng drove to

28 the Property and posted a Notice of Entry.  She saw that all windows and doors were

fully blacked out and reported same to Plaintiff.  "Wu" then called Ms. Zheng and admitted they were growing marijuana in the Property but that they had a "doctor's note to grow up to 200 plants each."  "Wu" agreed to have Ms. Zheng inspect the Property on May 11, 2017 and Ms. Zheng urged Plaintiff and her son to join the inspection.  Plaintiff and her son declined.  Ms. Zheng took photographs at time of inspection to document the condition of the Property.

Ms. Zheng then found information online about the rules and regulations of marijuana growing and sent this information to Plaintiff.  She also called the state and local authorities, who told her that a new law had passed in January 2018 allowing for growing marijuana and the Murrieta police department told her that they would not likely arrest the tenants if they had the proper paperwork and that this would be a civil matter.  Ms. Zheng also called an eviction attorney in an effort to obtain information regarding Plaintiff's rights.

Ms. Zheng reported all of this to Plaintiff. Plaintiff told her they were open to allowing tenants to stay in exchange for increased rent. At that time Plaintiff, her son and her husband were all communicating with the A-Z Realty Defendants about the situation.

On May 12, 2017, Ms. Zheng told Plaintiff and her family that they had three options: (1) Report the matter to authorities; (2) Evict tenant; or (3) Negotiate new rental terms. At that time, Ms. Zheng told Plaintiff that if she continued to rent to tenants then she, the A-Z Realty Defendants, would quit as property manager. Plaintiff opted for more rent after begging Ms. Zheng not to quit.

On May 13, 2018, Plaintiff told Ms. Zheng tenants could stay if they paid $20,000.00 more in deposit and increased the rent to $5,000.00 per month.  Ms. Zheng felt bad for Plaintiff because she and her husband had health issues and agreed to stay on as property manager.  The tenants paid $10,000.00, first half of the increased deposit and began paying $5,000.00 per month in rent.  These monthly payments were tendered directly to Plaintiff.  In October 2018 Ms. Zheng contacted

tenants for the second $10,000.00 installment of increased security deposit.  Tenants asked for a second year of lease.  After numerous phone calls, Plaintiff verbally agreed to sign a year lease extension with tenants if tenants paid the second installment of $10,000.00 toward the $20,000.00 deposit.  Tenants made such payment in October 2017.  In January 2018, Plaintiff and her son advised Ms. Zheng that they decided not to sign the year extension because they found a clipping stating the federal government is cracking down on marijuana and they were concerned.  However, Plaintiff instructed Ms. Zheng to allow tenants to stay until February 2018 to collect all rent due.  At that time, Ms. Zheng put tenants on notice that they must vacate by end of existing lease term.

The tenants then called and texted Ms. Zheng and became upset that Plaintiff was going back on her word to allow them to stay another year.  The tenants asked for an extension through April 2018 in order to harvest the recent crop.  Plaintiff, by this point believing the marijuana grow operation was illegal, nonetheless asked for an addition $100,000.00 and in exchange the tenants would be allowed to remain through the end of April 2018.  The tenants declined.  Plaintiff then offered to sell the Property to tenants for $480,000.00 and after some discussion tenants verbally agreed to pay $450,000.00 and to close by March 5, 2018.  However, when the time came, tenants vanished.

The A-Z Realty Defendants will testify to the above and such testimony is inconsistent with engagement in any criminal conspiracy.

> **11.**   **Affirmative Defense No. 11 – Defendants did not knowingly agree to facilitate any scheme that included operation or management of any fraudulent enterprise or conspiracy.**
>
> > **a)**   **Elements Required to Establish Affirmative Defense No. 11**

Racketeer Influenced and Corrupt Organization Act (Rico) – 18 U.S.C. § 1962(C)– Conduct The Affairs Of The Enterprise Jury Instruction:

Plaintiff, Shuang Ying (Nancy) Zhang asserts a claim against Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty One Group, Inc.; Jihui (Lucky) Luo; Shi Dan Chen and Ming-Wing Lam for allegedly violating the Racketeer Influenced and Corrupt Organizations Act, commonly known as RICO. Plaintiff, Shuang Ying (Nancy) Zhang specifically claims that Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty One Group, Inc.; Jihui (Lucky) Luo; Shi Dan Chen and Ming-Wing Lam violated § 1962(c) of RICO.

To succeed on this claim, Plaintiff, Shuang Ying (Nancy) Zhang must prove each of the following five facts by a preponderance of the evidence:

First, you must find the existence of an enterprise.

Second, you must find that the enterprise engaged in, or had some effect on, interstate or foreign commerce.

Third, you must find that Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty One Group, Inc.; Jihui (Lucky) Luo; Shi Dan Chen and Ming-Wing Lam were employed by or associated with the alleged enterprise.

Fourth, you must find that Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty One Group, Inc.; Jihui (Lucky) Luo; Shi Dan Chen and Ming-Wing Lam participated, either directly or indirectly, in the conduct of the affairs of the enterprise.

And fifth, you must find that Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty One Group, Inc.; Jihui (Lucky) Luo; Shi Dan Chen and Ming-Wing Lam participated through a pattern of racketeering activity.

**Conduct:** The conduct element of § 1962(c) requires that the defendant have some part in directing the affairs of the enterprise. Liability is not limited to those with primary responsibility for the enterprise's affairs, nor is a formal position

1   within the enterprise required. However, the defendant is not liable under § 1962(c)

2   unless the defendant has participated in the operation or management of the

3   enterprise itself. In determining whether the conduct element has been satisfied,

4   relevant questions include whether the defendant "occupies a position in the chain of

5   command," "knowingly implements [the enterprise's] decisions," or is

6   "indispensable to achieving the enterprise's goal."

7        **Enterprise:** An "enterprise includes any individual, partnership, corporation,

8   association, or other legal entity, and any union or group of individuals associated in

9   fact although not a legal entity." RICO does not require that either the racketeering

10  enterprise or the predicate acts of racketeering be motivated by an economic

11  purpose.

12       For purposes of § 1962(c), a single individual or entity cannot be both the

13  RICO enterprise and an individual defendant. However, "the inability of a

14  corporation to operate except through its officers is not an impediment to § 1962(c)

15  suits." An organizational defendant can be a member of a larger associated-in-fact

16  enterprise.

17       An associated-in-fact enterprise is "a group of persons associated together for

18  a common purpose of engaging in a course of conduct."  Its existence is proven

19  through evidence of an ongoing organization, formal or informal, and evidence that

20  the various associates function as a continuing unit. No particular organizational

21  structure, separate or otherwise, is necessary for an associated-in-fact enterprise.

22  Defendants in RICO actions must have had "some knowledge of the nature of the

23  enterprise . . . to avoid an unjust association of the defendant[s] with the crimes of

24  others," but the requirement of a common purpose may be met so long as the

25  defendants were "each aware of the essential nature and scope of [the] enterprise

26  and intended to participate in it."

27       A RICO enterprise is not defeated even when some of the enterprise's

28  participants lack detailed knowledge of all of the other participants or their

activities. Instead, "it is sufficient that the defendant know the general nature of the enterprise and know that the enterprise extends beyond his individual role." In particular cases, "the evidence used to prove the pattern of racketeering activity and the evidence establishing an enterprise" may overlap. However, "enterprise" and "conduct" are two separate and necessary elements of a civil RICO claim.

**Pattern:** A pattern is defined as "at least two acts of racketeering activity" within ten years of each other. Proving two predicate acts is a necessary condition for finding a violation, but may not be sufficient. To establish a "pattern of racketeering activity," the predicate acts must be both "related" and "continuous."

Related conduct "embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." Relatedness of the alleged or proven predicate acts is rarely an issue. However, merely alleging that the predicate acts share the same participants is insufficient to establish that they are related.

The continuity requirement reflects Congress's concern in RICO with long-term criminal conduct.

Plaintiffs must prove either "open-ended" or "closed-ended" continuity—that is, a plaintiff must either prove a series of related predicate acts committed over a substantial period of time (known as closed-ended continuity), or show past conduct that by its nature projects into the future with a threat of repetition (known as open-ended continuity).

There is no bright line rule for what period of time the pattern of activity must extend to establish closed-ended continuity, though activity spanning only several months is unlikely to satisfy the requirement. Open-ended continuity is shown through "predicate acts that specifically threaten repetition or that become a regular way of doing business."

FINAL PRETRIAL CONFERENCE ORDER

**Racketeering Activity:** To constitute racketeering activity, the relevant conduct must consist of at least one of the indictable predicate acts listed in 18 U.S.C. § 1961. Predicate acts must be proved by a preponderance of the evidence.

a)   **Elements Required to Establish Affirmative Defense No. 11**

The essence of Plaintiff's RICO claims against A-Z Realty Defendants is that they were involved in the marijuana cultivation at the Property and distribution of same, which is a federal offense. Plaintiff has attempted to use the timeline of interaction between Plaintiff and the A-Z Realty Defendants and as evidence of the A-Z Realty Defendants' involvement in the tenants' criminal enterprise. However, the timeline is more likely to show the A-Z Realty Defendants' diligence and lack of involvement. Prior to tenants moving into the Property, tenants paid (1) pro-rated February 2017 rent; (2) March 2017 rent; and (3) the security deposit. All contact up to that point had been with tenant's agent, Defendants Realty One Group and Lucky Luo, which is not unusual where tenants have an agent working on their behalf.

After move-in, Ms. Zheng of the A-Z Realty Defendants received a text from the person she believed was tenant, Wu, and he asked for information to switch over utilities into his name. The information was provided by text message. On or about March 30, 2017 the person Ms. Zheng believed was Wu called and asked for the address to hand-deliver April 2017's rent, and also asked Ms. Zheng for "other rental opportunities." April 2017's rent was paid. On April 30, 2017, the person claiming to be Wu hand-delivered May's rent. Up to this point the A-Z Realty Defendants had absolutely no reason to suspect anything was amiss and had a duty to allow tenants to quietly enjoy the Property. On May 9, 2017 one of the contractors the A-Z Realty Defendants use asked Ms. Zheng if she had 3000 square foot properties for rent. The contractor explained that "Chinese" clients like to lease these types of properties to grow marijuana. Ms. Zheng told the contractor she was

not interested but began suspecting such activity with properties she was managing, including the subject Property.  Prior to that she had not heard of such matters.  Ms. Zheng immediately called Plaintiff and told her about her concerns.  Ms. Zheng then called and texted Wu, who did not respond.  On May 10, 2017 Ms. Zheng drove to the Property and posted a Notice of Entry.  She saw that all windows and doors were fully blacked out and reported same to Plaintiff.  "Wu" then called Ms. Zheng and admitted they were growing marijuana in the Property but that they had a "doctor's note to grow up to 200 plants each."  "Wu" agreed to have Ms. Zheng inspect the Property on May 11, 2017 and Ms. Zheng urged Plaintiff and her son to join the inspection.  Plaintiff and her son declined.  Ms. Zheng took photographs at time of inspection to document the condition of the Property.

Ms. Zheng then found information online about the rules and regulations of marijuana growing and sent this information to Plaintiff.  She also called the state and local authorities, who told her that a new law had passed in January 2018 allowing for growing marijuana and the Murrieta police department told her that they would not likely arrest the tenants if they had the proper paperwork and that this would be a civil matter.  Ms. Zheng also called an eviction attorney in an effort to obtain information regarding Plaintiff's rights.

Ms. Zheng reported all of this to Plaintiff. Plaintiff told her they were open to allowing tenants to stay in exchange for increased rent. At that time Plaintiff, her son and her husband were all communicating with the A-Z Realty Defendants about the situation.

On May 12, 2017, Ms. Zheng told Plaintiff and her family that they had three options: (1) Report the matter to authorities; (2) Evict tenant; or (3) Negotiate new rental terms. At that time, Ms. Zheng told Plaintiff that if she continued to rent to tenants then she, the A-Z Realty Defendants, would quit as property manager. Plaintiff opted for more rent after begging Ms. Zheng not to quit.

On May 13, 2018, Plaintiff told Ms. Zheng tenants could stay if they paid $20,000.00 more in deposit and increased the rent to $5,000.00 per month.  Ms. Zheng felt bad for Plaintiff because she and her husband had health issues and agreed to stay on as property manager.  The tenants paid $10,000.00, first half of the increased deposit and began paying $5,000.00 per month in rent.  These monthly payments were tendered directly to Plaintiff.  In October 2018 Ms. Zheng contacted tenants for the second $10,000.00 installment of increased security deposit.  Tenants asked for a second year of lease.  After numerous phone calls, Plaintiff verbally agreed to sign a year lease extension with tenants if tenants paid the second installment of $10,000.00 toward the $20,000.00 deposit.  Tenants made such payment in October 2017.  In January 2018, Plaintiff and her son advised Ms. Zheng that they decided not to sign the year extension because they found a clipping stating the federal government is cracking down on marijuana and they were concerned.  However, Plaintiff instructed Ms. Zheng to allow tenants to stay until February 2018 to collect all rent due.  At that time, Ms. Zheng put tenants on notice that they must vacate by end of existing lease term.

The tenants then called and texted Ms. Zheng and became upset that Plaintiff was going back on her word to allow them to stay another year.  The tenants asked for an extension through April 2018 in order to harvest the recent crop.  Plaintiff, by this point believing the marijuana grow operation was illegal, nonetheless asked for an addition $100,000.00 and in exchange the tenants would be allowed to remain through the end of April 2018.  The tenants declined.  Plaintiff then offered to sell the Property to tenants for $480,000.00 and after some discussion tenants verbally agreed to pay $450,000.00 and to close by March 5, 2018.  However, when the time came, tenants vanished.

The A-Z Realty Defendants will testify to the above and such testimony is inconsistent with engagement in any criminal conspiracy.

**Defendants Realty One Group and Jihui (Lucky) Luo:**

(a)     Defendants Realty One Group and Jihui (Lucky) Luo plan to pursue the following counterclaims and affirmative defenses:

## Counterclaims:

Cross-Claimants Realty One Group and Jihui (Lucky) Luo asserted cross-claims against Cross-Defendants A-Z Realty & Investment Corp., Dongyan (Annie) Zheng, Jennifer Whelan, Shi Dan Chen and Ming-Wing Lam.

**1.     Counter Claim No. 1:  Equitable Indemnity and Contribution**

**a)     Elements Required to Establish Counter Claim 1**

The Realty One Defendants claim that if they are required to pay a court judgment in favor of Plaintiff and attorney fees and that Cross-Defendants must reimburse the Realty One Defendants based on the Cross-Defendants' share of responsibility. In order for the Realty One Defendants to recover from the Cross-Defendants, the Realty One Defendants must prove both of the following:

1.     That the Cross-Defendants were negligent or committed the wrongdoing claimed by Plaintiff; and

2.     That the Cross-Defendants' negligence and wrongdoing contributed as a substantial factor in causing Plaintiff's harm.

California CACI Jury Instructions (2021) 3800

**b)     Key Evidence Relied on in Support of Counter Claim 1**

Evidence in the form of deposition testimony and emails establish that the only actions undertaken by the Realty One Defendants were to pass along information provided by the perspective tenants to the A-Z Realty Defendants. There was nothing requiring the Realty One Defendants to perform any type of background check or financial verification.  In fact, Realty One Defendants' expert will testify that it was the responsibility of A-Z Realty Defendants to verify the background and financial information as to the perspective tenants or to inform

Plaintiff that this verification was not performed. It was based on this information that Plaintiff elected to rent the Property.  Realty One Defendants did not have any involvement in any activity following the signing of the rental agreement

**Affirmative Defenses**

      **1.      Affirmative Defense No. 1:  Comparative Fault of Plaintiff**

The Realty One Defendants allege that any injury or damage suffered by Plaintiff was caused solely by reason of Plaintiff's own wrongful acts and conduct and not by reason of any unlawful act or omission of the Realty One Defendants. Any injury to Plaintiff was caused by her own negligence and failure to act with reasonable care, which carelessness, negligence and omissions were the proximate cause of the damage, if any, to Plaintiff.

      **a)      Elements Required to Establish Affirmative Defense No. 1**

To succeed on this claim, the Realty One Defendants must prove both of the following:

    1.      That Plaintiff was negligent or failed to act with reasonable care; and

    2.      That Plaintiff's negligence or failure to act was a substantial factor in causing her harm.

If the Realty One Defendants prove the above, Plaintiff's damages are reduced by a determination of the percentage of Plaintiff's responsibility.

      **b)      Evidence Relied on in Support of Affirmative Defense No. 1**

Plaintiff and her husband have been wealthy, sophisticated real estate investors for many years. They purchased the Property in October 2009 for $341,000. Plaintiff never resided in the Property but, rather, intended to (and did) use it as a source of rental income.

The relevant occurrences began when Plaintiff put the Property on the rental market with her self-selected agent – the A-Z Investment Defendants.  The A-Z Realty Defendants thereafter advertised the Property to prospective tenants.

Persons who identified themselves as "Miaoyun Wu" and "Xin Li" (the "Paper Tenants"), thereafter approached the Realty One Defendants for help in leasing the Property through "WeChat", a Chinese language web platform used by billions worldwide for commerce (include real estate rentals). Realty One's agent, Ms. Lucky Luo, requested the Paper Tenants to provide standard identification and other identifying information in support of their application to lease the Property. Nothing seemed out of the ordinary to Ms. Luo. And nothing about the Paper Tenants or their identification papers seemed odd or unusual.

The Realty One Defendants thereafter passed on the Paper Tenants' signed rental application to Plaintiff's agents (the A-Z Realty Defendants). Consistent with their duties to Plaintiff, A-Z Defendants should have reviewed the Paper Tenants' information and performed a background check on them. According to the A-Z Defendants, when nothing suspicious turned up, the A-Z Realty Defendants presented the Paper Tenants to Plaintiff and recommended that Plaintiff enter a lease agreement with them. Plaintiff agreed and the Property was leased to the Paper Tenants. Ms. Luo received a $300 fee for her work on the rental.

Approximately two months after the Paper Tenants supposedly moved into the Property, the A-Z Realty Defendants contacted Plaintiff and informed her that "Chinese syndicates" were looking to rent large houses in which to grow marijuana. Plaintiff was also informed that these syndicates were willing to pay almost twice the market rate than was currently being paid to rent the Property.

According to Plaintiff, a few days later, this announcement started to make sense when the A-Z Realty Defendants advised her that the rental Property in issue was being used to cultivate marijuana. Specifically, the A-Z Realty Defendants stated the Property had newly constructed walls, exposed electrical wiring and an

irrigation system for the interior of the home. The A-Z Realty Defendants further advised that the Property's interior now featured approximately 150 marijuana plants growing in "large tubs". Moreover, the Paper Tenants were using an alias to conceal their operation. They were actually persons named "Shi Dan Chen" and "Ming-Wing Lam" (the "Tenant Defendants").

By her own admission, Plaintiff declined to contact the police with any of this unsettling information. Instead, and according to Plaintiff, she listened attentively while the A-Z Defendants attempted to convince her that the activities occurring in the Property were all actually "legal". As Plaintiff tells it, the A-Z Realty Defendants advised her that she could profit handsomely from the marijuana trade.

To prove their point, the A-Z Realty Defendants informed Plaintiff that they had already negotiated a "rent increase" with the Tenant Defendants from $2,500 to $5,000 along with an agreed $20,000 enhanced payment for marijuana cultivation ($10,000 of which was to be paid in June 2017 and $10,000 more in October 2017). According to Plaintiff, the A-Z Realty Defendants also demanded that Plaintiff pay them a nearly doubled monthly management fee to account for their "good work".

Once again, Plaintiff declined to contact the authorities with any of this illegality and instead continued to receive her additional payments for the illegal activity being conducted on her property.

### 2.    Affirmative Defense No. 2 – Assumption of the Risk

Plaintiff, willingly, voluntarily and knowingly assumed each, every and all the risks and hazards involved in the activities referred to in Plaintiff's complaint. Plaintiff was aware of the dangers and risks with respect to the alleged actions, and did knowingly and voluntarily, and freely assume and expose herself to the known risks which assumption of the risk caused and/or contributed to the alleged damages sought by Plaintiff.

### a)   Elements Required to Establish Affirmative Defense No. 2

To succeed on this claim, the Realty One Defendants must prove both of the following:

1. That Plaintiff was aware of the risks involved with renting her house and continuing to rent her house to those engaged in the criminal activity of cultivating, harvesting and selling marijuana; and

2. That Plaintiff's risk was a substantial factor in causing her harm.

If the Realty One Defendants prove the above, Plaintiff's damages are reduced by a determination of the percentage of Plaintiff's responsibility.

### b)   Evidence Relied on in Support of Affirmative Defense No. 2

Plaintiff and her husband have been wealthy, sophisticated real estate investors for many years. They purchased the Property in October 2009 for $341,000. Plaintiff never resided in the Property but, rather, intended to (and did) use it as a source of rental income.

The relevant occurrences began when Plaintiff put the Property on the rental market with her self-selected agent – the A-Z Invesetment Defendants.  The A-Z Realty Defendants thereafter advertised the Property to prospective tenants.

Persons who identified themselves as "Miaoyun Wu" and "Xin Li" (the "Paper Tenants"), thereafter approached the Realty One Defendants for help in leasing the Property through "WeChat", a Chinese language web platform used by billions worldwide for commerce (include real estate rentals). Realty One's agent, Ms. Lucky Luo, requested the Paper Tenants to provide standard identification and other identifying information in support of their application to lease the Property. Nothing seemed out of the ordinary to Ms. Luo. And nothing about the Paper Tenants or their identification papers seemed odd or unusual.

The Realty One Defendants thereafter passed on the Paper Tenants' signed rental application to Plaintiff's agents (the A-Z Realty Defendants). Consistent with their duties to Plaintiff, A-Z Defendants should have reviewed the Paper Tenants' information and performed a background check on them. According to the A-Z Defendants, when nothing suspicious turned up, the A-Z Realty Defendants presented the Paper Tenants to Plaintiff and recommended that Plaintiff enter a lease agreement with them. Plaintiff agreed and the Property was leased to the Paper Tenants. Ms. Luo received a $300 fee for her work on the rental.

Approximately two months after the Paper Tenants supposedly moved into the Property, the A-Z Realty Defendants contacted Plaintiff and informed her that "Chinese syndicates" were looking to rent large houses in which to grow marijuana. Plaintiff was also informed that these syndicates were willing to pay almost twice the market rate than was currently being paid to rent the Property.

According to Plaintiff, a few days later, this announcement started to make sense when the A-Z Realty Defendants advised her that the rental Property in issue was being used to cultivate marijuana. Specifically, the A-Z Realty Defendants stated the Property had newly constructed walls, exposed electrical wiring and an irrigation system for the interior of the home. The A-Z Realty Defendants further advised that the Property's interior now featured approximately 150 marijuana plants growing in "large tubs". Moreover, the Paper Tenants were using an alias to conceal their operation. They were actually persons named "Shi Dan Chen" and "Ming-Wing Lam" (the "Tenant Defendants").

By her own admission, Plaintiff declined to contact the police with any of this unsettling information. Instead, and according to Plaintiff, she listened attentively while the A-Z Defendants attempted to convince her that the activities occurring in the Property were all actually "legal". As Plaintiff tells it, the A-Z Realty Defendants advised her that she could profit handsomely from the marijuana trade.

To prove their point, the A-Z Realty Defendants informed Plaintiff that they had already negotiated a "rent increase" with the Tenant Defendants from $2,500 to $5,000 along with an agreed $20,000 enhanced payment for marijuana cultivation ($10,000 of which was to be paid in June 2017 and $10,000 more in October 2017). According to Plaintiff, the A-Z Realty Defendants also demanded that Plaintiff pay them a nearly doubled monthly management fee to account for their "good work".

Once again, Plaintiff declined to contact the authorities with any of this illegality and instead continued to receive her additional payments for the illegal activity being conducted on her property.

### 3. Affirmative Defense No. 3: Superseding/Intervening Acts

The Realty One Defendants claim that damages allegedly sustained by Plaintiff, which such damages are generally and specifically denied to exist, were the result of the active and affirmative wrongful acts, fraud, and omissions to act of Plaintiff and independent third parties and/or entities whose active and affirmative wrongdoing resulted in superseding and intervening causes of Plaintiff's alleged damages which thereby relieves these responding Defendants from liability. Any damages awarded in this action should therefore be in direct proportion to the fault of these Defendants, if any, as provided by California Civil Code §§1431 to 1431.5.

#### a) Elements Required to Establish Affirmative Defense No. 3

The Realty One Defendants claim that if they are required to pay a court judgment in favor of Plaintiff and attorney fees and that Cross-Defendants must reimburse the Realty One Defendants based on the Cross-Defendants' share of responsibility. In order for the Realty One Defendants to recover from the Cross-Defendants, the Realty One Defendants must prove both of the following:

1. That the Cross-Defendants were negligent or committed the wrongdoing claimed by Plaintiff; and

2. That the Cross-Defendants' negligence and wrongdoing contributed as

a substantial factor in causing Plaintiff's harm.

California CACI Jury Instructions (2021) 3800

### b) Evidence Relied on in Support of Affirmative Defense No. 3

Plaintiff and her husband have been wealthy, sophisticated real estate investors for many years. They purchased the Property in October 2009 for $341,000. Plaintiff never resided in the Property but, rather, intended to (and did) use it as a source of rental income.

The relevant occurrences began when Plaintiff put the Property on the rental market with her self-selected agent – the A-Z Invesetment Defendants. The A-Z Realty Defendants thereafter advertised the Property to prospective tenants.

Persons who identified themselves as "Miaoyun Wu" and "Xin Li" (the "Paper Tenants"), thereafter approached the Realty One Defendants for help in leasing the Property through "WeChat", a Chinese language web platform used by billions worldwide for commerce (include real estate rentals). Realty One's agent, Ms. Lucky Luo, requested the Paper Tenants to provide standard identification and other identifying information in support of their application to lease the Property. Nothing seemed out of the ordinary to Ms. Luo. And nothing about the Paper Tenants or their identification papers seemed odd or unusual.

The Realty One Defendants thereafter passed on the Paper Tenants' signed rental application to Plaintiff's agents (the A-Z Realty Defendants). Consistent with their duties to Plaintiff, A-Z Defendants should have reviewed the Paper Tenants' information and performed a background check on them. According to the A-Z Defendants, when nothing suspicious turned up, the A-Z Realty Defendants presented the Paper Tenants to Plaintiff and recommended that Plaintiff enter a lease agreement with them. Plaintiff agreed and the Property was leased to the Paper Tenants. Ms. Luo received a $300 fee for her work on the rental.

Approximately two months after the Paper Tenants supposedly moved into the Property, the A-Z Realty Defendants contacted Plaintiff and informed her that "Chinese syndicates" were looking to rent large houses in which to grow marijuana. Plaintiff was also informed that these syndicates were willing to pay almost twice the market rate than was currently being paid to rent the Property.

According to Plaintiff, a few days later, this announcement started to make sense when the A-Z Realty Defendants advised her that the rental Property in issue was being used to cultivate marijuana. Specifically, the A-Z Realty Defendants stated the Property had newly constructed walls, exposed electrical wiring and an irrigation system for the interior of the home. The A-Z Realty Defendants further advised that the Property's interior now featured approximately 150 marijuana plants growing in "large tubs". Moreover, the Paper Tenants were using an alias to conceal their operation. They were actually persons named "Shi Dan Chen" and "Ming-Wing Lam" (the "Tenant Defendants").

By her own admission, Plaintiff declined to contact the police with any of this unsettling information. Instead, and according to Plaintiff, she listened attentively while the A-Z Defendants attempted to convince her that the activities occurring in the Property were all actually "legal". As Plaintiff tells it, the A-Z Realty Defendants advised her that she could profit handsomely from the marijuana trade.

To prove their point, the A-Z Realty Defendants informed Plaintiff that they had already negotiated a "rent increase" with the Tenant Defendants from $2,500 to $5,000 along with an agreed $20,000 enhanced payment for marijuana cultivation ($10,000 of which was to be paid in June 2017 and $10,000 more in October 2017). According to Plaintiff, the A-Z Realty Defendants also demanded that Plaintiff pay them a nearly doubled monthly management fee to account for their "good work".

Once again, Plaintiff declined to contact the authorities with any of this illegality and instead continued to receive her additional payments for the illegal activity being conducted on her property.

**4.      Affirmative Defense No. 4: Unclean Hands**

Plaintiff's suit is barred by the principle of unclean hands.  Defendants Realty One claim that Plaintiff is attempting to profit from her own criminal acts. Attempting to profit from illegal marijuana cultivation is a criminal act.

The justice system will not allow a person to bring a claim for damages which arose based upon her own criminal acts.  The justice system will not enable the wrongdoer to profit from her own wrongs.  If Defendants Realty One Group and Zihui (Lucky) Luo prove that Plaintiff Shuang Ying (Nancy) Zhang attempted to profit from her wrongdoing, you should find that Plaintiff, Shuang Ying (Nancy) Zhang is not entitled to recover damages in this action.  Susag v. City of Lake Forest, 94 Cal. App. 4th 1401, 1412 (2002); Bigelow v. RKO Radio Pictures, Inc., 327 U.S. 251, 264 (1946); Dart Industries, Inc. v. Liberty Mut. Ins. Co., 484 F.2d 1295, 1298 (9th Cir. 1973).

**a)      Elements Required to Establish Affirmative Defense No. 4.**

The Realty One Defendants have asserted the affirmative defense of 'unclean hands' as to Plaintiff.  To aid you in evaluating this affirmative defense, you may consider the following statement of law: 'No one can take advantage of his own wrong.' In other words, she who comes into court must come with clean hands. A plaintiff must act fairly in the matter for which she seeks monetary damages. Stated otherwise, relief is barred to a plaintiff who has violated principles of fairness, good conscience or good faith.

A finding of unclean hands is required when a plaintiff seeking damages has violated a duty of good faith or has acted unconscionably in connection with the same subject matter or relationship out of which the litigant claims a right to damages. If you find such a violation of good faith or conscience, then you should find that Plaintiff is not entitled to recover damages in this action.

The only conduct on which you may make a finding of unclean hands is that conduct directly related to the subject matter or relationship at issue in this litigation. Unclean hands does not mean that someone is a bad person in general or in some other respect; you may find unclean hands only if you find a direct connection between the alleged unclean hands conduct and the facts of this case.  California Civil Code § 3517; see, *Adler v. Fed. Republic of Nigeria, 209 F.3d 869, 877 (9th Cir. 2000); Seller Agency Council, Inc. v. Kennedy Ctr. for Real Estate Educ., Inc., 621 F.3d 981, 986 (9th Cir.2010); Ellenburg v. Brockway, Inc., 763 F.2d 1091, 1097 (9th Cir.1985); Kendall-Jackson Winery, Ltd. v. Superior Court,* 76 Cal.App.4th 970, 979 (1999); Lynn v. Duckel, 46 Cal.2d 845, 850, (1956); Fibreboard Paper Products Corp. v. East Bay Union of Machinists, 227 Cal.App.2d 675, 727–28, (1964); Health Maint. Network v. Blue Cross of Southern Cal., 202 Cal.App.3d 1043, 1061 (1988); Watson v. Poore, 18 Cal.2d 302, 313 (1941); Seligman v. Tucker, 6 Cal.App.3d 691, 700 (1970); and Moriarty v. Carlson, 184 Cal.App.2d 51, 56 (1960).

### b)      Evidence Relied on in Support of Affirmative Defense No. 3

Plaintiff and her husband have been wealthy, sophisticated real estate investors for many years. They purchased the Property in October 2009 for $341,000. Plaintiff never resided in the Property but, rather, intended to (and did) use it as a source of rental income.

The relevant occurrences began when Plaintiff put the Property on the rental market with her self-selected agent – the A-Z Investment Defendants.  The A-Z Realty Defendants thereafter advertised the Property to prospective tenants.

Persons who identified themselves as "Miaoyun Wu" and "Xin Li" (the "Paper Tenants"), thereafter approached the Realty One Defendants for help in leasing the Property through "WeChat", a Chinese language web platform used by billions worldwide for commerce (include real estate rentals). Realty One's agent,

Ms. Lucky Luo, requested the Paper Tenants to provide standard identification and other identifying information in support of their application to lease the Property. Nothing seemed out of the ordinary to Ms. Luo. And nothing about the Paper Tenants or their identification papers seemed odd or unusual.

The Realty One Defendants thereafter passed on the Paper Tenants' signed rental application to Plaintiff's agents (the A-Z Realty Defendants). Consistent with their duties to Plaintiff, A-Z Defendants should have reviewed the Paper Tenants' information and performed a background check on them. According to the A-Z Defendants, when nothing suspicious turned up, the A-Z Realty Defendants presented the Paper Tenants to Plaintiff and recommended that Plaintiff enter a lease agreement with them. Plaintiff agreed and the Property was leased to the Paper Tenants. Ms. Luo received a $300 fee for her work on the rental.

Approximately two months after the Paper Tenants supposedly moved into the Property, the A-Z Realty Defendants contacted Plaintiff and informed her that "Chinese syndicates" were looking to rent large houses in which to grow marijuana. Plaintiff was also informed that these syndicates were willing to pay almost twice the market rate than was currently being paid to rent the Property.

According to Plaintiff, a few days later, this announcement started to make sense when the A-Z Realty Defendants advised her that the rental Property in issue was being used to cultivate marijuana. Specifically, the A-Z Realty Defendants stated the Property had newly constructed walls, exposed electrical wiring and an irrigation system for the interior of the home. The A-Z Realty Defendants further advised that the Property's interior now featured approximately 150 marijuana plants growing in "large tubs". Moreover, the Paper Tenants were using an alias to conceal their operation. They were actually persons named "Shi Dan Chen" and "Ming-Wing Lam" (the "Tenant Defendants").

By her own admission, Plaintiff declined to contact the police with any of this unsettling information. Instead, and according to Plaintiff, she listened attentively

while the A-Z Defendants attempted to convince her that the activities occurring in the Property were all actually "legal". As Plaintiff tells it, the A-Z Realty Defendants advised her that she could profit handsomely from the marijuana trade.

To prove their point, the A-Z Realty Defendants informed Plaintiff that they had already negotiated a "rent increase" with the Tenant Defendants from $2,500 to $5,000 along with an agreed $20,000 enhanced payment for marijuana cultivation ($10,000 of which was to be paid in June 2017 and $10,000 more in October 2017). According to Plaintiff, the A-Z Realty Defendants also demanded that Plaintiff pay them a nearly doubled monthly management fee to account for their "good work".

Once again, Plaintiff declined to contact the authorities with any of this illegality and instead continued to receive her additional payments for the illegal activity being conducted on her property.

### 5.      Affirmative Defense No. 5:  Failure to Mitigate

By the exercise of reasonable effort, Plaintiff could have mitigated the amount of damages, if any there were, but Plaintiff failed and refused, and continues to fail and refuse, to exercise a reasonable effort to mitigate damages and therefore Plaintiff is barred from seeking recovery of those damages.

#### a)      Elements Required to Establish Affirmative Defense No. 5

The plaintiff has a duty to use reasonable efforts to mitigate damages. To mitigate means to avoid or reduce damages.

The defendant has the burden of proving by a preponderance of the evidence:

1.      that the plaintiff failed to use reasonable efforts to mitigate damages; and

2.      the amount by which damages would have been mitigated.

FINAL PRETRIAL CONFERENCE ORDER

### b) Evidence Relied on in Support of Affirmative Defense No. 5

Pursuant to the Property Management Agreement between Plaintiff and the A-Z Realty Defendants, Plaintiff was required to "carry and ay for (i) public and premises liability insurance in an amount of no less than $1,000,000; and (ii) property damage and worker's compensation insurance adequate to protect the interests of the Owner and Property Manager."  Plaintiff admitted in her deposition that she failed to report the damage to her property to her insurance carrier.  If Plaintiff had carried the type of insurance coverage required pursuant to the Property Management Agreement, the coverage would have been sufficient to repair the property and avoid the continuing accumulation of the monthly loss of rental income.

### 6. Affirmative Defense No. 6:  Plaintiff Consented to the Acts and Omissions Alleged in the Complaint

### a) Elements Required to Establish Affirmative Defense No. 6

To the extent that Plaintiff consented to the acts or omissions complained of, Plaintiff cannot recover for those same acts or omissions.

### b) Evidence Relied on in Support of Affirmative Defense No. 6

Plaintiff and her husband have been wealthy, sophisticated real estate investors for many years. They purchased the Property in October 2009 for $341,000. Plaintiff never resided in the Property but, rather, intended to (and did) use it as a source of rental income.

The relevant occurrences began when Plaintiff put the Property on the rental market with her self-selected agent – the A-Z Invesetment Defendants.  The A-Z Realty Defendants thereafter advertised the Property to prospective tenants.

Persons who identified themselves as "Miaoyun Wu" and "Xin Li" (the "Paper Tenants"), thereafter approached the Realty One Defendants for help in leasing the Property through "WeChat", a Chinese language web platform used by billions worldwide for commerce (include real estate rentals). Realty One's agent, Ms. Lucky Luo, requested the Paper Tenants to provide standard identification and other identifying information in support of their application to lease the Property. Nothing seemed out of the ordinary to Ms. Luo. And nothing about the Paper Tenants or their identification papers seemed odd or unusual.

The Realty One Defendants thereafter passed on the Paper Tenants' signed rental application to Plaintiff's agents (the A-Z Realty Defendants). Consistent with their duties to Plaintiff, A-Z Defendants should have reviewed the Paper Tenants' information and performed a background check on them. According to the A-Z Defendants, when nothing suspicious turned up, the A-Z Realty Defendants presented the Paper Tenants to Plaintiff and recommended that Plaintiff enter a lease agreement with them. Plaintiff agreed and the Property was leased to the Paper Tenants. Ms. Luo received a $300 fee for her work on the rental.

Approximately two months after the Paper Tenants supposedly moved into the Property, the A-Z Realty Defendants contacted Plaintiff and informed her that "Chinese syndicates" were looking to rent large houses in which to grow marijuana. Plaintiff was also informed that these syndicates were willing to pay almost twice the market rate than was currently being paid to rent the Property.

According to Plaintiff, a few days later, this announcement started to make sense when the A-Z Realty Defendants advised her that the rental Property in issue was being used to cultivate marijuana. Specifically, the A-Z Realty Defendants stated the Property had newly constructed walls, exposed electrical wiring and an irrigation system for the interior of the home. The A-Z Realty Defendants further advised that the Property's interior now featured approximately 150 marijuana plants growing in "large tubs". Moreover, the Paper Tenants were using an alias to

1  conceal their operation. They were actually persons named "Shi Dan Chen" and

2  "Ming-Wing Lam" (the "Tenant Defendants").

3      By her own admission, Plaintiff declined to contact the police with any of this

4  unsettling information. Instead, and according to Plaintiff, she listened attentively

5  while the A-Z Defendants attempted to convince her that the activities occurring in

6  the Property were all actually "legal". As Plaintiff tells it, the A-Z Realty

7  Defendants advised her that she could profit handsomely from the marijuana trade.

8      To prove their point, the A-Z Realty Defendants informed Plaintiff that they

9  had already negotiated a "rent increase" with the Tenant Defendants from $2,500 to

10  $5,000 along with an agreed $20,000 enhanced payment for marijuana cultivation

11  ($10,000 of which was to be paid in June 2017 and $10,000 more in October 2017).

12  According to Plaintiff, the A-Z Realty Defendants also demanded that Plaintiff pay

13  them a nearly doubled monthly management fee to account for their "good work".

14      Once again, Plaintiff declined to contact the authorities with any of this

15  illegality and instead continued to receive her additional payments for the illegal

16  activity being conducted on her property.

17      **7.    Affirmative Defense No. 7**

18          **a)    Elements Required to Establish Affirmative Defense**

19              **No. 7**

20      Defendants were agents who had no knowledge of, and did not participate in

21  any fraudulent act of their principals or any enterprise; as such, Defendants are not

22  vicariously liable for the torts, if any, of said principals or any enterprise that they

23  may have operated or managed.  Defendants had no knowledge or awareness of the

24  essential nature or scope of any fraudulent enterprise or conspiracy; neither did

25  Defendants have any intention to facilitate such an enterprise or conspiracy.

26  Defendants did not knowingly agree to facilitate any scheme that included operation

27  or management of any fraudulent enterprise or conspiracy.

28

### b) Key Evidence in Support of Affirmative Defense No. 7

Evidence in the form of deposition testimony and emails establish that the only actions undertaken by the Realty One Defendants were to pass along information provided by the perspective tenants to the A-Z Realty Defendants. There was nothing requiring the Realty One Defendants to perform any type of background check or financial verification.  In fact, Realty One Defendants' expert will testify that it was the responsibility of A-Z Realty Defendants to verify the background and financial information as to the perspective tenants or to inform Plaintiff that this verification was not performed. It was based on this information that Plaintiff elected to rent the Property.  Realty One Defendants did not have any involvement in any activity following the signing of the rental agreement including any knowledge or participation in the actions of the persons residing in the Property.

### 8. Affirmative Defense No. 8

#### a) Elements Required to Establish Affirmative Defense No. 8

The Complaint and each purported claim alleged therein are barred, in whole or in part, by misrepresentations, concealment, and omissions made by Plaintiff and/or third parties to Defendants regarding the alleged transactions, to the detriment of Defendants.  Defendants reasonably relied on the foregoing misrepresentations, concealment, and omissions in conforming Defendants' conduct to all applicable standards and obligations.

#### b) Key Evidence in Support of Affirmative Defense No. 8

Evidence in the form of deposition testimony and emails establish that the only actions undertaken by the Realty One Defendants were to pass along information provided by the perspective tenants to the A-Z Realty Defendants.  It was the responsibility of the A-Z Realty Defendants to verify the information provided by the perspective tenants.  Any misrepresentations, concealments and omissions made by any of the perspective tenants, or the actual tenants, were not

made with the knowledge of the Realty One Defendants and their misconduct cannot be used to the Realty One Defendants' detriment.

### 9.    Affirmative Defense No. 9 - Estoppel

#### a)    Elements Required to Establish Affirmative Defense No. 9

Plaintiff is estoped by her own actions and conduct from asserting any claim against the Realty One Defendants.  The justice system will not allow a person to bring a claim for damages which arose based upon her own criminal acts.  The justice system will not enable the wrongdoer to profit from her own wrongs.  If Defendants Realty One Group and Zihui (Lucky) Luo prove that Plaintiff Shuang Ying (Nancy) Zhang attempted to profit from her wrongdoing, you should find that Plaintiff, Shuang Ying (Nancy) Zhang is not entitled to recover damages in this action.  Susag v. City of Lake Forest, 94 Cal. App. 4th 1401, 1412 (2002); Bigelow v. RKO Radio Pictures, Inc., 327 U.S. 251, 264 (1946); Dart Industries, Inc. v. Liberty Mut. Ins. Co., 484 F.2d 1295, 1298 (9th Cir. 1973).

Plaintiff and her husband have been wealthy, sophisticated real estate investors for many years. They purchased the Property in October 2009 for $341,000. Plaintiff never resided in the Property but, rather, intended to (and did) use it as a source of rental income.

The relevant occurrences began when Plaintiff put the Property on the rental market with her self-selected agent – the A-Z Invesetment Defendants.  The A-Z Realty Defendants thereafter advertised the Property to prospective tenants.

Persons who identified themselves as "Miaoyun Wu" and "Xin Li" (the "Paper Tenants"), thereafter approached the Realty One Defendants for help in leasing the Property through "WeChat", a Chinese language web platform used by billions worldwide for commerce (include real estate rentals). Realty One's agent, Ms. Lucky Luo, requested the Paper Tenants to provide standard identification and other identifying information in support of their application to lease the Property.

Nothing seemed out of the ordinary to Ms. Luo. And nothing about the Paper Tenants or their identification papers seemed odd or unusual.

The Realty One Defendants thereafter passed on the Paper Tenants' signed rental application to Plaintiff's agents (the A-Z Realty Defendants). Consistent with their duties to Plaintiff, A-Z Defendants should have reviewed the Paper Tenants' information and performed a background check on them. According to the A-Z Defendants, when nothing suspicious turned up, the A-Z Realty Defendants presented the Paper Tenants to Plaintiff and recommended that Plaintiff enter a lease agreement with them. Plaintiff agreed and the Property was leased to the Paper Tenants. Ms. Luo received a $300 fee for her work on the rental.

Approximately two months after the Paper Tenants supposedly moved into the Property, the A-Z Realty Defendants contacted Plaintiff and informed her that "Chinese syndicates" were looking to rent large houses in which to grow marijuana. Plaintiff was also informed that these syndicates were willing to pay almost twice the market rate than was currently being paid to rent the Property.

According to Plaintiff, a few days later, this announcement started to make sense when the A-Z Realty Defendants advised her that the rental Property in issue was being used to cultivate marijuana. Specifically, the A-Z Realty Defendants stated the Property had newly constructed walls, exposed electrical wiring and an irrigation system for the interior of the home. The A-Z Realty Defendants further advised that the Property's interior now featured approximately 150 marijuana plants growing in "large tubs". Moreover, the Paper Tenants were using an alias to conceal their operation. They were actually persons named "Shi Dan Chen" and "Ming-Wing Lam" (the "Tenant Defendants").

By her own admission, Plaintiff declined to contact the police with any of this unsettling information. Instead, and according to Plaintiff, she listened attentively while the A-Z Defendants attempted to convince her that the activities occurring in

the Property were all actually "legal". As Plaintiff tells it, the A-Z Realty Defendants advised her that she could profit handsomely from the marijuana trade.

To prove their point, the A-Z Realty Defendants informed Plaintiff that they had already negotiated a "rent increase" with the Tenant Defendants from $2,500 to $5,000 along with an agreed $20,000 enhanced payment for marijuana cultivation ($10,000 of which was to be paid in June 2017 and $10,000 more in October 2017). According to Plaintiff, the A-Z Realty Defendants also demanded that Plaintiff pay them a nearly doubled monthly management fee to account for their "good work".

Once again, Plaintiff declined to contact the authorities with any of this illegality and instead continued to receive her additional payments for the illegal activity being conducted on her property.

> **10.** **Affirmative Defense No. 10 – Defendants had no knowledge or awareness of the essential nature or scope of any fraudulent enterprise or conspiracy; neither did Defendants have any intention to facilitate such an enterprise or conspiracy.**
>
> > **a)** **Elements Required to Establish Affirmative Defense No. 10**

Racketeer Influenced And Corrupt Organization Act (Rico) – 18 U.S.C. § 1962(C)– Conduct The Affairs Of The Enterprise Jury Instruction:

Plaintiff, Shuang Ying (Nancy) Zhang asserts a claim against Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty One Group, Inc.; Jihui (Lucky) Luo; Shi Dan Chen and Ming-Wing Lam for allegedly violating the Racketeer Influenced and Corrupt Organizations Act, commonly known as RICO. Plaintiff, Shuang Ying (Nancy) Zhang specifically claims that Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty One Group, Inc.; Jihui (Lucky) Luo; Shi Dan Chen and Ming-Wing Lam violated § 1962(c) of RICO.

To succeed on this claim, Plaintiff, Shuang Ying (Nancy) Zhang must prove each of the following five facts by a preponderance of the evidence:

First, you must find the existence of an enterprise.

Second, you must find that the enterprise engaged in, or had some effect on, interstate or foreign commerce.

Third, you must find that Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty One Group, Inc.; Jihui (Lucky) Luo; Shi Dan Chen and Ming-Wing Lam were employed by or associated with the alleged enterprise.

Fourth, you must find that Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty One Group, Inc.; Jihui (Lucky) Luo; Shi Dan Chen and Ming-Wing Lam participated, either directly or indirectly, in the conduct of the affairs of the enterprise.

And fifth, you must find that Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty One Group, Inc.; Jihui (Lucky) Luo; Shi Dan Chen and Ming-Wing Lam participated through a pattern of racketeering activity.

Now I'll provide you with some additional instructions to apply as you consider the facts that Plaintiff, Shuang Ying (Nancy) Zhang must prove.

For the first element, Plaintiff, Shuang Ying (Nancy) Zhang must prove the existence of an enterprise.

[Alternative #1: Individual or entity enterprise: An "enterprise" may consist of an individual, partnership, corporation, association, or other legal entity. In this case, the enterprise is alleged to be [identify enterprise].]

[Alternative #2: Association-in-fact enterprise: An "enterprise" doesn't have to be a legal entity. It can be an association of persons or entities. In this case, the enterprise is alleged to be [identify enterprise]. The association between the enterprise's members might be loose or informal. But the enterprise must have at

least a purpose, relationships among those associated with the enterprise, and a duration sufficient to permit those associates to pursue the enterprise's purpose.]

For the second element, Plaintiff, Shuang Ying (Nancy) Zhang must prove that the enterprise engaged in or had an effect on interstate or foreign commerce. "Engage in or have an effect on interstate or foreign commerce" means that the enterprise either engaged in, or had an effect on commerce between two or more states, or on commerce between a state and a foreign country.

For the third element, Plaintiff, Shuang Ying (Nancy) Zhang must prove that Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty One Group, Inc.; Jihui (Lucky) Luo; Shi Dan Chen and Ming-Wing Lam were employed by or associated with the alleged enterprise. The requirement that Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty One Group, Inc.; Jihui (Lucky) Luo; Shi Dan Chen and Ming-Wing Lam be "employed by or associated with" the enterprise means they must have some minimal association with the alleged enterprise. Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty One Group, Inc.; Jihui (Lucky) Luo; Shi Dan Chen and Ming-Wing Lam must know something about the alleged enterprise's activities as they relate to the racketeering activities.

For the fourth element, Plaintiff, Shuang Ying (Nancy) Zhang must also prove by a preponderance of the evidence that Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty One Group, Inc.; Jihui (Lucky) Luo; Shi Dan Chen and Ming-Wing Lam "participated, directly or indirectly, in the conduct of the affairs of the enterprise." To prove this, Plaintiff, Shuang Ying (Nancy) Zhang must show that Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty One Group, Inc.; Jihui (Lucky) Luo; Shi Dan Chen and Ming-Wing Lam actively conducted or participated in conducting the affairs of the alleged enterprise through a pattern of racketeering activity. Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng;

Jennifer Whelan; Realty One Group, Inc.; Jihui (Lucky) Luo; Shi Dan Chen and Ming-Wing Lam don't need to participate in, or be aware of, all of the enterprise's activities. It's sufficient if Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty One Group, Inc.; Jihui (Lucky) Luo; Shi Dan Chen and Ming-Wing Lam conducted or participated in the conduct of some of the enterprise's activities through a pattern of racketeering activity.

For the fifth element, Plaintiff, Shuang Ying (Nancy) Zhang must prove that Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty One Group, Inc.; Jihui (Lucky) Luo; Shi Dan Chen and Ming-Wing Lam participated in the conduct of the enterprise's affairs through a pattern of racketeering activity.

"Racketeering activity" is an act that violates the Controlled Substances Act.

I'll explain the law about the Controlled Substances Act to help you determine whether Plaintiff, Shuang Ying (Nancy) Zhang proved by a preponderance of the evidence that Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty One Group, Inc.; Jihui (Lucky) Luo; Shi Dan Chen and Ming-Wing Lam violated the Controlled Substances Act. An act of "racketeering activity" is also called a "predicate act."

A "pattern of racketeering activity" means that Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty One Group, Inc.; Jihui (Lucky) Luo; Shi Dan Chen and Ming-Wing Lam committed at least two distinct predicate acts. Distinct does not have to mean different types. But by itself, proof of two or more predicate acts doesn't establish a pattern under RICO.

To prove a pattern of predicate acts, Plaintiff, Shuang Ying (Nancy) Zhang must show that the acts were related to one another and to the enterprise. Two or more acts of racketeering activity that aren't related don't establish a pattern of racketeering activity under RICO. Predicate acts are "related" to one another if they have the same or similar purposes, results, participants, victims, or methods.

Predicate acts are also related if they have common distinguishing characteristics and aren't isolated events.

To be related, the predicate acts don't have to be the same kind of acts. For example, the acts may comprise one act of [type of alleged predicate act (e.g., wire fraud)] and one act of [another type of alleged predicate act (e.g., interstate transportation of stolen property)].

To make up a pattern of racketeering activity, predicate acts must demonstrate continuity. Continuity can be demonstrated in two basic ways. The first is to demonstrate related predicate acts extending over a substantial period of time. The second is to show conduct that doesn't occur over a substantial period of time but, by its nature, is likely to be repeated into the future.

Again, "racketeering activity" means an act that violates the Controlled Substances Act. But you can't consider just any racketeering act Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty One Group, Inc.; Jihui (Lucky) Luo; Shi Dan Chen and Ming-Wing Lam allegedly committed in violation of one of these statutes as bearing on whether Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty One Group, Inc.; Jihui (Lucky) Luo; Shi Dan Chen and Ming-Wing Lam have committed two or more predicate acts as a pattern of racketeering activity. [To determine if there is a pattern of racketeering activity, you must consider only those specific racketeering acts [name of plaintiff] alleges against [name of defendant.]] And you can't find that [name of defendant] engaged in a "pattern of racketeering activity" unless you unanimously agree on which of the alleged predicate acts, if any, make up the pattern.

So it's insufficient if you don't all agree to the finding of what two or more predicate acts Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty One Group, Inc.; Jihui (Lucky) Luo; Shi Dan Chen and Ming-Wing Lam committed. Some of you can't find that the predicate acts are A, B,

and C and the rest of you find that the predicate acts are X, Y, and B. Put another way, you can't find that Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty One Group, Inc.; Jihui (Lucky) Luo; Shi Dan Chen and Ming-Wing Lam have engaged in a pattern of racketeering activity unless you find (1) a "pattern" of predicate acts, and (2) that Plaintiff, Shuang Ying (Nancy) Zhang has proved by a preponderance of the evidence that Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty One Group, Inc.; Jihui (Lucky) Luo; Shi Dan Chen and Ming-Wing Lam committed each of the two or more predicate acts that you find make up that pattern.

A person doesn't violate RICO just by associating with or being employed by an otherwise lawful enterprise if others conduct the enterprise's affairs through a pattern of racketeering activity in which the person isn't personally engaged.

If you find that Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty One Group, Inc.; Jihui (Lucky) Luo; Shi Dan Chen and Ming-Wing Lam violated § 1962(c), you must decide whether that violation caused an injury to Plaintiff, Shuang Ying (Nancy) Zhang. The damages that Plaintiff, Shuang Ying (Nancy) Zhang may recover are those caused by the predicate acts constituting the pattern of racketeering activity if they injure Plaintiff, Shuang Ying (Nancy) Zhang or her or property. It isn't necessary that every predicate act caused damage to Plaintiff, Shuang Ying (Nancy) Zhang. But she can only recover damages caused by predicate acts that are part of the pattern of racketeering activity.

Ninth Circuit Manual of Model Jury Instructions (2017) __, (2013) 8.0 which refers one to use the Eleventh Circuit Pattern Jury Instructions – Civil Cases 7.3.

Racketeer Influenced and Corrupt Organization Act (RICO) – 18 U.S.C. § 1962(d) – Conspiracy to Conduct the Affairs of the Enterprise Jury Instruction:

Plaintiff, Shuang Ying (Nancy) Zhang has brought a claim against Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty

One Group, Inc.; Jihui (Lucky) Luo; Shi Dan Chen and Ming-Wing Lam for allegedly violating the Racketeer Influenced and Corrupt Organizations Act, commonly known as RICO.

Plaintiff, Shuang Ying (Nancy) Zhang specifically claims that Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty One Group, Inc.; Jihui (Lucky) Luo; Shi Dan Chen and Ming-Wing Lam violated RICO § 1962(d) by conspiring to violate RICO § 1962(c). I've already given you instructions on the elements of a violation of § 1962(c). Now you must decide if Plaintiff, Shuang Ying (Nancy) Zhang has proved by a preponderance of the evidence whether two or more of the defendants engaged in a conspiracy to violate RICO § 1962(c).

Generally, a RICO "conspiracy" is an agreement by two or more people to commit an unlawful act. Put another way, it's a kind of partnership for illegal purposes. Every member of the conspiracy becomes the agent or partner of every other member. Plaintiff, Shuang Ying (Nancy) Zhang doesn't have to prove that all the people named in the complaint were members of the conspiracy – or that those who were members made any kind of formal agreement. The heart of the conspiracy is the making of the unlawful plan itself. And Plaintiff, Shuang Ying (Nancy) Zhang doesn't have to prove that the conspirators were successful in carrying out the plan.

To prove a RICO conspiracy, Plaintiff, Shuang Ying (Nancy) Zhang must prove each of the following three facts by a preponderance of evidence:

First, you must find that two or more people agreed to try to accomplish an unlawful plan to engage in a pattern of racketeering activity.

And second, you must find that a defendant agreed to the overall objective of the conspiracy.

Or, as an alternative to the second element, you must find that a defendant agreed with at least one other defendant to commit two predicate acts as part of the conspiracy.

Plaintiff, Shuang Ying (Nancy) Zhang may show an "agreement to the overall objective of the conspiracy" by circumstantial evidence that a defendant must have known that others were also conspiring to participate in the same enterprise through a pattern of racketeering activity. If Plaintiff, Shuang Ying (Nancy) Zhang proves agreement on an overall objective, then it isn't necessary that a defendant agree to personally commit two predicate acts.

A defendant can also engage in a RICO conspiracy even if Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty One Group, Inc.; Jihui (Lucky) Luo; Shi Dan Chen and Ming-Wing Lam didn't agree to the conspiracy's overall objective. It's enough that Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty One Group, Inc.; Jihui (Lucky) Luo; Shi Dan Chen and Ming-Wing Lam engaged in a part of the conspiracy with at least one other defendant by committing at least two predicate acts – alone or with someone else.

While the essence of a RICO conspiracy is an agreement to further an endeavor that, if completed, would satisfy all the elements of a substantive RICO violation, Plaintiff, Shuang Ying (Nancy) Zhang doesn't have to offer direct evidence of an agreement.

The conspiracy's existence can be inferred from the participants' conduct. But a defendant must objectively manifest, through words or actions, Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty One Group, Inc.; Jihui (Lucky) Luo; Shi Dan Chen and Ming-Wing Lam's agreement to participate in the enterprise's affairs.

Plaintiff, Shuang Ying (Nancy) Zhang doesn't have to show that the alleged members of the conspiracy entered into any express or formal agreement, or that they directly stated the details of the scheme, its object, or purpose, or the precise means by which the object or purpose was to be accomplished. Plaintiff, Shuang Ying (Nancy) Zhang also doesn't have to establish that all the means or methods

alleged to carry out the alleged conspiracy were, in fact, agreed on, or that all the means or methods that were agreed on were actually used or put into operation. And Plaintiff, Shuang Ying (Nancy) Zhang doesn't have to prove that all persons alleged to be conspiracy members were actually members or that alleged conspirators succeeded in accomplishing their unlawful objectives.

But it isn't enough if the evidence shows only that the alleged conspirators agreed to commit the acts of racketeering Plaintiff, Shuang Ying (Nancy) Zhang alleges, without more, or that they agreed to participate in the affairs of the same alleged enterprise. It doesn't matter that the alleged conspirators participated in the conduct of the affairs of the alleged enterprise through different or dissimilar acts of racketeering activity so long as the alleged racketeering acts would – if actually committed – create a "pattern of racketeering activity" as I've defined it.

A defendant can become a member of a conspiracy without knowing all the unlawful scheme's details or without knowing the names and identities of all the other alleged conspirators. If Plaintiff, Shuang Ying (Nancy) Zhang proves by a preponderance of the evidence that a particular defendant has knowingly joined the alleged conspiracy, it doesn't matter that Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty One Group, Inc.; Jihui (Lucky) Luo; Shi Dan Chen and Ming-Wing Lam may not have participated in the alleged conspiracy or scheme's earlier stages.

Mere presence at the scene of some transaction or event, or mere similarity of conduct among various persons and the fact that they may have associated with each other, and may have assembled together and discussed common aims and interests, doesn't necessarily prove the existence of a conspiracy. A person who doesn't have knowledge of a conspiracy, but who happens to act in a way that advances some object or purpose of conspiracy, doesn't become a conspirator.

Plaintiff, Shuang Ying (Nancy) Zhang doesn't have to prove that a defendant actually committed any of the acts that Defendants A-Z Realty & Investment Corp.;

81

Dongyan (Annie) Zheng; Jennifer Whelan; Realty One Group, Inc.; Jihui (Lucky) Luo; Shi Dan Chen and Ming-Wing Lam may have agreed to commit to establish their membership in the conspiracy.

To determine whether there was a conspiracy, you must consider all the evidence in the case. If you find that there was a conspiracy, then you can attribute the statements or acts of the [names of co-conspirators] to [name of defendant]. If you find that there was not a conspiracy, then you can't attribute the statements or acts of [names of co-conspirators] to [name of defendant].

If you find the conspiracy didn't exist, then you must find for Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty One Group, Inc.; Jihui (Lucky) Luo; Shi Dan Chen and Ming-Wing Lam. But if you're satisfied that the conspiracy existed, you must determine who the members of the conspiracy were.

If you find that a particular defendant is a member of another conspiracy, but not the one Plaintiff, Shuang Ying (Nancy) Zhang charged, then you can't find that defendant liable in this case. Put another way, you can't find that a defendant violated § 1962(d) unless you find that Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty One Group, Inc.; Jihui (Lucky) Luo; Shi Dan Chen and Ming-Wing Lam were a member of the conspiracy charged – not some other separate conspiracy.

If you decide that a defendant conspired to violate RICO, you must decide whether that conspiracy caused Plaintiff, Shuang Ying (Nancy) Zhang injury. The damages Plaintiff, Shuang Ying (Nancy) Zhang may recover are those caused by the predicate acts committed by members of the conspiracy that injured Plaintiff, Shuang Ying (Nancy) Zhang in her business or property.

If you conclude that a defendant joined in a conspiracy to violate RICO, Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty One Group, Inc.; Jihui (Lucky) Luo; Shi Dan Chen and Ming-Wing

Lam are responsible for all damages caused by predicate acts committed by members of the conspiracy that caused injury to Plaintiff, Shuang Ying (Nancy) Zhang. It isn't necessary that every predicate act caused damage to Plaintiff, Shuang Ying (Nancy) Zhang], but she can only recover for damages caused by a predicate act committed by a conspiracy member.

In your consideration of this conspiracy claim, you should first determine whether the alleged conspiracy existed. If you conclude that a conspiracy existed as alleged, you should next determine whether each defendant under consideration willfully became a member of that conspiracy.

Ninth Circuit Manual of Model Jury Instructions (2017) 8.0 which refers one to use the Eleventh Circuit Pattern Jury Instructions – Civil Cases (2013) 7.4.

Key Evidence in Support of Affirmative Defense No. 7

Evidence in the form of deposition testimony and emails establish that the only actions undertaken by the Realty One Defendants were to pass along information provided by the perspective tenants to the A-Z Realty Defendants.  It was the responsibility of the A-Z Realty Defendants to verify the information provided by the perspective tenants.  Any misrepresentations, concealments and omissions made by any of the perspective tenants, or the actual tenants, were not made with the knowledge of the Realty One Defendants and their misconduct cannot be used to the Realty One Defendants' detriment.

### b) Elements Required to Establish Affirmative Defense No. 10

Plaintiff and her husband have been wealthy, sophisticated real estate investors for many years. They purchased the Property in October 2009 for $341,000. Plaintiff never resided in the Property but, rather, intended to (and did) use it as a source of rental income.

1    The relevant occurrences began when Plaintiff put the Property on the rental
2   market with her self-selected agent – the A-Z Invesetment Defendants.  The A-Z
3   Realty Defendants thereafter advertised the Property to prospective tenants.

4    Persons who identified themselves as "Miaoyun Wu" and "Xin Li" (the
5   "Paper Tenants"), thereafter approached the Realty One Defendants for help in
6   leasing the Property through "WeChat", a Chinese language web platform used by
7   billions worldwide for commerce (include real estate rentals). Realty One's agent,
8   Ms. Lucky Luo, requested the Paper Tenants to provide standard identification and
9   other identifying information in support of their application to lease the Property.
10  Nothing seemed out of the ordinary to Ms. Luo. And nothing about the Paper
11  Tenants or their identification papers seemed odd or unusual.

12   The Realty One Defendants thereafter passed on the Paper Tenants' signed
13  rental application to Plaintiff's agents (the A-Z Realty Defendants). Consistent with
14  their duties to Plaintiff, A-Z Defendants should have reviewed the Paper Tenants'
15  information and performed a background check on them. According to the A-Z
16  Defendants, when nothing suspicious turned up, the A-Z Realty Defendants
17  presented the Paper Tenants to Plaintiff and recommended that Plaintiff enter a lease
18  agreement with them. Plaintiff agreed and the Property was leased to the Paper
19  Tenants. Ms. Luo received a $300 fee for her work on the rental.

20   Approximately two months after the Paper Tenants supposedly moved into
21  the Property, the A-Z Realty Defendants contacted Plaintiff and informed her that
22  "Chinese syndicates" were looking to rent large houses in which to grow marijuana.
23  Plaintiff was also informed that these syndicates were willing to pay almost twice
24  the market rate than was currently being paid to rent the Property.

25   According to Plaintiff, a few days later, this announcement started to make
26  sense when the A-Z Realty Defendants advised her that the rental Property in issue
27  was being used to cultivate marijuana. Specifically, the A-Z Realty Defendants
28  stated the Property had newly constructed walls, exposed electrical wiring and an

irrigation system for the interior of the home. The A-Z Realty Defendants further advised that the Property's interior now featured approximately 150 marijuana plants growing in "large tubs". Moreover, the Paper Tenants were using an alias to conceal their operation. They were actually persons named "Shi Dan Chen" and "Ming-Wing Lam" (the "Tenant Defendants").

By her own admission, Plaintiff declined to contact the police with any of this unsettling information. Instead, and according to Plaintiff, she listened attentively while the A-Z Defendants attempted to convince her that the activities occurring in the Property were all actually "legal". As Plaintiff tells it, the A-Z Realty Defendants advised her that she could profit handsomely from the marijuana trade.

To prove their point, the A-Z Realty Defendants informed Plaintiff that they had already negotiated a "rent increase" with the Tenant Defendants from $2,500 to $5,000 along with an agreed $20,000 enhanced payment for marijuana cultivation ($10,000 of which was to be paid in June 2017 and $10,000 more in October 2017). According to Plaintiff, the A-Z Realty Defendants also demanded that Plaintiff pay them a nearly doubled monthly management fee to account for their "good work".

Once again, Plaintiff declined to contact the authorities with any of this illegality and instead continued to receive her additional payments for the illegal activity being conducted on her property.

**11.     Affirmative Defense No. 11 – Defendants did not knowingly agree to facilitate any scheme that included operation or management of any fraudulent enterprise or conspiracy.**

**a)     Elements Required to Establish Affirmative Defense No. 11**

Racketeer Influenced And Corrupt Organization Act (Rico) – 18 U.S.C. § 1962(C)– Conduct The Affairs Of The Enterprise Jury Instruction:

Plaintiff, Shuang Ying (Nancy) Zhang asserts a claim against Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty One

Group, Inc.; Jihui (Lucky) Luo; Shi Dan Chen and Ming-Wing Lam for allegedly violating the Racketeer Influenced and Corrupt Organizations Act, commonly known as RICO. Plaintiff, Shuang Ying (Nancy) Zhang specifically claims that Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty One Group, Inc.; Jihui (Lucky) Luo; Shi Dan Chen and Ming-Wing Lam violated § 1962(c) of RICO.

To succeed on this claim, Plaintiff, Shuang Ying (Nancy) Zhang must prove each of the following five facts by a preponderance of the evidence:

First, you must find the existence of an enterprise.

Second, you must find that the enterprise engaged in, or had some effect on, interstate or foreign commerce.

Third, you must find that Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty One Group, Inc.; Jihui (Lucky) Luo; Shi Dan Chen and Ming-Wing Lam were employed by or associated with the alleged enterprise.

Fourth, you must find that Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty One Group, Inc.; Jihui (Lucky) Luo; Shi Dan Chen and Ming-Wing Lam participated, either directly or indirectly, in the conduct of the affairs of the enterprise.

And fifth, you must find that Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty One Group, Inc.; Jihui (Lucky) Luo; Shi Dan Chen and Ming-Wing Lam participated through a pattern of racketeering activity.

Now I'll provide you with some additional instructions to apply as you consider the facts that Plaintiff, Shuang Ying (Nancy) Zhang must prove.

For the first element, Plaintiff, Shuang Ying (Nancy) Zhang must prove the existence of an enterprise.

[Alternative #1: Individual or entity enterprise: An "enterprise" may consist of an individual, partnership, corporation, association, or other legal entity. In this case, the enterprise is alleged to be [identify enterprise].]

[Alternative #2: Association-in-fact enterprise: An "enterprise" doesn't have to be a legal entity. It can be an association of persons or entities. In this case, the enterprise is alleged to be [identify enterprise]. The association between the enterprise's members might be loose or informal. But the enterprise must have at least a purpose, relationships among those associated with the enterprise, and a duration sufficient to permit those associates to pursue the enterprise's purpose.]

For the second element, Plaintiff, Shuang Ying (Nancy) Zhang must prove that the enterprise engaged in or had an effect on interstate or foreign commerce. "Engage in or have an effect on interstate or foreign commerce" means that the enterprise either engaged in, or had an effect on commerce between two or more states, or on commerce between a state and a foreign country.

For the third element, Plaintiff, Shuang Ying (Nancy) Zhang must prove that Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty One Group, Inc.; Jihui (Lucky) Luo; Shi Dan Chen and Ming-Wing Lam were employed by or associated with the alleged enterprise. The requirement that Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty One Group, Inc.; Jihui (Lucky) Luo; Shi Dan Chen and Ming-Wing Lam be "employed by or associated with" the enterprise means they must have some minimal association with the alleged enterprise. Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty One Group, Inc.; Jihui (Lucky) Luo; Shi Dan Chen and Ming-Wing Lam must know something about the alleged enterprise's activities as they relate to the racketeering activities.

For the fourth element, Plaintiff, Shuang Ying (Nancy) Zhang must also prove by a preponderance of the evidence that Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty One Group, Inc.; Jihui

(Lucky) Luo; Shi Dan Chen and Ming-Wing Lam "participated, directly or indirectly, in the conduct of the affairs of the enterprise." To prove this, Plaintiff, Shuang Ying (Nancy) Zhang must show that Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty One Group, Inc.; Jihui (Lucky) Luo; Shi Dan Chen and Ming-Wing Lam actively conducted or participated in conducting the affairs of the alleged enterprise through a pattern of racketeering activity. Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty One Group, Inc.; Jihui (Lucky) Luo; Shi Dan Chen and Ming-Wing Lam don't need to participate in, or be aware of, all of the enterprise's activities. It's sufficient if Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty One Group, Inc.; Jihui (Lucky) Luo; Shi Dan Chen and Ming-Wing Lam conducted or participated in the conduct of some of the enterprise's activities through a pattern of racketeering activity.

For the fifth element, Plaintiff, Shuang Ying (Nancy) Zhang must prove that Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty One Group, Inc.; Jihui (Lucky) Luo; Shi Dan Chen and Ming-Wing Lam participated in the conduct of the enterprise's affairs through a pattern of racketeering activity.

"Racketeering activity" is an act that violates the Controlled Substances Act.

I'll explain the law about the Controlled Substances Act to help you determine whether Plaintiff, Shuang Ying (Nancy) Zhang proved by a preponderance of the evidence that Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty One Group, Inc.; Jihui (Lucky) Luo; Shi Dan Chen and Ming-Wing Lam violated the Controlled Substances Act. An act of "racketeering activity" is also called a "predicate act."

A "pattern of racketeering activity" means that Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty One Group, Inc.; Jihui (Lucky) Luo; Shi Dan Chen and Ming-Wing Lam committed at least two

distinct predicate acts. Distinct does not have to mean different types. But by itself, proof of two or more predicate acts doesn't establish a pattern under RICO.

To prove a pattern of predicate acts, Plaintiff, Shuang Ying (Nancy) Zhang must show that the acts were related to one another and to the enterprise. Two or more acts of racketeering activity that aren't related don't establish a pattern of racketeering activity under RICO. Predicate acts are "related" to one another if they have the same or similar purposes, results, participants, victims, or methods. Predicate acts are also related if they have common distinguishing characteristics and aren't isolated events.

To be related, the predicate acts don't have to be the same kind of acts. For example, the acts may comprise one act of [type of alleged predicate act (e.g., wire fraud)] and one act of [another type of alleged predicate act (e.g., interstate transportation of stolen property)].

To make up a pattern of racketeering activity, predicate acts must demonstrate continuity. Continuity can be demonstrated in two basic ways. The first is to demonstrate related predicate acts extending over a substantial period of time. The second is to show conduct that doesn't occur over a substantial period of time but, by its nature, is likely to be repeated into the future.

Again, "racketeering activity" means an act that violates the Controlled Substances Act. But you can't consider just any racketeering act Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty One Group, Inc.; Jihui (Lucky) Luo; Shi Dan Chen and Ming-Wing Lam allegedly committed in violation of one of these statutes as bearing on whether Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty One Group, Inc.; Jihui (Lucky) Luo; Shi Dan Chen and Ming-Wing Lam have committed two or more predicate acts as a pattern of racketeering activity. [To determine if there is a pattern of racketeering activity, you must consider only those specific racketeering acts [name of plaintiff] alleges against [name of defendant.]]

And you can't find that [name of defendant] engaged in a "pattern of racketeering activity" unless you unanimously agree on which of the alleged predicate acts, if any, make up the pattern.

So it's insufficient if you don't all agree to the finding of what two or more predicate acts Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty One Group, Inc.; Jihui (Lucky) Luo; Shi Dan Chen and Ming-Wing Lam committed. Some of you can't find that the predicate acts are A, B, and C and the rest of you find that the predicate acts are X, Y, and B. Put another way, you can't find that Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty One Group, Inc.; Jihui (Lucky) Luo; Shi Dan Chen and Ming-Wing Lam have engaged in a pattern of racketeering activity unless you find (1) a "pattern" of predicate acts, and (2) that Plaintiff, Shuang Ying (Nancy) Zhang has proved by a preponderance of the evidence that Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty One Group, Inc.; Jihui (Lucky) Luo; Shi Dan Chen and Ming-Wing Lam committed each of the two or more predicate acts that you find make up that pattern.

A person doesn't violate RICO just by associating with or being employed by an otherwise lawful enterprise if others conduct the enterprise's affairs through a pattern of racketeering activity in which the person isn't personally engaged.

If you find that Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty One Group, Inc.; Jihui (Lucky) Luo; Shi Dan Chen and Ming-Wing Lam violated § 1962(c), you must decide whether that violation caused an injury to Plaintiff, Shuang Ying (Nancy) Zhang. The damages that Plaintiff, Shuang Ying (Nancy) Zhang may recover are those caused by the predicate acts constituting the pattern of racketeering activity if they injure Plaintiff, Shuang Ying (Nancy) Zhang or her or property. It isn't necessary that every predicate act caused damage to Plaintiff, Shuang Ying (Nancy) Zhang. But she can

only recover damages caused by predicate acts that are part of the pattern of racketeering activity.

Ninth Circuit Manual of Model Jury Instructions (2017) __, (2013) 8.0 which refers one to use the Eleventh Circuit Pattern Jury Instructions – Civil Cases 7.3.

Racketeer Influenced and Corrupt Organization Act (RICO) – 18 U.S.C. § 1962(d) – Conspiracy to Conduct the Affairs of the Enterprise Jury Instruction:

Plaintiff, Shuang Ying (Nancy) Zhang has brought a claim against Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty One Group, Inc.; Jihui (Lucky) Luo; Shi Dan Chen and Ming-Wing Lam for allegedly violating the Racketeer Influenced and Corrupt Organizations Act, commonly known as RICO.

Plaintiff, Shuang Ying (Nancy) Zhang specifically claims that Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty One Group, Inc.; Jihui (Lucky) Luo; Shi Dan Chen and Ming-Wing Lam violated RICO § 1962(d) by conspiring to violate RICO § 1962(c). I've already given you instructions on the elements of a violation of § 1962(c). Now you must decide if Plaintiff, Shuang Ying (Nancy) Zhang has proved by a preponderance of the evidence whether two or more of the defendants engaged in a conspiracy to violate RICO § 1962(c).

Generally, a RICO "conspiracy" is an agreement by two or more people to commit an unlawful act. Put another way, it's a kind of partnership for illegal purposes. Every member of the conspiracy becomes the agent or partner of every other member. Plaintiff, Shuang Ying (Nancy) Zhang doesn't have to prove that all the people named in the complaint were members of the conspiracy – or that those who were members made any kind of formal agreement. The heart of the conspiracy is the making of the unlawful plan itself. And Plaintiff, Shuang Ying (Nancy) Zhang doesn't have to prove that the conspirators were successful in carrying out the plan.

To prove a RICO conspiracy, Plaintiff, Shuang Ying (Nancy) Zhang must prove each of the following three facts by a preponderance of evidence:

First, you must find that two or more people agreed to try to accomplish an unlawful plan to engage in a pattern of racketeering activity.

And second, you must find that a defendant agreed to the overall objective of the conspiracy.

Or, as an alternative to the second element, you must find that a defendant agreed with at least one other defendant to commit two predicate acts as part of the conspiracy.

Plaintiff, Shuang Ying (Nancy) Zhang may show an "agreement to the overall objective of the conspiracy" by circumstantial evidence that a defendant must have known that others were also conspiring to participate in the same enterprise through a pattern of racketeering activity. If Plaintiff, Shuang Ying (Nancy) Zhang proves agreement on an overall objective, then it isn't necessary that a defendant agree to personally commit two predicate acts.

A defendant can also engage in a RICO conspiracy even if Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty One Group, Inc.; Jihui (Lucky) Luo; Shi Dan Chen and Ming-Wing Lam didn't agree to the conspiracy's overall objective. It's enough that Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty One Group, Inc.; Jihui (Lucky) Luo; Shi Dan Chen and Ming-Wing Lam engaged in a part of the conspiracy with at least one other defendant by committing at least two predicate acts – alone or with someone else.

While the essence of a RICO conspiracy is an agreement to further an endeavor that, if completed, would satisfy all the elements of a substantive RICO violation, Plaintiff, Shuang Ying (Nancy) Zhang doesn't have to offer direct evidence of an agreement.

The conspiracy's existence can be inferred from the participants' conduct. But a defendant must objectively manifest, through words or actions, Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty One Group, Inc.; Jihui (Lucky) Luo; Shi Dan Chen and Ming-Wing Lam's agreement to participate in the enterprise's affairs.

Plaintiff, Shuang Ying (Nancy) Zhang doesn't have to show that the alleged members of the conspiracy entered into any express or formal agreement, or that they directly stated the details of the scheme, its object, or purpose, or the precise means by which the object or purpose was to be accomplished. Plaintiff, Shuang Ying (Nancy) Zhang also doesn't have to establish that all the means or methods alleged to carry out the alleged conspiracy were, in fact, agreed on, or that all the means or methods that were agreed on were actually used or put into operation. And Plaintiff, Shuang Ying (Nancy) Zhang doesn't have to prove that all persons alleged to be conspiracy members were actually members or that alleged conspirators succeeded in accomplishing their unlawful objectives.

But it isn't enough if the evidence shows only that the alleged conspirators agreed to commit the acts of racketeering Plaintiff, Shuang Ying (Nancy) Zhang alleges, without more, or that they agreed to participate in the affairs of the same alleged enterprise. It doesn't matter that the alleged conspirators participated in the conduct of the affairs of the alleged enterprise through different or dissimilar acts of racketeering activity so long as the alleged racketeering acts would – if actually committed – create a "pattern of racketeering activity" as I've defined it.

A defendant can become a member of a conspiracy without knowing all the unlawful scheme's details or without knowing the names and identities of all the other alleged conspirators. If Plaintiff, Shuang Ying (Nancy) Zhang proves by a preponderance of the evidence that a particular defendant has knowingly joined the alleged conspiracy, it doesn't matter that Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty One Group, Inc.; Jihui

(Lucky) Luo; Shi Dan Chen and Ming-Wing Lam may not have participated in the alleged conspiracy or scheme's earlier stages.

Mere presence at the scene of some transaction or event, or mere similarity of conduct among various persons and the fact that they may have associated with each other, and may have assembled together and discussed common aims and interests, doesn't necessarily prove the existence of a conspiracy. A person who doesn't have knowledge of a conspiracy, but who happens to act in a way that advances some object or purpose of conspiracy, doesn't become a conspirator.

Plaintiff, Shuang Ying (Nancy) Zhang doesn't have to prove that a defendant actually committed any of the acts that Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty One Group, Inc.; Jihui (Lucky) Luo; Shi Dan Chen and Ming-Wing Lam may have agreed to commit to establish their membership in the conspiracy.

To determine whether there was a conspiracy, you must consider all the evidence in the case. If you find that there was a conspiracy, then you can attribute the statements or acts of the [names of co-conspirators] to [name of defendant]. If you find that there was not a conspiracy, then you can't attribute the statements or acts of [names of co-conspirators] to [name of defendant].

If you find the conspiracy didn't exist, then you must find for Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty One Group, Inc.; Jihui (Lucky) Luo; Shi Dan Chen and Ming-Wing Lam. But if you're satisfied that the conspiracy existed, you must determine who the members of the conspiracy were.

If you find that a particular defendant is a member of another conspiracy, but not the one Plaintiff, Shuang Ying (Nancy) Zhang charged, then you can't find that defendant liable in this case. Put another way, you can't find that a defendant violated § 1962(d) unless you find that Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty One Group, Inc.; Jihui (Lucky)

Luo; Shi Dan Chen and Ming-Wing Lam were a member of the conspiracy charged – not some other separate conspiracy.

If you decide that a defendant conspired to violate RICO, you must decide whether that conspiracy caused Plaintiff, Shuang Ying (Nancy) Zhang injury. The damages Plaintiff, Shuang Ying (Nancy) Zhang may recover are those caused by the predicate acts committed by members of the conspiracy that injured Plaintiff, Shuang Ying (Nancy) Zhang in her business or property.

If you conclude that a defendant joined in a conspiracy to violate RICO, Defendants A-Z Realty & Investment Corp.; Dongyan (Annie) Zheng; Jennifer Whelan; Realty One Group, Inc.; Jihui (Lucky) Luo; Shi Dan Chen and Ming-Wing Lam are responsible for all damages caused by predicate acts committed by members of the conspiracy that caused injury to Plaintiff, Shuang Ying (Nancy) Zhang. It isn't necessary that every predicate act caused damage to Plaintiff, Shuang Ying (Nancy) Zhang], but she can only recover for damages caused by a predicate act committed by a conspiracy member.

In your consideration of this conspiracy claim, you should first determine whether the alleged conspiracy existed. If you conclude that a conspiracy existed as alleged, you should next determine whether each defendant under consideration willfully became a member of that conspiracy.

 Ninth Circuit Manual of Model Jury Instructions (2017) 8.0 which refers one to use the Eleventh Circuit Pattern Jury Instructions – Civil Cases (2013) 7.4.

Key Evidence in Support of Affirmative Defense No. 7

Evidence in the form of deposition testimony and emails establish that the only actions undertaken by the Realty One Defendants were to pass along information provided by the perspective tenants to the A-Z Realty Defendants.  It was the responsibility of the A-Z Realty Defendants to verify the information provided by the perspective tenants.  Any misrepresentations, concealments and omissions made by any of the perspective tenants, or the actual tenants, were not

1  made with the knowledge of the Realty One Defendants and their misconduct

2  cannot be used to the Realty One Defendants' detriment.

3            b)       **Elements Required to Establish Affirmative Defense**

4                     **No. 11**

5         Plaintiff and her husband have been wealthy, sophisticated real estate

6  investors for many years. They purchased the Property in October 2009 for

7  $341,000. Plaintiff never resided in the Property but, rather, intended to (and did)

8  use it as a source of rental income.

9         The relevant occurrences began when Plaintiff put the Property on the rental

10  market with her self-selected agent – the A-Z Invesetment Defendants.  The A-Z

11  Realty Defendants thereafter advertised the Property to prospective tenants.

12         Persons who identified themselves as "Miaoyun Wu" and "Xin Li" (the

13  "Paper Tenants"), thereafter approached the Realty One Defendants for help in

14  leasing the Property through "WeChat", a Chinese language web platform used by

15  billions worldwide for commerce (include real estate rentals). Realty One's agent,

16  Ms. Lucky Luo, requested the Paper Tenants to provide standard identification and

17  other identifying information in support of their application to lease the Property.

18  Nothing seemed out of the ordinary to Ms. Luo. And nothing about the Paper

19  Tenants or their identification papers seemed odd or unusual.

20         The Realty One Defendants thereafter passed on the Paper Tenants' signed

21  rental application to Plaintiff's agents (the A-Z Realty Defendants). Consistent with

22  their duties to Plaintiff, A-Z Defendants should have reviewed the Paper Tenants'

23  information and performed a background check on them. According to the A-Z

24  Defendants, when nothing suspicious turned up, the A-Z Realty Defendants

25  presented the Paper Tenants to Plaintiff and recommended that Plaintiff enter a lease

26  agreement with them. Plaintiff agreed and the Property was leased to the Paper

27  Tenants. Ms. Luo received a $300 fee for her work on the rental.

28

Approximately two months after the Paper Tenants supposedly moved into the Property, the A-Z Realty Defendants contacted Plaintiff and informed her that "Chinese syndicates" were looking to rent large houses in which to grow marijuana. Plaintiff was also informed that these syndicates were willing to pay almost twice the market rate than was currently being paid to rent the Property.

According to Plaintiff, a few days later, this announcement started to make sense when the A-Z Realty Defendants advised her that the rental Property in issue was being used to cultivate marijuana. Specifically, the A-Z Realty Defendants stated the Property had newly constructed walls, exposed electrical wiring and an irrigation system for the interior of the home. The A-Z Realty Defendants further advised that the Property's interior now featured approximately 150 marijuana plants growing in "large tubs". Moreover, the Paper Tenants were using an alias to conceal their operation. They were actually persons named "Shi Dan Chen" and "Ming-Wing Lam" (the "Tenant Defendants").

By her own admission, Plaintiff declined to contact the police with any of this unsettling information. Instead, and according to Plaintiff, she listened attentively while the A-Z Defendants attempted to convince her that the activities occurring in the Property were all actually "legal". As Plaintiff tells it, the A-Z Realty Defendants advised her that she could profit handsomely from the marijuana trade.

To prove their point, the A-Z Realty Defendants informed Plaintiff that they had already negotiated a "rent increase" with the Tenant Defendants from $2,500 to $5,000 along with an agreed $20,000 enhanced payment for marijuana cultivation ($10,000 of which was to be paid in June 2017 and $10,000 more in October 2017). According to Plaintiff, the A-Z Realty Defendants also demanded that Plaintiff pay them a nearly doubled monthly management fee to account for their "good work".

Once again, Plaintiff declined to contact the authorities with any of this illegality and instead continued to receive her additional payments for the illegal activity being conducted on her property.

FINAL PRETRIAL CONFERENCE ORDER

8. In view of the admitted facts and the elements required to establish the claims, counterclaims and affirmative defenses, the following issues remain to be tried:

    a. Was the Property damaged by a marijuana-growing operation engaged in by the Defendants?

    b. Did the A-Z Realty Defendants breach their fiduciary duties to the Plaintiff?

    c. Did the Defendants commit fraud against the Plaintiff?

    d. Did the Defendants make negligent representations to the Plaintiff?

    e. Did A-Z Realty breach the PMA between A-Z Realty and Plaintiff?

    f. Are the Defendants liable for trespass/unlawful occupancy?

    g. Are the Defendants liable for a private nuisance?

    h. Did the Defendants commit elder abuse against the Plaintiff?

    i. Did the Defendants intentionally inflict emotional distress upon the Plaintiff?

    j. Were the Defendants negligent in their dealings with Plaintiff?

    k. Did the Defendants engage in conduct that violates California Business & Professions Code § 17200, *et seq*.?

    l. Are the Defendants responsible for the costs of repairs, diminution in value of the Property, and lost rent resulting from their conduct?

    m. Are the Defendants liable for additional punitive and treble damages, the payment of Mrs. Zhang's attorneys' fees, and the profits made from the marijuana-growing operation?

    n. Did Plaintiff fail to mitigate the damages she claims?

    o. Was Plaintiff part of the marijuana growing enterprise?

          p.     Did Plaintiff profit from the marijuana growing enterprise?

9.    All discovery is complete.

10.   All disclosures under F.R.Civ.P. 26(a)(3) have been made.

The joint exhibit list of the parties has been filed under separate cover as required by L.R. 16-6.1. Unless all parties agree that an exhibit shall be withdrawn, all exhibits will be admitted without objection at trial, except those exhibits listed below:

Plaintiff objects to Exhibit Nos.:

- 79:  Plaintiff's Homeowner's Insurance Policy: AMCO Insurance Company; Policy No. ADP: 0048614535-3.  As set forth in Plaintiff's Motion *in limine* No. 1, this document should not be admitted at trial under Federal Rule of Evidence ("FRE"), Rule 411.  In addition, the Exhibit is irrelevant under Federal Rule of Evidence ("FRE") 401 and therefore should be excluded under FRE 402; and any probative value of the Exhibit is substantially outweighed by dangers of confusion, waste of time, and cumulative evidence and should be excluded under FRE 403.
- 86:  website page for riversidesheriff.org/528/Contact-Us [Zheng 0000247].  FRE 401, 402; 602; 802; and 901.
- 87:  website page for dec.riversidesheriff.org/misc/contact.htm [Zheng 0000248].  FRE 401, 402; 602; 802; and 901.

Defendant objects to Exhibit Nos.:

- 55:  Business Risk Partners Professional Liability Insurance Policy (Realty One Group).  this document should not be admitted at trial under Federal Rule of Evidence ("FRE"), Rule 411.  In addition, the Exhibit is irrelevant under Federal Rule of Evidence ("FRE") 401 and therefore should be excluded under FRE 402; and any probative value of the Exhibit is substantially

99

outweighed by dangers of confusion, waste of time, and cumulative evidence and should be excluded under FRE 403.

- 60: Letter re Dragon Tree Property dated October 21, 2019. Lack of authentication. FRE 401, 402, 403, 602, 802, 901

- 61:  Letter re Honeybear Property dated October 21, 2019. Lack of authentication. FRE 401, 402, 403, 602, 802, 901.

- 62: HDI Global Insurance Company Commercial Lines Policy for A-Z Realty and Investment Corp. this document should not be admitted at trial under Federal Rule of Evidence ("FRE"), Rule 411.  In addition, the Exhibit is irrelevant under Federal Rule of Evidence ("FRE") 401 and therefore should be excluded under FRE 402; and any probative value of the Exhibit is substantially outweighed by dangers of confusion, waste of time, and cumulative evidence and should be excluded under FRE 403.

11.    Witness lists of the parties have been filed with the Court.

Only the witnesses identified in the lists will be permitted to testify other than solely for impeachment.

Each party intending to present evidence by way of deposition testimony has marked such depositions in accordance with L.R. 16-2.7. For this purpose, the following depositions shall be lodged with the Clerk as required by L.R. 32-1:

Ming-Wing Lam, dated October 27, 2020.

12.    The following law and motion matters and motions in limine, and no others, are pending or contemplated:

a.    Plaintiff's Motion *in Limine* No. 1;

b.    Plaintiff's Motion *in Limine* No. 2;

c.    Plaintiff's Motion *in Limine* No. 3; and

d.    The A-Z Realty Defendants' Motion *in Limine* related to insurance.

13.   Bifurcation of the following issues for trial is ordered.  None.

14.   The foregoing admissions having been made by the parties, and the parties having specified the foregoing issues remaining to be litigated[1], this Final Pretrial Conference Order shall supersede the pleadings and govern the course of the trial of this cause, unless modified to prevent manifest injustice.

Dated:  February _____, 2021

_____
HON. KENLY KIYA KATO
United States Magistrate Judge

Approved as to form and content.

DATED:  February 11, 2021

FINLAYSON TOFFER ROOSEVELT & LILLY LLP

By  _____ */s/ Scott B. Lieberman* _____
Scott B. Lieberman

Attorneys for Plaintiff
SHUANG YING (NANCY) ZHANG

---

[1] Counsel for Defendant Shi Dan Chen and counsel for Defendant Ming-Wing Lam did not exchange any pretrial documents with counsel for the other parties as required by the Court's Civil Trial Scheduling Order.  Starting last week, Plaintiff's counsel has requested on multiple occasions that counsel for Defendants Chen and Lam provide any proposed inclusions to the joint pretrial documents.  As of the date of this submission, Plaintiff's counsel has not received a response from counsel for Defendant Chen or Defendant Lam. Therefore, their electronic signatures are not affixed to any of the joint pretrial documents.

DATED:  February 11, 2021

MANSOUR LAW GROUP, APLC


By _____*/s/ Steven G. Candelas*_____
Steven G. Candelas

Attorneys for Defendants
A-Z REALTY & INVESTMENT CORP.,
DONGYAN (ANNIE) ZHENG, AND JENNIFER
WHELAN

DATED:  February 11, 2021

LYNBERG & WATKINS
A Professional Corporation


By _____*/s/ Tamara M. Heathcote*_____
Tamara M. Heathcote

Attorneys for Defendants
REALTY ONE GROUP, INC. AND JIHUI
(LUCKY) LUO

DATED:  February 11, 2021

FRAZEE LAW GROUP


By _____
RoseAnn Frazee

Attorneys for Defendant
SHI DAN CHEN

FINAL PRETRIAL CONFERENCE ORDER

1    DATED:  February 11, 2021

2                                    LAW OFFICES OF GREGORY W. PATTERSON

3

4                                    By

5                                              Gregory W. Patterson

6

7                                          Attorneys for Defendant
                                           MING-WING LAM
8

9    .

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                          103
                            FINAL PRETRIAL CONFERENCE ORDER

1

## <u>CERTIFICATE OF SERVICE</u>

2

3       I am employed in the County of Orange; I am over the age of eighteen years and not a party to the within entitled action; my business address is 15615 Alton Parkway, Suite 250, Irvine, California 92618.  I am a registered user of the CM/ECF system for the United States District Court for the Central District of California.

4

5       On February 11, 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system.  To the best of my knowledge, all counsel to be served in this action are registered CM/ECF users and will be served by the CM/ECF system.

6

7       I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

8

9       Executed on February 11, 2021, at Irvine, California.

10

11                                          _____*/s/ Scott B. Lieberman*_____
                                                    Scott B. Lieberman

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
CERTIFICATE OF SERVICE